UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Case No. 16cr334 (JNE/KMM) (1)
ORDER

PAUL R. HANSMEIER,

    Defendant.

The Indictment in this criminal case against Defendant Paul R. Hansmeier charges him in 18 counts, including one count of conspiracy to commit mail fraud and wire fraud, five counts of mail fraud, ten counts of wire fraud, one count of conspiracy to commit money laundering, and one count of conspiracy to commit and suborn perjury. Hansmeier moves pursuant to Federal Rule of Criminal Procedure 12(b) to dismiss the Indictment in all counts except the perjury count. Dkt. No. 48; *see also* Def.'s Br. 4 n.1, Dkt. No. 49. After holding a hearing on the motion, in a Report and Recommendation dated July 24, 2017, Dkt. No. 66 ("R&R"), the Honorable Katherine Menendez, United States Magistrate Judge, recommended denying Hansmeier's motion. Hansmeier objected to the Report and Recommendation. Dkt. No. 73 ("Objs."). The Government responded to Hansmeier's objections. Dkt. No. 75. The Court must determine *de novo* any part of the Report and Recommendation that has been properly objected to. D. Minn. L.R. 72.2(b)(3); *see also* 28 U.S.C. § 636(b)(1).

First, Hansmeier objects that the Report and Recommendation's statement of the relevant standard for deciding the motion to dismiss was incomplete, because the indictment must allege facts with more particularity than usual. "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Steffen*, 687 F.3d 1104, 1113 (8th Cir. 2012) (quoting *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008)). "However, where an

indictment alleges a scheme to defraud under the bank, mail, or wire fraud statutes," as in this case, "it must specify facts 'not merely in the general words of the statute, but with such reasonable particularity . . . as will . . . apprise [the defendant], with reasonable certainty, of the nature of the accusation . . . and as will enable the court to say that the facts stated are sufficient in law to support a conviction." *Id.* (quoting *Brown v. United States*, 143 F. 60, 62 (8th Cir. 1906)). In other words, the indictment should "describe the scheme or artifice to defraud which had been devised, with such certainty as would clearly inform the defendants of the nature of the evidence to prove the existence of the scheme to defraud, with which they would be confronted at the trial." *Id.* (quoting *Stewart v. United States*, 119 F. 89, 94 (8th Cir. 1902)). Hansmeier asserts that the Indictment in this case is amorphous and does not clearly set forth any theory of fraud. To the contrary, as recounted in detail in the Report and Recommendation, *see* R&R 2-4, the Indictment is replete with factual allegations describing the scheme allegedly deployed by Hansmeier and his co-defendant John L. Steele.

The allegations, which must be accepted as true on a motion to dismiss, *see Steffen*, 687 F.3d at 1107 n.2, can be briefly summarized as follows. *See, e.g.*, Ind't ¶¶ 17-24. Beginning in 2011, Hansmeier and Steele caused pornographic videos, as to which sham entities that they controlled owned copyrights, to be uploaded to a website that they knew was used for file-sharing, BitTorrent. They then applied to federal courts around the country for early, *ex parte* discovery in order ascertain the likely identities of persons who downloaded the files that had been uploaded at Hansmeier and Steele's direction. In moving for early discovery, the defendants knowingly made or caused to be made to the courts multiple misrepresentations and statements that were misleading by omission in order to obtain the desired information through court-approved subpoenas. And once they had obtained individuals' personal information,

2

Hansmeier and Steele sent letters to the individuals threatening to bring and pursue civil copyright infringement lawsuits against these individuals, in order to convince them to pay settlement fees quickly. These allegations, which are pleaded in much greater detail in the Indictment, sufficiently inform Hansmeier of the nature of the proof the Government will seek to offer at trial.

Next, Hansmeier objects that the facts alleged fail to state a legally cognizable criminal fraudulent charge. His primary tactic is to isolate particular allegations and argue that, viewed alone, an alleged act is not fraudulent or illegal. The Court agrees with the Magistrate Judge's decision to view the allegations as a whole in evaluating the sufficiency of the Indictment. *Cf. United States v. Boykin*, 794 F.3d 939, 946 (8th Cir. 2015) (noting that "an indictment's sufficiency should be judged by practical, and not by technical, considerations") (citation and internal punctuation omitted). Hansmeier cites no authority for the theory that every step in a scheme to defraud must be illegal or objectionable. To the contrary, although a scheme to defraud "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension," it "need not be fraudulent on its face." *United States v. Goodman*, 984 F.2d 235, 237 (8th Cir. 1993) (citation omitted); *8th Cir. Crim. Jury Instr.* § 6.18.1341 (2014); *see also United States v. Bishop*, 825 F.2d 1278, 1280 (8th Cir. 1987) (rejecting defendants' characterization of their actions as mere "hard bargaining" and finding that the indictment alleged acts that could constitute a fraudulent scheme within the meaning of the mail fraud statute). And as to the conspiracy allegations, it is well established that acts in furtherance of a conspiracy need not be illegal acts. *See, e.g.*, *United States v. Donahue*, 539 F.2d 1131, 1136 (8th Cir. 1976) ("[A]n overt act performed in order to effect the object of a conspiracy may be perfectly innocent in itself. Obviously, the successful

carrying out of a conspiracy to defraud by use of the mails . . . may involve the commission of a number of acts of various kinds and having different purposes . . . .").

