UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-334(1) (JNE/KMM)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | DEFENDANT'S POSITION |
| v. ) | PLEADING |
| ) | |
| PAUL R. HANSMEIER, ) | |
| ) | |
| Defendant. ) | |

As a child, Paul Hansmeier knew that he wanted to follow in his father's footsteps and become a lawyer. He did just that. After finishing law school in May 2007, he was admitted to practice law in Minnesota the following October. He began working in the civil arena with a private law firm. During that time period he got married and the couple started planning their future. They were both working as lawyers and had a good income. Unfortunately, things changed in 2010.  Mr. Hansmeier was laid off and he was left without work and income.

Soon thereafter, he began talks with his former law school colleague and now co-defendant, John Steele.  The two discussed a business venture.  And between 2011-2014, the two worked together and with others. That brings us to this case.

The Presentence Report (PSR) finds a total offense of 33, a criminal history category of I, and an advisory imprisonment range of 135 to 168 months. The

statutory maximum penalty for Conspiracy to Commit Mail and Wire Fraud and Conspiracy to Commit Money Laundering is 20 years.  As noted below, Mr. Hansmeier has three objections to the PSR, two of which apply to the advisory guideline range.

## OBJECTIONS TO THE PSR

I.     **Factual Objections**

As stated in the Addendum, Mr. Hansmeier has factual objections to the offense conduct.  Mr. Hansmeier admitted to the facts that support the convictions within the signed plea agreement. (ECF 103).

As the Court is aware, the government's principal legal theory in this case is that Mr. Hansmeier acted with others to institute "fraudulent copyright lawsuits" in violation of federal statutes. (E.g., ECF 1 at 2). The PSR echoes this characterization of the civil lawsuits at issue by way of its description of offense conduct. (PSR at 2-10). Throughout the course of these proceedings, Mr. Hansmeier has challenged the government's assertion that the facts as alleged amount to "fraudulent copyright lawsuits," and hence he has sought pretrial dismissal of the vast majority of the government's charges. (E.g., ECF 48, 49, 59, 65, 73). On this point, the Court has ruled against Mr. Hansmeier, (ECF 76), and he certainly recognizes this reality. That being said, it bears mentioning that Mr. Hansmeier has entered a conditional plea under Fed. R. Crim. P. 11(a)(2), to

allow him the opportunity to challenge on appeal the Court's denial of his motion. (ECF 103 at 2 & PSR at 2, ¶ 4). Thus, while the defense fully recognizes and respects the Court's ruling as to the above legal question, Mr. Hansmeier takes this opportunity to briefly reiterate his objection to the PSR's frequent characterization of the civil lawsuits as "fraudulent," for the reasons stated in the above-referenced pleadings and consistent with the conditional plea agreement.

**II.     Guideline Objections**

The parties signed a plea agreement. (ECF 103). The document sets a base offense level of 7, an additional 20 levels for specific offense characteristics and an additional 2 levels for abuse of position of trust. In total, the parties agreed to an adjusted offense level of 29. The parties disagreed on two chapter three adjustments: Role in the offense and obstruction of justice. The PSR and the government agree on the adjustments. Depending on the Court's guideline adjustments, below is a chart outlining the possible total offense levels.

| COUNT I* | PSR | Alternative 1 | Alternative 2 | Alternative 3 |
|---|---|---|---|---|
| Base Offense Level | 7 | 7 | 7 | 7 |
| Loss amount (+16), Number of victims(+2), sophisticated means(+2), and abuse of position of trust(+2) | +22 | +22 | +22 | +22 |
| Role in the Offense | +4 | +2 | +4 | +2 |
| Obstruction of Justice | +2 | 0 | +0 | +2 |
| Acceptance of responsibly | -2 | -2 | -2 | -2 |
| Adjusted Offense Level | 33 | 29 | 31 | 31 |
| **Advisory Imprisonment Range** | 135-168 | 87-108 | 108-135 | 108-135 |

*Count II has an adjusted offense level of 27 (PSR ¶65); because the greater of the two adjusted levels is Count 1, only Count 1 guidelines are addressed.

The two guideline objections are discussed below.

### A. Role in offense—USSG § 3B1.1

The PSR suggests that this Court apply a four-level adjustment to Mr. Hansmeier's offense level under the Guidelines, due to an aggravating role in the offense within the meaning of USSG § 3B1.1. (PSR ⁋ 41, 55). The Guidelines provision provides—

> Based on the defendant's role in the offense, increase the offense level as follows:

> *(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.*
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.
>
> *(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.*

USSG § 3B1.1 (emphases added).

