UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-CR-334(1) (JNE/KMM)

UNITED STATES OF AMERICA,

        Plaintiff,          **GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

   v.

(1) PAUL R. HANSMEIER,

        Defendant.

The United States of America, by and through its attorneys Erica H. MacDonald, United States Attorney for the District of Minnesota, and Assistant United States Attorneys Benjamin F. Langner and David J. MacLaughlin, and Brian Levine, U.S. Department of Justice Senior Counsel, submits this memorandum setting forth its position with respect to sentencing factors in this matter as to defendant Paul R. Hansmeier.

## I.   The PSR

The United States agrees with the factual statements set forth in the Presentence Investigation Report ("PSR"). In addition, the United States agrees with the sentencing guidelines calculations contained in the PSR. As reflected in the report, the appropriate guidelines range for Paul Hansmeier is 135 to 168 months in prison.

According to the addendum, Hansmeier raises three objections to the PSR. *See* PSR at A.1-A.3. Two of the objections raise legal issues related to guidelines enhancements applied by the probation officer. After the defendant files his sentencing position paper,

the government will respond to those arguments and, if necessary, request an evidentiary hearing.

Hansmeier's final objection takes issue with the characterization of certain conduct carried out by the defendants during the scheme.  Primarily, Hansmeier attempts to denude the PSR of language that describes his motivations as fraudulent in nature.  However, the prelude to these objections indicates that Hansmeier is not requesting that the PSR be changed to reflect his counter-factual narrative, but rather seeks merely to preserve these objections pursuant to Rule 11(a)(2) as they relate to his forthcoming appeal challenging the legality of the charges against him.  As such, the government will not individually address each of the factual objections under subpart 1 of the addendum unless Hansmeier's sentencing position paper warrants a detailed response.

## II.      Factual Background

Paul Hansmeier was the driving force behind this massive scheme.  It was Hansmeier who came up with the idea to construct a copyright settlement mill focused on pornographic films.  It was Hansmeier who directed his brother to upload clients' movies onto file-sharing websites to lure downloaders.  It was Hansmeier who drafted nearly all of the legal pleadings used to deceive judges.  It was Hansmeier who invented phantom hacking allegations.  And it was Hansmeier who lied to judges, dissembled in depositions, and coerced others to conceal the truth.  While John Steele assumed an equal partnership in the settlement mill, Steele primarily handled the business side of operations—interacting with clients, organizing business entities, collecting payments, producing movies, and paying bills.  Steele was the brash frontman whose false bravado and half-truths drew the

ire of defense attorneys and judges, but witnesses repeatedly identified Hansmeier as the Machiavellian presence behind the scenes directing the creation and dissemination of false statements to courts.

### A. Hansmeier repeatedly deceived courts

Hansmeier's mass John Doe copyright infringement suits were specifically designed to deceive courts into believing that real third-party plaintiffs were suffering actual damages as a result of unauthorized, uninvited, large-scale infringement of pornographic movies by copyright pirates. Hansmeier concealed critical facts from courts which he knew would have been fatal to his ability to procure authority from those courts to serve subpoenas on ISPs for subscriber information, which was the lifeblood of his scheme. Hansmeier concealed several categories of information from courts during the scheme.

#### 1. *Hansmeier uploaded to Bit Torrent websites the very movies he sued others for downloading.*

First, Hansmeier instructed his brother, Peter Hansmeier, to upload "torrent files" to BitTorrent websites such as the Pirate Bay, affirmatively to induce people to steal his clients' copyrighted pornographic movies.[1]  Paul Hansmeier selected the pornographic movies for his brother to upload based upon how attractive they would be to BitTorrent users, thus deliberately encouraging the piracy Hansmeier pretended to hate.

---

[1] This baiting of the trap is sometimes called "honeypotting" or "seeding." Hansmeier and Steele sometimes referred to it as "black helicoptering." On Pirate Bay, Peter Hansmeier baited the trap under the user name "Sharkmp4."