Hansmeier further objects that the allegations cannot state a claim based on fraud because the alleged misstatements to the courts could not be material to the individuals' decisions to settle. He does not cite any binding precedent for the proposed rule that a misrepresentation directed to a third party cannot be material when another is harmed, and at oral argument he conceded that Eighth Circuit case law does not recognize such a rule. *See* Tr. 29:17-30:16, Dkt. No. 65. The Court concurs in the Magistrate Judge's rejection of that argument. *See* R&R 12. Similarly, Hansmeier objects that the people who paid out settlement fees were not defrauded because they knew that they did download the file as accused in the letters sent by Hansmeier and his associates, and they willingly decided to settle the case rather than face litigation. This objection fails because, first, the Indictment alleges that Hansmeier and his associates made misleading statements directly to these individuals. Second, again, explicit misrepresentations made directly to the victims are not a necessary element of mail or wire fraud. *See, e.g.*, *Steffen*, 687 F.3d at 1112-13. In addition, this argument appears to assume facts not alleged in the Indictment.

Hansmeier also objects to the Magistrate Judge's rejection of his theory that it violates the Constitution to prosecute a person for "bringing meritorious litigation." Objs. 13. The Magistrate Judge correctly rejected Hansmeier's broader argument that a criminal prosecution may not be based on civil litigation activity. *See* R&R 7-9. To the extent that the Report and Recommendation did not specifically reject the argument that such a prosecution would be unconstitutional, such an omission was not error. Hansmeier cites several cases establishing as a general matter the right to access the courts. Objs. 13-14; *see Christopher v. Harbury*, 536 U.S.

4

403, 413-15 (2002) (describing two categories of claims for denial of access to courts); *Prof. Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56-57 (1993) (recognizing, in the antitrust context, under the so-called *Noerr-Pennington* doctrine, the right to file lawsuits that may interfere with competition as long as the litigation is not a "sham"); *NAACP v. Button*, 371 U.S. 415, 429 (1963) (recognizing the right to pursue litigation efforts to enforce civil rights). Courts have applied the *Noerr-Pennington* doctrine to bar civil claims outside the antitrust area of law, including in cases involving civil pre-litigation demand letters. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 645 (9th Cir. 2009) (discussing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006)); *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 896 (D. Minn. 2012) (collecting cases). But Hansmeier cites no authorities for applying the doctrine in criminal cases. The cases cited by Hansmeier do not support his contention that allowing the prosecution of a fraudulent scheme would be unconstitutional just because the scheme involves civil litigation. He urges that the possibility of criminal prosecution for aggressive civil litigation techniques could chill access to the courts. But although criminal prosecution for perjury in civil litigation could likewise arguably chill civil litigants' use of the courts, he sensibly does not challenge perjury prosecutions as unconstitutional. *Cf. Nix v. Whiteside*, 475 U.S. 157, 173 (1986) ("Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely*."). Nor does he convincingly explain why prosecuting a charge other than perjury should alter the constitutional analysis. Further, the activities alleged in the Indictment extend beyond aggressive litigation tactics and include deceptive, predatory acts, including alleged fraud on the courts. Even assuming that the *Noerr-Pennington* doctrine applies in the criminal prosecution context, the Court might find that the alleged activities place Hansmeier's civil litigation efforts under the sham exception to that

doctrine, thus not constitutionally protected from prosecution. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1080 n.4 (8th Cir. 1999) ("Only 'sham' lawsuits fall outside the *Noerr-Pennington* cloak of immunity, that is, 'only where a defendant's resort to the courts is accompanied or characterized by illegal and reprehensible practices such as perjury, fraud, . . . or misrepresentation, or is so clearly baseless as to amount to an abuse of process. . . .'") (quoting *Razorback Ready Mix Concrete Co. v. Weaver*, 761 F.2d 484, 487 (8th Cir.1985)); *Kearney*, 590 F.3d at 646-47.

Last, Hansmeier objects to the Magistrate Judge's analysis of *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984), and *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002). He raises no new arguments concerning the interpretation of those cases, and the Court agrees with the analysis in the Report and Recommendation.

The Court accordingly overrules each of Hansmeier's objections and adopts the reasoning and recommendation of the Report and Recommendation, as supplemented above.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant Paul R. Hansmeier's Motion to Dismiss [Dkt. No. 48] is DENIED.

Dated: September 8, 2017                     s/ Joan N. Ericksen
                                             JOAN N. ERICKSEN
                                             United States District Judge