Two subdivisions of § 3B1.1 are highlighted, because they present a glaring contradiction in this case. The government asks the Court to apply the 4-level enhancement in subdivision (a) to Mr. Hansmeier. (ECF 103 at 8, ¶ 6(c)(1)). And yet it seeks only the 2-level enhancement of subdivision (c) as to his co-defendant, Mr. Steele. (ECF 43 at 20-21, ¶ 5(c)(1)). It is not possible to reconcile this sought-after result with the law, and certainly not with the government's own version of the facts.

As shown in the quoted text above, § 3B1.1 calls for "a range of adjustments to increase the offense level based upon the size of the criminal organization (*i.e.*, the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense." USSG § 3B1.1, Background. For example, under the first subdivision, there is to be a 4-level adjustment for a defendant who qualifies as an "organizer or leader" of the enterprise, but only if

5

the latter involved at least five participants or was "otherwise extensive." *Id.* § 3B1.1(a). The second subdivision calls for a 3-level adjustment if there exists the same sort of organization structure, but the defendant is only a "manager or supervisor." *Id.* § 3B1.1(b). And the third subdivision yields a 2-level adjustment where the defendant fits any of the foregoing leadership roles (*i.e.*, "organizer, leader, manager, or supervisor"), but the claimed organization fails to meet the five-participant threshold or "otherwise extensive" definition. *Id.* § 3B1.1(c).

Here, as already noted, the government's plea agreement with Mr. Steele asserts that this last provision applies, *i.e.*, a 2-level adjustment for an "organizer, leader, manager, or supervisor" of a collective that fails to meet the five-participant threshold and also fails to qualify as "otherwise extensive." (ECF 43 at 20-21, ¶ 5(c)(1)). And although neither Mr. Hansmeier nor his defense counsel have seen the presentence investigation report relating to Mr. Steele, the post-PSR sentencing position papers make no mention of a deviation from this determination, nor any objection by either the government or Mr. Steele with respect to the Guidelines determinations. (ECF 122 & 123). Hence, absent some contrary indicator from the government or Mr. Steele, it safe to infer that Mr. Steele's presentence investigation report recommends the use of § 3B1.1(c) here.

And if this is indeed the case, then all interested parties to Mr. Steele's case—the government, the probation office, and Mr. Steele himself—are asking this

6

Court to make a finding that the enterprise at issue neither meets the five-participant threshold, nor is "otherwise extensive." The matter is unequivocal under the § 3B1.1 framework. Subdivision (c)—putatively advocated by the government and probation office—only applies to "relatively small criminal enterprises" that fails to meet the above criteria. USSG § 3B1.1, Background. Subdivisions (a) and (b)—which the government and probation office apparently recommend against—apply to larger collectives that meet the above size criteria.

If all the above is correct, then it must follow—both logically and factually—that the probation office is wrong to recommend that Mr. Hansmeier's Guidelines offense-level tally be adjusted by 4 levels under § 3B1.1(a), rather than 2 offense levels under § 3B1.1(c). It simply cannot be the case that the enterprise at issue meets the size threshold with respect to Mr. Hansmeier, but not with respect to Mr. Steele. After all, *we are speaking of precisely the same enterprise*.

Of this last conclusion, there can be no doubt. The government's charging document makes clear its theory that Mr. Hansmeier and Mr. Steele jointly planned and executed the alleged scheme. (ECF 1 at 1-25). Since then, the government has never deviated from its initial theory of the case. Rather, in numerous papers and at numerous hearings, it has re-affirmed its view that Mr. Hansmeier and Mr. Steele were co-equal partners in the enterprise. This can be seen by examining, for example:

- The plea agreement between the government and Mr. Steele. (ECF 43).

- The government's papers in response to Mr. Hansmeier's motion to dismiss. (ECF 57 at 4-24).

- The government's position paper with respect to Mr. Steele's forthcoming sentencing hearing. (ECF 122 at 2-5).

At all events, the presentence report authored by the probation office makes clear its view on the topic, repeatedly stating that the charged scheme was not orchestrated by Mr. Hansmeier alone. Nor Mr. Steele alone. But rather, by "the defendants" in concert. (PSR at 2-10). Indeed, the quoted phrase appears in the PSR—mostly in prominent bold letters—in well over 100 instances, according to the word-finder software.