Hansmeier then hired a local firm called Algenta Technologies to create software that enabled Hansmeier to determine the internet protocol addresses ("IP Addresses") of persons using BitTorrent software to take the pornographic bait he had seeded. However, the software could not identify the human subscribers associated with those IP Addresses. Hansmeier needed the subpoena authority of the courts to identify his actual victims.

Thus, in courts throughout the country, both state and federal, Hansmeier filed hundreds of lawsuits against thousands of "John Does." In each of those cases, in order to obtain subscriber information associated with the IP Addresses, Hansmeier filed motions requesting authority to serve subpoenas on internet service providers (such as Comcast or AT&T). Knowing that if he told the truth courts would deny him access to the information he needed, Hansmeier concealed from the courts his complicity in the copyright infringement he pretended to be attempting to rectify.

After obtaining subscriber names from the ISPs with fraudulently-procured subpoenas, Hansmeier sent demand letters to the subscribers threatening great pecuniary and reputational harm if they did not pay a settlement amount of approximately $3,000. Hansmeier was generally content to take this step without investigating whether the subscriber was, in fact, the infringer. Hansmeier thus inflicted plenty of pain on persons who did not, in fact, download his pornographic bait. Most of the subscribers, whether the downloaders or not, chose to settle for reasons well summarized by Judge Otis Wright, United States District Judge for the Central District of California:

> [Hansmeier has] discovered the nexus of antiquated copyright
> laws, paralyzing social stigma, and unaffordable defense costs.
> And [he] exploit[s] this anomaly by accusing individuals of

> illegally downloading a single pornographic video. Then [Hansmeier] offer[s] to settle – for a sum calculated to be just below the cost of a bare-bones defense. For these individuals, resistance is futile; most reluctantly pay rather than have their names associated with illegally downloading porn.

Ingenuity 13 LLC v. Doe, 12-cv-08333 (ODW-JC), Doc. 130.[2]

        2.     *Hansmeier and Steele owned and controlled the plaintiffs.*

Second, Hansmeier misrepresented in every case brought on behalf of "AF Holdings," "Ingenuity 13," and "Guava LLC" that these plaintiffs were owned by others when, in fact, Hansmeier and Steele beneficially owned these companies. Hansmeier concealed that he and Steele were the real parties in interest because he knew that many judges would scrutinize the requests for subpoena authority more carefully if the lawyers bringing the cases were also the parties in interest. Hansmeier went to great lengths to disguise this fact, including—as discussed below—committing and suborning perjury.

        3.     *Hansmeier and Steele created pornographic content for the sole purpose of extracting settlements.*

Third, Hansmeier concealed from the courts that he filmed and produced much of the pornography in this case himself, not for commercial distribution, but for the sole purpose of using the resulting pornographic movies as bait. In fact, in each of the copyright infringement complaints relating to his self-generated pornographic movies, in which the purported plaintiff was Hansmeier's alter ego "Ingenuity 13," Hansmeier alleged that the

---

[2] After getting what he wanted—the names of victims to shake down and extort—Hansmseier simply dismissed the lawsuits. Hansmeier never brought any of these lawsuits to trial because their sole purpose was to extort settlements, and Hansmeier did not want to risk his scheme being unearthed.

sham company had been "damaged by Defendant's conduct, including but not limited to economic and reputation losses." This allegation was untrue. Hansmeier never distributed these self-produced videos (principally "Five Fan Favorites" and a "Peek Behind the Scenes at the Show") commercially. Therefore, their "infringement" could not have caused economic damages (much less reputation losses) to Ingenuity 13, which had no commercial operations.

### 4. *Hansmeier invented allegations of hacking*

Finally, Hansmeier invented from whole cloth allegations of hacking. In 2012, courts around the country grew wary of Hansmeier's mass Doe infringement suits and thus began imposing restrictions upon his requests for subpoena authority. This interfered with Hansmeier's business model, which required the names of large numbers of people to humiliate into paying Hansmeier money.