The government may respond with arguments that the claimed scheme *did* involve at least five "participants" as defined by the role-in-offense Guideline notes at issue. *See* USSG § 3B1.1, App. N. 1. Or that the enterprise was "otherwise extensive" as is also defined in the application notes. *See id.*, App. N. 3. But the reality is the government is foreclosed from doing so by its own theory. If the Hansmeier defense has it right, the government has already committed to the conclusion that the enterprise fails to meet either criterion, as to Mr. Steele. And since the government claims that Mr. Hansmeier and Mr. Steele jointly planned and executed the very same enterprise, it cannot ask this Court to make a contradictory and hence illogical determination with respect to Mr. Hansmeier.

In sum, the government and probation office are in agreement that Mr. Steele and Mr. Hansmeier engaged in the same enterprise. The enterprise was either: (a) "relatively small" and hence subject to the 2-level adjustment under § 3B1.1(c); or (b) large enough to qualify for the 4-level adjustment under § 3B1.1(a). It cannot be both. And it cannot be one with respect to Mr. Steele, and the other with respect to Mr. Hansmeier. The government is on record that it is small with respect to Mr. Steele, and hence it must be so with respect to Mr. Hansmeier. The 2-level enhancement is appropriate here, as the government has said in its own stipulation regarding Mr. Steele.

### B. Obstruction of justice — USSG § 3C1.1

The PSR also recommends a 2-level adjustment under USSG § 3C1.1, owing to a claimed attempt to obstruct justice "by committing and suborning perjury in various courts throughout the United States." (PSR at 11, ¶ 46). But this adjustment is not appropriate either.

Section 3C1.1 provides for a 2-level adjustment in those cases where "the defendant willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." USSG § 3C1.1. As the quoted text suggests, the adjustment aims to penalize post-offense behavior that constitutes an "unlawful attempt to avoid responsibility." *United States v. Dunnigan*, 507 U.S. 87, 97 (1993). Generally

speaking, it does not seek to penalize pre-investigation acts, with one notable exception, i.e.: "Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." USSG § 3C1.1, App. N. 1.

Here, the sole rationale offered to apply the § 3C1.1 adjustment is the claim that Mr. Hansmeier and others committed and suborned "perjury in various courts throughout the United States." (PSR at 11, ¶ 46). For specifics, the PSR asserts that he committed perjury in civil courts regarding: (a) his association with the Prenda Law business entity; (b) the origin and control of the AF Holdings business entity; (c) the purpose of the litigation brought by the AF Holdings business entity; (d) whether he had "uploaded and/or downloaded BitTorrent files of any past clients." (PSR at 8, ¶ 33).

None of these items signifies an attempt to obstruct any ongoing criminal investigation, and in fact it appears that there was not such active investigation at the time of these claimed acts. Nor does it suggest conduct "purposefully calculated" to thwart some anticipated and future investigation. USSG § 3C1.1, App. N. 1. Rather, the claimed perjury relates solely to the offense-of-conviction itself. Here again, this interpretation is supported by many of the government's

own papers, in which it is claimed that Mr. Hansmeier and others committed the aforementioned claimed perjury as part-and-parcel of the alleged conspiracy. (See, e.g., ECF 1 at 18-25).

In such situations—i.e., where the claimed perjury occurs in relation to a civil proceeding and has no discernable nexus to a government prosecutorial investigation—the § 3C1.1 adjustment does not apply. As one court has said: Impeding a private civil investigation [] without some contemporary nexus to a government-led investigation [] by itself does not justify an obstruction of justice enhancement. To be clear, committing perjury during a private civil proceeding initiated prior to a government-led investigation may support an obstruction enhancement, but only if the private investigation had some existing or expected connection to the later government inquiry and the perjury was purposefully calculated to thwart that investigation or prosecution of the offense of conviction. It is not enough to show that the obstructive conduct simply impeded a civil investigation that later turns out to relate or lead to a government investigation and an offense of conviction. *United States v. Chivers*, 488 Fed. Appx. 782, 788-89 (5th Cir. 2012) (internal punctuation and citations omitted); accord *United States v. DeGeorge*, 380 F.3d 1203, 1222-23 (9th Cir. 2004) (reversing § 3C1.1 obstruction adjustment involving claimed perjury at underlying civil trial, reasoning that the

"perjury occurred during the civil trial as part of [the] scheme to defraud and not during the criminal investigation as part of an attempt to obstruct justice").