Thus, Hansmeier began filing complaints falsely alleging that persons associated with IP Addresses that had downloaded honeypotted pornography from the Pirate Bay had, instead, engaged in an entirely different kind of misconduct—specifically, hacking into the computer systems of an entity called "Guava, LLC." The story concocted by Hansmeier was that Guava, a company purportedly controlled by Mark Lutz (a paralegal working for Steele/Hansmeier) and Allan Mooney (a friend of Hansmeier), had computers containing adult content and members who paid for access to that adult content. Hansmeier alleged that both the pornography and the personally identifying information of Guava's paying members were being stolen by large numbers of conspiratorial hackers. Hansmeier thus asked courts for subpoena authority to identify those "hackers."

There was no hacking. Guava was just a name on a piece of paper with no pornography, no paying members, and no computers to be hacked. The "hacking conspirators" Hansmeier sought to identify were merely people whose IP Addresses his brother had determined were in swarms that had downloaded Hansmeier's pornography from the Pirate Bay or other sites.

To smooth the path to subpoena authority, Hansmeier, on multiple occasions, induced an already-identified downloader to agree to be sued for hacking, securing a forum for subpoena authority. In return for agreeing to be sued, Hansmeier dropped his demand for a settlement payment, and agreed to dismiss the suit once subpoena authority had been obtained.

Hansmeier filed one such suit in Hennepin County which was assigned to Judge Tanya Bransford. Hansmeier had identified an Oregon man named Spencer Merkel as a downloader of an adult movie called "Amateur Allure – MaeLynn." Hansmeier then caused Prenda Law, in the person of a now-deceased Chicago attorney named Paul Duffy, to send Merkel a demand letter, a copy of which is attached as Exhibit 1. Merkel admitted to the downloading, but indicated that he did not have the demanded amount of $3,400 to settle the case. Hansmeier then recruited two young Minnesota lawyers to unwittingly help him defraud Judge Bransford into granting subpoena authority.

First, Hansmeier instructed a new Minnesota attorney named Michael Dugas, one of Hansmeier's employees, to file a complaint against Merkel in Hennepin County, a copy of which is attached as Exhibit 2. The complaint alleges that Merkel hacked into Guava's computer systems, not that he had downloaded "Amateur Allure—MaeLynn."

Second, Hansmeier recruited another new Minnesota attorney named Trina Morrison to represent Merkel. Hansmeier explained to Morrison that Merkel had agreed to be sued and allow discovery to be taken in return for Hansmeier's waiver of the $3,400 settlement fee.

Hansmeier compounded his egregiously disgraceful misuse of Judge Bransford's subpoena authority by lying directly to her face in open court. At a January 25, 2013 hearing on motions to quash subpoenas Hansmeier had served on various ISPs, the attorneys for the ISPs informed Judge Bransford that Hansmeier was, in reality, using her subpoena authority in a hacking case to further his copyright extortion mill and that Hansmeier had procured Merkel's consent to be sued by agreeing to dismiss the case once subpoena authority had been obtained. Hansmeier, a Minnesota attorney and an officer of the Court, appearing as counsel to Guava, responded as follows:

> That is an absolutely false representation on their side. They have no basis for saying this is a copyright infringement case. This is a common thing that they do they just say well it's a copyright infringement case and we say back to them okay, you think it's a copyright infringement case, prove it, show some fact that says this is a copyright infringement case. Tell us the copyright work, tell us the date and time of the infringement activity, show us the copyrighted work, tell us anything that would tend to show us any correspondence from us that said this company is involved in copyright. They just say it and they have no basis for doing it. I mean they may as well say this is a hit and run case.[3]

---

[3] The transcript of the January 25, 2013 hearing in *Guava v. Merkel*, 27-CV-1220976, is attached hereto as Exhibit 3. *See id.* at 40.