Here, there is no nexus between the claimed instances of perjury and a contemporaneous government-led investigation. Nor is there a showing that the claimed perjury was calculated to thwart some future investigation. Rather, as shown above by the government's own papers, the claimed purpose of the alleged perjury was to avoid the consequences of a civil investigation initiated by judicial officers. And as stated in *Chivers* above, "it is not enough to show that the obstructive conduct simply impeded a civil investigation that later turns out to relate or lead to a government investigation." 488 Fed. Appx. at 788-89. Rather, the alleged perjury "occurred during the civil [proceedings] as part of [the] scheme to defraud and not during the criminal investigation as part of an attempt to obstruct justice." *DeGeorge*, 380 F.3d at 1222-23. Hence, the § 3C1.1 adjustment for obstruction does not apply here.

## SENTENCING FACTORS

The Court should consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other

12

correctional treatment in the most effective matter." 18 U.S.C. § 3553(a). The factors listed in § 3553(a) are discussed below.

1. **The Offense**

The offense conduct is outlined in detail within the plea agreement. The parties agree the fraudulent loss to be more than $3,000,000. (Plea Agreement, ECF 103 at page 6) and agreed upon a 16-level enhancement based on a loss amount of more than $1,500,000 but less than $3,500,000.

Co-defendant Steele in his sentencing position paper, and then echoed by the government its pleading suggest that Mr. Steele should receive lenient treatment on the ground that "unlike co-defendant Hansmeier, Mr. Steele never filed any motions to dismiss or engaged in any adversarial litigation actions against the Government." (ECF 123 at 4). The government's pleading states, in part:

> To his credit, Steele also refrained from attacking the legality of his prosecution and conviction, acknowledging that his conduct—while cloaked with legitimacy—was really nothing more than lies and deception. Steele has also refrained from making frivolous arguments about the facts of the case and applicability of the sentencing guidelines enhancements. There is a stark difference between how Steele and his co-defendant have responded to the charges against them. (ECF 122 at 4).

The government suggests Mr. Steele ought to be shown leniency for declining to file pretrial motions -for refraining from mounting a challenge to the viability of the government's legal theory.  Although the government has not yet

13

made the argument, the implication is that Mr. Hansmeier ought to be punished more severely for doing all of these things.

The Supreme Court has long observed that "while an individual may certainly be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 373 (1982). Plainly encompassed within this principle are the accused's statutory and constitutional rights to mount a defense. To bring pretrial motions; to make a well-founded (even if ultimately unsuccessful) challenge to the government's legal theory. A fair and just criminal system requires vigor on the side of the defense as well as the prosecution. There can be no additional punishment imposed for doing nothing more than putting on a proper defense. To the extent Mr. Steele and/or the government suggest that this Court's sentencing decision ought to be influenced by the relative vigor of Mr. Hansmeier's defense that is plainly wrong and contrary to law.

2. **Mr. Hansmeier**

Part C of the PSR outlines in detail Mr. Hansmeier's background, so that will not be repeated in detail in this section. Mr. Hansmeier is thirty-seven years old. He is a married father of two young children. The pressure of this case has taken its toll on Mr. Hansmeier, which he knows he helped create. But he strives to better himself and thereby better cope with this instant offense. (PSR ¶ 87-88).

At the end of the day, Mr. Hansmeier wants to be with his family and raise his children. Prior to this instant offense, Mr. Hansmeier was leading a very productive life. As a teen, he was supportive of his mother, made sure he had good grades and worked while in high school. As a young adult, he did well in college and law school. As a working adult, he did well at his law related employment. All the while, he maintained strong family and community ties. Regarding the future, Mr. Hansmeier does not know if he will be re-licensed by the Minnesota Supreme Court such that he could work as an attorney. He is hopeful that because of his education he will find gainful employment.

3. **Fine**

Given that restitution will be ordered, Mr. Hansmeier requests that no fine be imposed on him. He is represented by the Office of The Federal Defender and is currently unemployed. His wife is the only one bringing in an income for the family of four.

4. **Sentencing Ranges**

Depending on the Court's findings in regards to particular enhancements, the various ranges were discussed earlier in this pleading.

### 5. Other Defendants with Similar Fraudulent Loss Amounts and Convictions

Every case before the Court is unique. However, § 3553(a)(6) tells the Court to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. Counsel does not have available every case in this district in which the defendant has been convicted of similar charges. Upon reviewing Eighth Circuit Appeal cases and recent cases within this Court's district, counsel was able to find a few cases with similar convictions, some with higher loss amounts, and some with the same enhancements. The following is a summary of some of the cases:

In *United States v. Chaika,* 695 F.3d 741 (8th Cir. 2012), Chaika was convicted by a jury in the United States District Court for the District of Minnesota of wire fraud, two counts of mail fraud, and one count of conspiracy to commit wire fraud and mail fraud. The district court calculated an advisory guidelines range of 210-262 months and sentenced Chaika to 102 months in prison, which represented a 108-month downward variance from the bottom of the advisory Guidelines range. The court also ordered restitution in the amount of $7,430,858.30.