Unfortunately, Judge Bransford did not have before her the demand letter to Merkel, which says the copyright work is "Amateur Allure-MaeLynn," and that the date and time of the "infringement activity" was "July 6, 2011 at 13:33:41 UTC."  However, Judge Bransford did have before her Merkel's affidavit saying he agreed to be sued in return for a later dismissal (attached hereto as Exhibit 4), which Hansmeier sought to discredit by again lying:

> THE COURT:  I thought that's very strange that a Defendant would have no objection to all of this other so it did appear that there was some kind of collusion or plot, plan going on and it looks like by Mr. Merkel's affidavit that he's kind of agreeing with that.
>
> MR. HANSMEIER:  I think it's very natural for a Defendant to want to say that this case is settled and there's no reason for it to continue.  But again, if there's an agreement that he's going to be exonerated from liability, I would expect to see something in writing.  I don't think I would – well our client has not agreed to settle the matter I guess is the bottom line.

(Exhibit 4 at 40-41).  Hansmeier's unabashed misuse of his law license and position of trust as an officer of the court, embodied in his lies to Judge Bransford, all to obtain names to be fed into his extortion mill, was absolutely disgraceful.

**B.     Hansmeier protected himself by using proxies**

Hansmeier repeatedly caused other people to do things that he would later deny doing himself.  For example, Hansmeier had no problem directing his brother Peter to upload  pornographic movies to the Pirate Bay, and then representing to a Court that he

never uploaded a pornographic movie to the Pirate Bay "in my life."[4] Hansmeier consistently took refuge in forms, labels, meaningless filings, and technicalities to deflect responsibility for his extensive wrongdoing. Knowing that his entire extortion operation was built on a shabby foundation of fraudulently-obtained subpoenas, Hansmeier did virtually everything in this case by proxy. And, when the scheme collapsed, he sought to blame those proxies.

First, Hansmeier hid the fact that he and his codefendant, John Steele, were the attorneys responsible for filing every fraudulent copyright infringement lawsuit in this case. Hansmeier and Steele recruited an alcoholic and now-deceased Chicago attorney named Paul Duffy to serve as the putative owner of "Prenda Law," the firm that represented AF Holdings, Ingenuity 13, and the other sham plaintiffs in the various copyright cases. Hansmeier also recruited a California attorney named Brett Gibbs to be "of counsel" to Prenda Law in scores of cases filed in the state of California. Despite the fact that Gibbs took direction from Paul Hansmeier, not Paul Duffy, Hansmeier encouraged Gibbs to lie to Judge Wright by saying that Paul Duffy ran Prenda Law.

Second, Hansmeier hid the fact that Hansmeier and Steele beneficially owned and controlled the sham plaintiffs, AF Holdings and Ingenuity 13, whose "copyrighted works" were supposedly infringed. Hansmeier and Steele recruited a Utah law firm to incorporate

---

[4] Attached as Exhibit 5 is an Declaration Hansmeier filed in the Northern District of California in *AF Holdings v. Navasca*, in which he avers (in paragraph 6): "I have never created a Pirate Bay account in my life and categorically deny ever uploading and/or downloading any BitTorrent files of any past client of mine, including AF Holdings."

both entities in a Caribbean island country called the Federation of Nevis and St. Kitts in order to obscure their ownership. Hansmeier then later falsely claimed that a trust called "Salt Marsh" owned the entities, and a man named Mark Lutz, a paralegal who worked for Prenda Law, was the "manager." Hansmeier's efforts to distance himself from these sham companies is best illustrated in a deposition of Hansmeier taken in February 2013, attached hereto as Exhibit 6.