In *United States v. Waters*, 799 F.3d 964 (8th Cir. 2015), a jury convicted Waters of mail fraud, wire fraud, and tax-related crimes. The PSR recommended an 18-level increase in the Guidelines offense level, finding the total loss amount was between $2.5 and 7 million. The PSR also recommended Waters was subject to enhancements for obstruction of justice and the use of sophisticated means. The district court found an offense level of 31 and a criminal history category of I. The offense level and history corresponded to an advisory Guidelines range of 108 to 135 months imprisonment. The district court sentenced Waters to 108 months.

In *United States v. Midkiff,* 614 F.3d 431 (8th Cir. 2010), Midkiff was convicted of conspiracy, mail and wire fraud, and failure to file tax returns. Between May 2004 and December 2005, Midkiff and co-defendant Watkins took $30 million dollars from 519 individuals in a Ponzi scheme. The PSR concluded that Midkiff's total offense level was 47 and that he was subject to life imprisonment. The district court disagreed with a number of the enhancements applied in the PSR and determined that Midkiff's total offense level was 41 and his criminal history category was I, resulting in a guideline sentence of 324 to 405 months' imprisonment. The district court sentenced Midkiff to 180 months' imprisonment, representing a 144-month downward variance from the bottom of the advisory Guidelines range.

In *United States v. Reynolds*, 643 F.3d 1130 (8th Cir. 2011), Reynolds pled guilty to a money laundering conspiracy. From 2002 until September 2008, Reynolds accepted and transferred $12 billion in investor funds, garnering $9.9 million for his role in a larger scheme. The PSR calculated Reynolds' total offense level at 37, a criminal history category of I, and an advisory sentencing range of 210 to 240 months' imprisonment. Given Reynolds' cooperation and assistance to the government, it asked the district court to consider imposing a sentence below the advisory sentencing range. Nonetheless, the government maintained that Reynolds' involvement warranted severe punishment. The district court imposed a 130-month sentence, representing an 80-month downward variance from the bottom of the advisory guidelines range.

The *Starkey* case involved a fraudulent loss of about 15 million. Defendant Jerome Ruzicka was convicted of six counts of aiding and abetting mail fraud. His advisory guideline range was 188-235 months. He was sentenced to 7 years in prison. Defendant W. Jeff Taylor was convicted of three counts of aiding and abetting wire fraud. His advisory guideline range was 87-108 months, and he was sentenced to 18 months in prison.

In *United States v. Adam Burke*, Crim. No. 16-338, Burke was a licensed Doctor of Chiropractic who was convicted of conspiracy to commit mail fraud and mail fraud. The PSR found a total offense level of 35, which included the

18

loss amount (16-level), sophisticated, means, leadership role, abuse of position of trust and obstruction. The advisory range was determined to be 168 to 210 months' imprisonment. Burke was sentenced to 90-months.

**6. Restitution**

The restitution amount is unknown at this time. (PSR ¶44-45).

**7. Just Punishment, Adequate Deterrence and Protection of the Public**

"Increasingly, criminal justice professions have argued that dwindling prison space should be reserved for the most serious and dangerous offenders, necessitation a reconsideration of alternative sanctions for first-time and nonviolent offenders." *Alternative Sentencing in the Federal Criminal Justice System*, UNITED STATES SENTENCING COMMISSION, January 2009, at 1. Mr. Hansmeier has no violence in his background and no prior criminal history. That being said, he has been convicted of two serious offenses. He has pled guilty. The offense conduct is four years old. As a collateral consequence for his behavior in the instant matter, on September 12, 2016, the Minnesota Supreme Court indefinitely suspended Mr. Hansmeier's license to practice law.

So what is just punishment in this case? Respectfully, Mr. Hansmeier requests that the Court sentence him to no more than 87-months followed by three years of supervision.

## CONCLUSION

For all the above reasons and Section C of the PSR, Mr. Hansmeier respectfully argues his advisory Guideline range is 87 to 108 months. He requests that the Court impose a prison sentence of no more than 87-monhts followed by 3-years of supervision.

Dated: March 25, 2019    Respectfully submitted,

*s/Manny K. Atwal*

Manny K. Atwal
Attorney ID No. 282029
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415