Third, when courts around the country sought to hold Hansmeier responsible for the fraud and damages he had wrought, Hansmeier resorted to perjury and suborning perjury to escape blame and retain the proceeds of the scheme. Hansmeier and Steele swore out false declarations, gave false testimony in depositions and at court hearings, and caused Lutz to do the same. In California, Hansmeier attempted to blame Gibbs for the misrepresentations and deception rampant in the lawsuits filed by Prenda Law.[5] The rich tapestry of lies constructed and promoted by Hansmeier are captured in neat microcosm by his declaration in the Navasca case, attached hereto as Exhibit 5. Therein, Hansmeier swears that:

- "I have never served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority over or an ownership interest in AF Holdings."

---

[5] In one particular California case, *Ingenuity 13 LLC v. John Doe,* 12-cv-08333, after the presiding judge, Otis Wright, denied Hansmeier's request for subpoena authority pending a showing by Ingenuity 13 "how it would proceed to uncover the identity of the actual infringer once it has obtained subscriber information – given that the actual infringer may be a person unrelated to the subscriber – while also considering how to minimize harassment and embarrassment of innocent citizens," Hansmeier prepared a motion to disqualify Judge Wright, filed under Gibbs's name, in which Hansmeier wrote that the "Honorable Judge Wright" has a "deep-seated hostility with which he regards this particular type of case," requiring Judge Wright's removal from the case. Attached as Exhibit 7 is the motion.

11

- o This sworn statement was entirely false. Hansmeier hired a Utah law firm to incorporate both entities, and made all litigation decisions for both entities. Bank records conclusively show that victim settlements from cases in which AF Holdings and Ingenuity 13 were the plaintiffs went into the coffers of Prenda Law, and were then generally split between Hansmeier and Steele.

- "I have not served as counsel of record for AF Holdings in this case. Further, I did not manage or have any supervisory authority over Brett Gibbs in this case. I did not draft the complaint filed in this case. Nor did I have settlement authority in this case."

  - o Each part of this sworn statement was entirely false. Although Paul Duffy was the titular owner of Prenda Law, Hansmeier and Steele controlled Prenda Law and Duffy suffered from such severe alcoholism that he often could not function as a lawyer. In fact, Hansmeier routinely mocked Duffy for his absenteeism and incompetence. Further, Gibbs functioned, in effect, as Hansmeier's stalking horse. Hansmeier drafted the complaints Gibbs filed in the state of California, and Hansmeier had ultimate settlement authority.

- "I served as a Federal Rules of Civil Procedure 30(b)(6) designee at the request of Brett Gibbs and Mark Lutz."

  - o As noted above, on February 19, 2013, Hansmeier sat for a deposition in the Navasca case as AF Holdings' Rule 30(b)(6) designee. Brett Gibbs and Mark Lutz did not "request" Hansmeier's testimony. Hansmeier beneficially owned AF Holdings, represented it as the law firm Prenda Law, and decided to testify independently of any "request" by Gibbs or Lutz. Furthermore, as

noted above, the degree of evasion and dishonesty Hansmeier displayed during that deposition was stunning.

- "I have never created a Pirate Bay account in my life and categorically deny ever uploading and/or downloading any BitTorrent files or any past client of mine, including AF Holdings."
  o Hansmeier directed his brother, Peter Hansmeier, to upload all of AF Holding's pornographic bait to the Pirate Bay using the handle "Sharkmp4." This classically-Hansmeierian statement is technically true, but entirely misleading.

### C. Money Laundering

In 2012, as part of their efforts to obfuscate the true ownership of AF Holdings, Ingenuity 13, Prenda Law, and other entities used by Hansmeier and Steele to carry out their fraudulent scheme, Hansmeier and Steele created a company named Under the Bridge Consulting. The function of this company was to funnel the illicitly obtained settlement monies from Prenda Law to Hansmeier and Steele. Over the following year, Hansmeier and Steele transferred more than $1 million from Prenda Law into Under the Bridge, and then shortly after each payment, transferred the profits from Under the Bridge to themselves. While secretly diverting the settlement proceeds to their own bank accounts, Hansmeier and Steele repeatedly—and falsely—represented to courts that they did not own or control AF Holdings, Ingenuity 13, or Prenda Law. It was not until Brett Gibbs published some of Prenda Law's bank records showing significant transfers to Under the

Bridge Consulting that it became apparent who truly controlled this mass settlement mill and received the lion's share of its fraudulent proceeds.

Even after Judge Wright's widely-read order sanctioning Hansmeier, Hansmeier continued to hide the money he gained through the fraudulent scheme. Hansmeier transferred money into his new law firm, Alpha Law, into accounts controlled by his wife, Padraigin Browne, and a sham trust called "Monyet," and then filed a fraudulent bankruptcy case concealing the fact that Hansmeier retained control over a substantial amount of the proceeds of his fraud case.

### III.    The Appropriate Sentence in Light of 18 U.S.C. § 3553(a)

Hansmeier's scheme caused widespread damage throughout the United States.

First, Hansmeier's scheme caused great consternation and embarrassment to Hansmeier's shakedown victims. Many of those victims were mere ISP subscribers and not the real downloaders. However, even the downloaders were victimized—after all, Hansmeier himself enticed and encouraged the conduct he sued upon. As much as he would like to think so, Hansmeier's disgraceful conduct in this case has no morally equivalent counterpart in even the worst of the downloaders.

Second, Hansmeier's scheme wasted judicial resources throughout the United States. It engendered a great deal of litigation regarding discovery, motions to quash, and motions for sanctions that should never have happened. And it brought embarrassment and disrepute to the legal profession.

Third, Hansmeier's scheme damaged the people Hansmeier used to commit this crime for him. Brett Gibbs was sanctioned by Judge Wright in California, and Hansmeier

tried to intimidate Gibbs into taking the fall for every fraudulent case filed in California.[6] Unfortunately, Hansmeier made good on his promise to pillory Gibbs in California by writing a false bar complaint, which the defendants had Mark Lutz sign and file with the California Board of Professional Responsibility. In addition, Hansmeier filed various declarations in the California courts falsely asserting that Gibbs was the driving force behind the California lawsuits.

    Gibbs was but one casualty of Hansmeier's proxy-oriented approach to defrauding the courts. Attorney Michael Dugas was sanctioned by the Minnesota Board of Professional Responsibility for his role in the Merkel case. Hansmeier put his own brother in harm's way by instructing him to upload copyrighted material to the Pirate Bay. Hansmeier and Steele caused Mark Lutz to perjure himself all over the United States. Only death saved Paul Duffy from the clutches of the Illinois Board of Professional Responsibility, and perhaps even indictment in this case. Unwitting attorneys across the nation, such as the various local counsel who filed suits on behalf of Prenda Law, sustained reputational damage from the stain arising out of the cases filed by Hansmeier.

    In summary, Hansmeier was greedy, arrogant, devious, mendacious, and consistently positioned other people to be damaged by his conduct, even as he enjoyed the proceeds of the scheme he orchestrated. Even now, Hansmeier continues to accept responsibility only in conditional terms, hoping to convince the appeals court that his

---

[6] Judge Wright eventually reversed his sanctions order against Gibbs when Gibbs broke away from Hansmeier and began telling the truth.

shocking abuse of his position of trust as a Minnesota attorney, and an officer of its courts, was somehow legal.

## IV.  Conclusion

For the foregoing reasons, the United States respectfully recommends that the Court sentence Mr. Hansmeier to 150 months' imprisonment,[7] a sentence within the guidelines range applicable to Hansmeier's scheme.

Dated: March 25, 2019

Respectfully submitted,

ERICA H. MACDONALD
United States Attorney

s/ *Benjamin F. Langner*

BY: BENJAMIN F. LANGNER
DAVID J. MACLAUGHLIN
Assistant U.S. Attorneys

BRIAN L. LEVINE
Senior Counsel
United States Department of Justice

---

[7] In the plea agreement, the government agreed not to recommend a sentence above 150 months.