# EXHIBIT 7

1  Brett L. Gibbs, Esq. (SBN 251000)
   Of Counsel to Prenda Law Inc.
2  38 Miller Avenue, #263
   Mill Valley, CA 94941
3  415-325-5900
   blgibbs@wefightpiracy.com
4
   *Attorney for Plaintiff*
5

6              IN THE UNITED STATES DISTRICT COURT FOR THE
7
                    CENTRAL DISTRICT OF CALIFORNIA
8

9
   INGENUITY13 LLC,                    )    **No.** 2:12-cv-08333-ODW-JC
10                                      )
              Plaintiff,                )    **PLAINTIFF'S MOTION FOR**
11                                      )    **DISQUALIFICATION OF**
        v.                              )    **HONORABLE JUDGE OTIS**
12                                      )    **D. WRIGHT, II**
   JOHN DOE,                           )
13                                      )
                                        )
14            Defendant.                )
   _____ )

15   __PLAINTIFF'S MOTION FOR DISQUALIFICATION OF HONORABLE__
                   __JUDGE OTIS D. WRIGHT, II__
16

17                **INTRODUCTION AND BACKGROUND**

18          The integrity of our judicial system rests, in large part, upon the assumption that

19   judges will regard the matters set before them with impartiality. The United States

20   Constitution contains various safeguards to ensure that, where a judge is unable to

21   regard a particular matter impartially, that judge shall be removed from considering

22   the case.

23          The story Plaintiff now sets forth is rather simple: Honorable Judge Otis D.

24   Wright, II simply abhors plaintiffs who attempt to assert their rights with respect to

25   online infringement of pornography copyrights.    Honorable Judge Wright's

26   abhorrence of such assertions of right under the Copyright Act has risen to a level

27   such that a neutral observer would have reasonable grounds to question Honorable

28   Judge Wright's impartiality. Indeed, in light of Honorable Judge Wright's conduct,

Plaintiff contends that it would be *impossible* to convince a neutral observer that Honorable Judge Wright regards this particular type of case impartially.

Honorable Judge Wright's conduct with respect to at least three different Plaintiffs unambiguously establishes the deep-seated hostility with which he regards this particular type of case. The first of these examples comes from a discovery Order issued by Honorable Judge Wright in *Malibu Media v. Does 1-10*, No. 12-cv-3623 (C.D. Cal. 2012)[1] at ECF No. 7 (hereinafter "*Malibu Media* Order.") A true and correct copy of the *Malibu Media* Order is attached hereto as Exhibit A. (*See* Exhibit A.) In the *Malibu Media* Order, Honorable Judge Wright cast a multitude of aspersions upon Malibu Media, and did so without any further basis than the very fact that Malibu Media was bringing a lawsuit to protect a pornography copyright. Honorable Judge Wright begins his barrage by asserting that "Though Malibu now has the keys to discovery, the Court warns Malibu that any abuses will be severely punished." (*See* Exhibit A at 5.) Honorable Judge Wright makes this assertion without *any* indication that Malibu Media had engaged in any such abuse in the past; the assertion was based wholly on the fact that Malibu Media was attempting to protect a pornography copyright. (*See,* generally, Exhibit A.) Honorable Judge Wright lobs his next volley by asserting that

> The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch ***what is essentially an extortion scheme,*** for a case that plaintiff has no intention of bringing to trial.

(*Id.* at 6) (Emphasis added.) Honorable Judge Wright asserts that Malibu Media is running an extortion scheme with the help of the federal judiciary, and further asserts that Malibu Media does not intend to bring the case to trial, without, once again, *any* reference to actual conduct by Malibu Media that would suggest that these allegations are true—except, once again, the bare fact that Malibu Media sought to protect a

---

[1] All subsequent case citations refer to cases in the Central District of California unless otherwise indicated

pornography copyright. Honorable Judge Wright completes his diatribe against Malibu Media by asserting that

> By requiring Malibu Media to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement—making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do so the old-fashioned way and earn it.

(*Id.* at 6.)   Honorable Judge Wright clearly wanted to punish Malibu Media for bringing its action; while not going as far as to deny discovery altogether, he wanted Malibu Media to expend more money to protect its copyrights.   Though Honorable Judge Wright was clearly unhappy with the prospect of Malibu Media protecting its rights under the Copyright Act through early discovery, he nevertheless permitted Malibu Media to take discovery with respect to Doe 1, severing Does 2-10. (*Id.* at 7.) In other words, Honorable Judge Wright begrudgingly drew this line in the sand, while clearly not being thrilled with Malibu Media's actions. As explained below, however, Honorable Judge Wright's contentment with owners of pornography copyrights has only grown worse since then; most recently, copyright owners filing individual cases are not even getting the "courtesies" extended to Malibu Media in the above-referenced order.

On October 4, 2012, a series of 24 cases filed by AF Holdings LLC[2]—each of which alleged online infringement of a pornography copyright by an as yet unknown *individual*—was transferred to Honorable Judge Wright. Honorable Judge Wright's previous satisfaction with owners of pornography copyrights having to file separate actions against each individual defendant lasted only a few months; his "precedent" was obliterated in October of the same year. On October 19, 2012, Honorable Judge

---

[2] *AF Holdings v. John Doe*: 2:12-cv-05709-ODW-JC, 2:12-cv-05712-ODW-JC, 2:12-cv-05722-ODW-JC, 2:12-cv-05725-ODW-JC, 2:12-cv-06636-ODW-JC, 2:12-cv-06637-ODW-JC, 2:12-cv-06665-ODW-JC, 2:12-cv-06667-ODW-JC, 2:12-cv-06669-ODW-JC, 2:12-cv-06670-ODW-JC, 2:12-cv-07384-ODW-JC, 2:12-cv-07387-ODW-JC, 2:12-cv-07391-ODW-JC, 2:12-cv-07401-ODW-JC, 2:12-cv-07402-ODW-JC, 2:12-cv-07403-ODW-JC, 2:12-cv-07405-ODW-JC, 2:12-cv-07406-ODW-JC, 2:12-cv-07407-ODW-JC, 2:12-cv-08320-ODW-JC, 2:12-cv-08321-ODW-JC, 2:12-cv-08325-ODW-JC

Wright issued an Order Vacating Early Discovery Orders and Order to Show Cause (hereinafter "*AF Holdings* Order") in each and every one of the 24 *AF Holdings v. Doe* cases that were related and transferred to him. (*See AF Holdings v. Doe*, 2:12-cv-05709-ODW-JC at ECF No. 9) A true and correct copy of the *AF Holdings* Order is attached hereto as Exhibit B. (*See* Exhibit B.) In issuing the *AF Holdings* Order, Honorable Judge Wright contradicted *his own precedent* from the June 27, 2012 Malibu Media Order; despite the fact that each and every one of the cases subject to the Order was filed against an individual Doe Defendant, Honorable Judge Wright apparently was no longer convinced that that was sufficient to constitute "earning" the right to protect a pornography copyright. Furthermore, Honorable Judge Wright's *AF Holdings* Order contained the same generalized, baseless aspersions against AF Holdings as those which Honorable Judge Wright had cast in the Malibu Media Order.  The Order's reasoning begins by asserting that "The Court is concerned with the potential for discovery abuse in cases like this." (*See* Exhibit A at 1.) Honorable Judge Wright goes on to generically describe the methodology by which online copyright infringement is litigated, but as with the *Malibu Media* Order, Honorable Judge Wright does not indicate *even one example* of conduct on the part of AF Holdings—other than the bare fact that it was attempting to protect a pornography copyright— that would indicate the risk of such abuse. Honorable Judge Wright goes on to assert that "The Court has a duty to protect the innocent citizens of this district from this sort of *legal shakedown*, even though a copyright holder's rights may be infringed by a few deviants." (*Id.* at 2) (Emphasis added.) Within the span of two paragraphs, Honorable Judge Wright accused AF Holdings of posing the risk of discovery abuse and of engaging in a legal shakedown of innocent citizens, and did so, once again, without providing *even one instance* of conduct on the part of AF Holdings that would support such allegations—other than, of course, the fact that AF Holdings was attempting to protect its pornography copyright. A notable phrase from

the above citation is Honorable Judge Wright's assertions that "a copyright holder's rights may be infringed by a few deviants." *Id.* Indeed, this misunderstanding of the rampant ubiquity of copyright infringement may be the source of Honorable Judge Wright's considerable prejudice. For the record, it is well-known that copyright infringement is rampant, and is not, as Honorable Judge Wright suggested, engaged in by only a "few deviants." As the Court in *MGM v. Grokster* noted, "digital distribution of copyrighted material threatens copyright holders as never before" —an assertion which ***preceded*** the present ubiquity of high-speed Internet (and of Internet access generally) and highly efficient file-sharing protocols such as BitTorrent; earlier file-sharing protocols, such as Napster, were much slower and much less reliable.[3] Thus, the situation is obviously much graver now than it was in 2005, when the aforementioned holding was issued. Honorable Judge Wright goes on to describe AF Holdings' discovery process as a "fishing expedition", and it naturally bears repeating that Honorable Judge Wright does not cite ***even one*** example of conduct on the part of AF Holdings that would support this characterization—other than, of course, the fact that AF Holdings sought to protect a pornography copyright.

Honorable Judge Wright's substantial prejudice against pornography copyright holders was further demonstrated by the subsequent actions he took in the AF Holdings cases. The dockets for those cases indicate that Honorable Judge Wright had not ruled on whether AF Holdings had shown sufficient cause to warrant early discovery, and still has not done so. Nevertheless, Honorable Judge Wright issued an Order to Show Cause Re Lack of Service in each and every case that had exceeded the 120-day service provision contained in Federal Rule of Civil Procedure 4(m). A true and correct copy of one such order is attached hereto as Exhibit C. (*See* Exhibit C.) The Supreme Court, however, has unambiguously held that "the 120-day provision operates not as an outer limit subject to reduction, but as an irreducible allowance."

---

[3] *MGM v. Grokster*, 545 US 913 (2005).

*Henderson v. United States*, 517 US 654, 661 (1996). The Supreme Court also noted that "courts have been accorded discretion to enlarge the 120-day period even if there is no good cause shown." *Id.* (Internal citations omitted). The fact that Honorable Judge Wright did not find good cause in a situation where, at least in some cases, AF Holdings did not even have information back from the subscriber as a result of Honorable Judge Wright's own Order Vacating Discovery—which, of course, left AF Holdings with no person to name or serve—further demonstrates Honorable Judge Wright's clear intent to quickly dispose of this type of case, regardless of the individual merits of each action. The Supreme Court asserted that courts have discretion to enlarge the 120-day period ***even when no good cause is shown***, and yet Honorable Judge Wright did not find ***his own order vacating discovery*** to be sufficient good cause. Furthermore, Honorable Judge Wright gave AF Holdings ***7 days***, in the midst of the federal holiday season, to respond to the Order.[4]

Honorable Judge Wright conducted himself in nearly the exact same manner with respect to Plaintiff in the instant action, Ingenuity13. On December 19, 2012, a series of 18 Ingenuity13 cases[5] —each of which alleged online infringement of a pornography copyright by an as yet unknown *individual*—was transferred to Honorable Judge Wright. On December 20, 2012, ***just one day later,*** Honorable Judge Wright issued an Order Vacating Discovery and Order to Show Cause in each and every Ingenuity13 case assigned to him (hereinafter "*Ingenuity13* Order.") (*See* 2:12-cv-06662-ODW-JC at ECF No. 11.) A true and correct copy of the *Ingenuity13* Order is attached hereto as Exhibit D. (*See* Exhibit D.) If there was any ambiguity as to whether Honorable Judge Wright generically disposes of each holder of pornography copyrights in the same manner, such ambiguity was put to rest by the

---

[4] The order was issued on December 20, 2012.
[5] *Ingenuity13 v. Doe*: 2:12-cv-06662-ODW-JC, 2:12-cv-06664-ODW-JC, 2:12-cv-06668-ODW-JC, 2:12-cv-07385-ODW-JC, 2:12-cv-07386-ODW-JC, 2:12-cv-07408-ODW-JC, 2:12-cv-07410-ODW-JC, 2:12-cv-08322-ODW-JC, 2:12-cv-08323-ODW-JC, 2:12-cv-08324-ODW-JC, 2:12-cv-08326-ODW-JC, 2:12-cv-08327-ODW-JC, 2:12-cv-08328-ODW-JC, 2:12-cv-08330-ODW-JC, 2:12-cv-08331-ODW-JC, 2:12-cv-08332-ODW-JC, 2:12-cv-08333-ODW-JC, 2:12-cv-08336-ODW-JC

promptness with which Honorable Judge Wright repeated, verbatim, his apparently quite deeply-held beliefs about the nature of such copyright holders. In the *Ingenuity13* Order, Honorable Judge Wright once again asserted that "The Court is concerned with the potential for discovery abuse in cases like this," (*Id.* at 1*), once again offering no further justification than the fact that Ingenuity13 is attempting to protect pornography copyrights. Once again, Honorable Judge Wright repeats his generic assertion from the *AF Holdings* Order that "this Court has a duty to protect the innocent citizens of this district from this sort of legal shakedown," but does not provide **a single fact** indicating that AF Holdings engaged in such a shakedown *(Id.)*. Once again Honorable Judge Wright repeats his erroneous assertion that copyright infringement is committed only by "a few deviants." (*Id.*) Though the *Ingenuity13* Order is virtually identical to the *AF Holdings* Order, one notable addition was Honorable Judge Wright's assertion that "Ingenuity13 must also explain how it can guarantee to the Court that any such subscriber information would not be used to simply coerce a settlement from the subscriber (the easy route), as opposed to finding out who the true infringer is (the hard route)." (*Id.* at 2-3.) Once again, Honorable Judge Wright bases a serious allegation, that Ingenuity13 coerces settlements, solely on the fact that Ingenuity13 attempts to protect pornography copyrights. The *Malibu Media* Order, the *AF Holdings* Order, and the *Ingenuity13* Order are **wholly** devoid of any factual basis for Honorable Judge Wright's allegations, save for the one thing that Malibu Media, AF Holdings, and Ingenuity13 have in common: they are all holders of pornography copyrights.

It is an unchangeable fact that, as human beings, our inner values and perspectives will shape our actions. A judge, however, has an obligation to temper personal prejudices when acting in the capacity of a judge. Honorable Judge Wright's conduct unambiguously indicates that he harbors deeply-held prejudice against plaintiffs who pursue claims of online infringement of pornography copyright—and

perhaps any copyright. Honorable Judge Wright had a responsibility, as a judge, to not allow that deeply-held prejudice to influence his conduct; his actions, as described above, indicate a clear failure to satisfy that responsibility.

Plaintiff now turns to the legal basis under which Honorable Judge Wright's conduct merits his disqualification from the instant action.

## LEGAL STANDARD

"Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *Liteky v. United States,* 510 US 540, 547 (*Citing* 28 U.S.C. § 455(a)). Under 28 U.S.C. § 455(a), "what matters is not the reality of bias or prejudice but its appearance." *Id.* at 548. Though there is an extrajudicial source factor—one which examines whether the evidence of bias on the part of a judge came from an extrajudicial source—this factor has several exceptions, one of which is the "pervasive bias" exception. *Id.* at 551 (*Citing Davis v. Board of School Comm'rs of Mobile County*, 517 F. 2d 1044, 1051 (CAS 1975)). The *Davis* Court defined the exception as follows: "there is an exception where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." *Davis v. Board of School Comm'rs of Mobile County,* 517 F. 2d 1044, 1051. As the Supreme Court asserted, "the fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for 'bias or prejudice' recusal." *Id. at* 554.

///

///

///

## ARGUMENT

## I. HONORABLE JUDGE WRIGHT'S CONDUCT CONSTITUTES PERVASIVE BIAS

As set forth more fully in Plaintiff's Introduction and Background section,

Honorable Judge Wright has demonstrated pervasive bias against at least three different plaintiffs who sought to protect pornography copyrights. As described in Plaintiff's Introduction and Background, Honorable Judge Wright has summarily ascribed the same set of deplorable attributes to Malibu Media, AF Holdings, and Ingenuity13 on the sole basis that each sought to protect pornography copyrights. These attributes include: (1) discovery abuse; (2) use of the Court as a cog in a copyright enforcement business model; (3) coercion of settlement; (4) engaging in a legal shakedown of innocent citizens; (5) taking action when only a few deviants engage in copyright infringement (as described above, a factually erroneous assertion). Honorable Judge Wright's pattern of pervasive bias was further demonstrated by the fact that, in the *Malibu Media* Order, he asserted that it would be sufficient for plaintiff in the action to sue defendants individually for it to "earn" the right to "vindicate its copyrights" (*See* Exhibit A at 6), but retreated from *his own precedent* a scant four months later, indicating to AF Holdings in his *AF Holdings* Order (*See* Exhibit B at 2), and to Ingenuity13 in his *Ingenuity13* Order (*See* Exhibit D at 2), that he believes they are engaging in a "legal shakedown", despite having filed individual lawsuits. Honorable Judge Wright also put forth orders that appeared to have been issued with the intention of summarily disposing of these cases, especially in AF Holdings, where he issued Orders to Show Cause Re Lack of Service pursuant to 4(m)—the Supreme Court has held that a Court, in its discretion, may extend the deadline even where there is *no good cause*, and yet the Court chose to issue this Order, **with a 7 day deadline**, in cases where Honorable Judge Wright's own Order vacating the prior discovery orders (*See* Exhibit B) rendered identification of the subscriber impossible in cases where the ISP had not yet responded.

Though Honorable Judge Wright demonstrated his bias through judicial conduct, it is quite likely that the bias itself stemmed from an extrajudicial source. Had Honorable Judge Wright had any specific concerns with respect to Malibu Media,

AF Holdings, or Ingenuity13, one can imagine that he would have included such concerns in his orders to each of those parties. Instead, each order contained a generic, though vitriolic, characterization of each plaintiff as a bad actor, and did so solely on the basis of the fact that each was attempting to protect a pornography copyright. Indeed, the fact that Honorable Judge right summarily repeated nearly identical allegations against each plaintiff, without offering a single factual basis specific to any of the plaintiffs, is prima facie evidence that Honorable Judge Wright was developing his generalized conclusions about holders of pornography copyrights, as well as his determination that these generalized conclusions summarily apply to **all** pornography copyright holders, from an extrajudicial source.

## II.   HONORABLE JUDGE WRIGHT'S IMPARTIALITY MIGHT REASONABLY BE QUESTIONED

In light of the facts presented herein, it is indisputable that an objective analysis of these facts would reasonably call into question Honorable Judge Wright's impartiality. Honorable Judge Wright's actions in each of the respective cases, particularly with regard to AF Holdings and Ingenuity13, clearly indicate an attempt to demolish the cases. It appears that Honorable Judge Wright's bias with respect to pornography copyright holders has deepened over the past few months; while he granted early discovery to Malibu Media with respect to one of the Doe Defendants in the action, he vacated prior discovery orders that were granted in cases which *followed the letter of Honorable Judge Wright's Malibu Media Order*—each case was against an individual Defendant. Despite this fact, Honorable Judge Wright vacated the prior discovery orders, and in support of this decision, he simply provided more generalized aspersions of pornography copyright holders attempting to protect their copyrights. *Stare decisis* is a key underpinning of our judicial system, and a judge who is willing to overturn *his own holding in less than four months* is clearly motivated by underlying vitriol toward the parties in question. Honorable Judge Wright's ascribing

identical, generalized characteristics to three different plaintiffs would objectively lead his impartiality to be reasonably questioned.

### CONCLUSION

The only way in which Honorable Judge Wright's conduct, as described herein, would be acceptable is if pornography copyright holders were subject, *ab initio,* to a completely different standard than other plaintiffs in the court system. A cursory inspection of the Copyright Act indicates no such differing standard. As such, Honorable Judge Wright's determination that all parties attempting to protect pornography copyrights are engaged in extortion is unambiguously indicative of a degree of bias that is simply not allowed under the purview of 28 U.S.C. § 455. Ultimately, Plaintiff is willing to bear a loss on the merits of its case, but Plaintiff cannot simply stand by while its right to assert its copyright is summarily denounced simply because of the nature of its copyrighted work. One of the foundational underpinnings of our judicial system is equality under the law—Plaintiff will be deprived of this constitutional guarantee should its cases be heard by a judge who has already deemed Plaintiff herein, as well as all similarly situated plaintiffs, guilty of misconduct.

Respectfully Submitted,

**DATED: December 30, 2012**

By: _____ /s/ Brett L. Gibbs_____

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

PLAINTIFF'S MOTION FOR DISQUALIFICIATION      No. 2:12-cv-8333-ODW-JC

**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MALIBU MEDIA, LLC,

                           Plaintiff,

      v.

JOHN DOES 1 through 10,

                         Defendants.

Case No. 2:12-cv-3623-ODW(PJWx)

**ORDER**

      This case concerns the alleged BitTorrent transfer of the pornographic film "Blonde Ambition." Plaintiff Malibu Media, LLC filed suit for copyright infringement against ten Doe Defendants. Now, Malibu seeks leave to serve third party subpoenas prior to the Rule 26(f) conference. (ECF No. 5.) Generally, parties may not seek discovery from any source prior to the Rule 26(f) conference. Fed. R. Civ. P. 26(d). But exceptions are allowed by court order. *Id.* Malibu seeks an exception, contending that the anonymity afforded by the Internet cloaks all information about the infringers, save their IP addresses. (Mot. 2.) Without subpoenaing these infringers' internet service providers ("ISP"), Malibu asserts there is no other way to reveal the infringers' identities. (Mot. 5.) For the reasons discussed below, the Court **GRANTS IN PART** Malibu's motion.[1]

---

[1] Having carefully considered the papers filed in support of this motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

# I.   BACKGROUND

The BitTorrent protocol allows users to transfer files over the Internet.  Like other file-sharing technology, BitTorrent may be used to legally upload or download computer files—and it may also be used to pirate copyrighted software, movies, music, and anything else that may exist on computer-readable media.  But unlike other file-sharing technology, where users connect to each other or to a central repository to transfer files, files shared via BitTorrent exist in a swarm, with pieces of the whole file distributed among the users.

The following example illustrates this technology:

- The original user posts a 100MB movie file on a BitTorrent tracker website. The file exists only on that user's computer—the file is not uploaded to the tracker website;

- Other users discover this movie file through the tracker website and log onto the BitTorrent swarm to download this file;

- On the original user's computer, BitTorrent software divides the 100MB movie file into 10,000 pieces, each representing a 10kB chunk;

- As downloaders log onto the BitTorrent swarm, these 10kB pieces are randomly distributed—the first piece to the first downloader, the fifth piece to the second downloader, etc.;

- After the initial pieces are transferred, additional pieces are randomly transferred to the downloaders—the first downloader may now have the first and 500th pieces; the second downloader may now have the second and 900th pieces, etc.;

- Once sufficient pieces have been distributed to downloaders in the swarm, the BitTorrent protocol will automatically transfer pieces between downloaders— the first downloader may receive the 900th piece from the second downloader, the second downloader may receive the first piece from the first downloader, etc.;

2

- The BitTorrent swarm becomes larger as more users log on and more pieces are distributed;
- Once every piece of the original file has been uploaded to the collective swarm, the original uploader may log off—the entire movie exists in pieces in the swarm;
- When a downloader has received all 10,000 pieces of the 100MB movie file, his BitTorrent software reassembles the pieces to reconstruct the original file on his computer;
- These completed downloaders may then log off, or may remain online to continue seeding the pieces of the file to other downloaders.

There are several nuances about the BitTorrent protocol. First, every participant may upload and download pieces of the file. Second, these individual pieces are useless until a user has all of them; the user cannot reassemble the original file with even 99% of the pieces. Third, a user may log on and download just one piece (e.g., a 10kb piece) of the file and then log off, waiting to download the other pieces later or discarding the downloaded piece. Fourth, a user may restrict his BitTorrent software to only download pieces, and not upload.

When Malibu discovered that its film was being pirated via BitTorrent, it hired IPP, Limited to investigate. (Fieser Decl. ¶ 11.) IPP logged onto the BitTorrent swarm for the film and downloaded various pieces of the movie file from the Defendants. (*Id.* ¶ 17–19.) These pieces, when reassembled with other pieces, result in the copyrighted film. (*Id.* ¶ 20–21.) By this investigation, IPP discovered the IP addresses of the 10 Doe Defendants, along with the date and time of the alleged infringing activity. (*Id.* ¶ 22.)

/ / /

/ / /

/ / /

/ / /

3

## II.    DISCUSSION

Malibu asks the Court to subpoena the ISPs owning these 10 IP addresses, to uncover their subscriber logs to identify the names and addresses of the 10 Doe Defendants.

### A.    Third party subpoenas

In lawsuits against Doe defendants, the plaintiff should ordinarily be allowed discovery to uncover their identities. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  But discovery may be denied if it is (1) clear that discovery would not uncover the identities, or (2) that the complaint would be dismissed on other grounds. *Id.*

Under the first condition, Malibu represents that these ISP subscriber logs will lead to the individual infringers. (Mot. 5.)  Assuming that is true, the subscriber may not be the actual infringer.  For instance, a person may be the subscriber, but his roommate is the actual infringer.  And the subscriber may have his home network configured to allow visitors, including strangers, to access the Internet—and use BitTorrent.  Further, the subscriber may be a business (e.g., a coffee shop), and Internet access may be open to all employees and customers.  In some situations, the identity of the subscriber may yield the identity of the infringer; in others, the infringer may never be known.

Although the Court is inclined to allow Malibu to conduct this discovery, the potential for abuse is very high.  The infringed work is a pornographic film.  To save himself from embarrassment, even if he is not the infringer, the subscriber will very likely pay the settlement price.  And if the subscriber is a business, it will likely pay the settlement to save itself from the hassle and cost of complying with discovery— even though one of its customers or employees is the actual infringer.

/ / /

/ / /

/ / /

/ / /

As for the second *Gillespie* condition, Malibu has not shown sufficient facts to show that the complaint should not be dismissed. Malibu avers that the 10 Doe Defendants have each connected to the IPP server to "transmit a full copy, or a portion thereof" of "Blonde Ambition." (Compl. ¶ 40.) But Malibu does not show which Doe Defendants transmitted a full copy, and which transmitted just one piece of the file. As noted above, individual BitTorrent file pieces are worthless—by themselves they can never be reconstructed into the original file. Nor do the individual file pieces resemble a partial movie clip: if a 10-minute movie file was split into 60 pieces by BitTorrent, the resulting pieces are not playable 10-second clips of the movie. If it is the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and then uploaded a single piece to the IPP server, and then logged off, all he has done is transmit an unusable fragment of the copyrighted work. Without the remaining pieces, this Doe Defendant cannot do anything with this scrap of data.

At this stage, the Court declines to opine whether transmitting pieces of a copyrighted work using BitTorrent, without transmitting all of the pieces, constitutes copyright infringement. But the Court notes that Malibu's case is weak if all it can prove is that the Doe Defendants transmitted only part of all the BitTorrent pieces of the copyrighted work.

In sum, the Court finds that privacy concerns are balanced with the need for discovery by allowing Malibu to subpoena the ISP for John Doe 1. Though Malibu now has the keys to discovery, the Court warns Malibu that any abuses will be severely punished.

## B.   Defendants are improperly joined

Malibu offers no evidence justifying the joinder of the Doe Defendants. According to Malibu, these 10 Doe Defendants connected to the IPP server on different dates and times, and from different locations. (Compl. Ex. A.) The loose proximity of the alleged infringements (March 5, 2012–April 12, 2012) does not show that these Defendants participated in the same swarm. As discussed above, a

1  downloader may log off at any time, including before receiving all the pieces of the
2  copyrighted work.  Without evidence that these Does acted in concert, joinder is
3  improper—the Doe Defendants should be severed and dismissed under Federal Rule
4  of Civil Procedure 21.

5  **C.  The economics of pornographic copyright lawsuits**

6  The Court is familiar with lawsuits like this one.  *AF Holdings LLC v. Does 1-*
7  *1058*, No. 1:12-cv-48(BAH) (D.D.C. filed January 11, 2012); *Discount Video Center,*
8  *Inc. v. Does 1-5041*, No. C11-2694CW(PSG) (N.D. Cal. filed June 3, 2011); *K-Beech,*
9  *Inc. v. John Does 1-85*, No. 3:11cv469-JAG (E.D. Va. filed July 21, 2011).  These
10  lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie;
11  plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the
12  movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if
13  successful, plaintiff will send out demand letters to the Does; because of
14  embarrassment, many Does will send back a nuisance-value check to the plaintiff.
15  The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps.  The
16  rewards: potentially hundreds of thousands of dollars.  Rarely do these cases reach the
17  merits.

18  The federal courts are not cogs in a plaintiff's copyright-enforcement business
19  model.  The Court will not idly watch what is essentially an extortion scheme, for a
20  case that plaintiff has no intention of bringing to trial.  By requiring Malibu to file
21  separate lawsuits for each of the Doe Defendants, Malibu will have to expend
22  additional resources to obtain a nuisance-value settlement—making this type of
23  litigation less profitable.  If Malibu desires to vindicate its copyright rights, it must do
24  it the old-fashioned way and earn it.

25  / / /
26  / / /
27  / / /
28  / / /

6

# III.    CONCLUSION

For the reasons discussed above, Malibu's Motion is **GRANTED IN PART**. Malibu may now subpoena Cox Communications for the identity of John Doe 1.  The other Doe Defendants are hereby severed from this case.  If Malibu chooses to refile against John Does 2-10, it must also submit a notice of related case.

**IT IS SO ORDERED.**

June 27, 2012

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

7

1
2
3
4
5
6
7           **UNITED STATES DISTRICT COURT**
8           **CENTRAL DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10 AF HOLDINGS LLC, | Case No. 2:12-cv-5709-ODW(JCx) |
| 11            Plaintiff, | **ORDER VACATING PRIOR EARLY** |
| 12      v. | **DISCOVERY ORDERS AND** |
| 13 JOHN DOE, | **ORDER TO SHOW CAUSE** |
| 14            Defendant. | |

15          This copyright infringement case filed by Plaintiff AF Holdings LLC has been

16   transferred to this Court.  The Court hereby **VACATES** any prior order in this case

17   allowing for the issuance of a Rule 45 subpoena prior to a Rule 26(f) scheduling

18   conference.  The Court also orders AF Holdings to cease its discovery efforts relating

19   to or based on information obtained through any abovementioned Rule 45 subpoenas.

20   Within 14 days of this order, AF Holdings shall submit a discovery status report

21   detailing its discovery efforts in this case with respect to identifying or locating the

22   Doe Defendant.   This report must name all persons that have been identified,

23   including subscribers, through any Rule 45 subpoenas.  Failure to timely comply with

24   this order will result in the dismissal of this case.

25          The Court is concerned with the potential for discovery abuse in cases like this.

26   AF Holdings accuses the Doe Defendant of illegally copying a pornographic video.

27   But the only information AF Holdings has is the IP address of the Doe Defendant.  An

28   IP address alone may yield subscriber information, but that may only lead to the

person paying for the internet service and not necessarily the actual infringer, who may be a family member, roommate, employee, customer, guest, or even a complete stranger. *Malibu Media LLC v. John Does 1–10*, No. 2:12-cv-01642-RGK-SSx, slip op. at 4 (C.D. Cal. Oct. 10, 2012). And given the subject matter of AF Holdings's accusations and the economics of defending such a lawsuit, it is highly likely that the subscriber would immediately pay a settlement demand—regardless whether the subscriber is the actual infringer. This Court has a duty to protect the innocent citizens of this district from this sort of legal shakedown, even though a copyright holder's rights may be infringed by a few deviants. Thus, when viewed with the public interest in mind, the Court is reluctant to allow any fishing-expedition discovery when all a plaintiff has is an IP address—the burden is on the plaintiff to find other ways to more precisely identify the accused infringer without causing collateral damage.

Thus, the Court hereby **ORDERS** AF Holdings **TO SHOW CAUSE** in writing within 14 days why early discovery is warranted in this situation. Under Ninth Circuit precedent, a plaintiff should ordinarily be allowed discovery to uncover their identities, but discovery may be denied if it is (1) clear that discovery would not uncover the identities, or (2) that the complaint would be dismissed on other grounds. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). AF Holdings must demonstrate to the Court, in light of the Court's above discussion, how it would proceed to uncover the identity of the actual infringer once it has obtained subscriber information—given that the actual infringer may be a person entirely unrelated to the subscriber—while also considering how to minimize harassment and embarrassment of innocent citizens. Failure to timely comply with this order will also result in the dismissal of this case.

AF Holdings's discovery status report and response to this Order to Show Cause should be filed only in case no. 2:12-cv-5709-ODW(JCx), and should be combined with the discovery status reports and responses for the related cases, unless

AF Holdings believes that separate papers are necessary to distinguish the differences between the individual cases.

**IT IS SO ORDERED.**

October 19, 2012

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS LLC, | Case No. 2:12-cv-5709-ODW(JCx) |
| Plaintiff, | **ORDER TO SHOW CAUSE RE LACK OF SERVICE** |
| v. | |
| JOHN DOE, | |
| Defendant. | |

Under Federal Rule of Civil Procedure 4(m), defendants must be served within 120 days after the complaint is filed, or else the Court "must dismiss the action without prejudice." Fed. R. Civ. P. 4(m). This action commenced on July 2, 2012—no proof of service has been filed with the Court, and Defendant has not appeared in this case.

Plaintiff is hereby **ORDERED TO SHOW CAUSE** why Defendant has not been timely served. Plaintiff has 7 days to comply with this order; or if Defendant have been served, Plaintiff has 7 days to file the proof of service. Failure to respond will result in dismissal of this action.

**IT IS SO ORDERED.**

December 20, 2012

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC, | Case No. 2:12-cv-6662-ODW(JCx) |
| Plaintiff, | **ORDER VACATING PRIOR EARLY DISCOVERY ORDERS AND ORDER TO SHOW CAUSE** |
| v. | |
| JOHN DOE, | |
| Defendant. | |

This copyright infringement case filed by Plaintiff Ingenuity 13 LLC has been transferred to this Court. The Court hereby **VACATES** any prior order in this case allowing for the issuance of a Rule 45 subpoena prior to a Rule 26(f) scheduling conference. The Court also orders Ingenuity 13 to cease its discovery efforts relating to or based on information obtained through any abovementioned Rule 45 subpoenas—Ingenuity 13's previously issued subpoenas in this case are hereby **QUASHED**. Within 3 days of this order, Ingenuity 13 must serve a copy of this order to all parties it subpoenaed in this case.

Further, Ingenuity 13 must submit a discovery status report detailing its discovery efforts in this case with respect to identifying or locating the Doe Defendant by December 31, 2012. This report must name all persons that have been identified, including subscribers, through any Rule 45 subpoenas.

The Court is concerned with the potential for discovery abuse in cases like this. Ingenuity 13 accuses the Doe Defendant of illegally copying a pornographic video.

But the only information Ingenuity 13 has is the IP address of the Doe Defendant.  An IP address alone may yield subscriber information.  But that will only lead to the person paying for the internet service and not necessarily the actual infringer, who may be a family member, roommate, employee, customer, guest, or even a complete stranger.  *Malibu Media LLC v. John Does 1–10*, No. 2:12-cv-01642-RGK-SSx, slip op. at 4 (C.D. Cal. Oct. 10, 2012).  And given the subject matter of Ingenuity 13's accusations and the economics of defending such a lawsuit, it is highly likely that the subscriber would immediately pay a settlement demand—regardless whether the subscriber is the actual infringer.  This Court has a duty to protect the innocent citizens of this district from this sort of legal shakedown, even though a copyright holder's rights may be infringed by a few deviants.  And unlike law enforcement in child pornography or other internet crime cases, the Court has no guarantee from a private party that subscriber information will not abused or that it would be used for the benefit of the public.  Thus, when viewed with the public interest in mind, the Court is reluctant to allow any fishing-expedition discovery when all a plaintiff has is an IP address—the burden is on the plaintiff to find other ways to more precisely identify the accused infringer without causing collateral damage.

Thus, the Court hereby **ORDERS** Ingenuity 13 **TO SHOW CAUSE** in writing by December 31, 2012, why early discovery is warranted in this situation.  No appearances are necessary.  Under Ninth Circuit precedent, a plaintiff should ordinarily be allowed discovery to uncover their identities, but discovery may be denied if it is (1) clear that discovery would not uncover the identities, or (2) that the complaint would be dismissed on other grounds.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Ingenuity 13 must demonstrate to the Court, in light of the Court's above discussion, how it would proceed to uncover the identity of the actual infringer once it has obtained subscriber information—given that the actual infringer may be a person entirely unrelated to the subscriber—while also considering how to minimize harassment and embarrassment of innocent citizens.  Ingenuity 13 must also

1  explain how it can guarantee to the Court that any such subscriber information would
2  not be used to simply coerce a settlement from the subscriber (the easy route), as
3  opposed to finding out who the true infringer is (the hard route).

4        Ingenuity 13's discovery status report and response to this Order to Show Cause
5  should be filed only in case no. 2:12-cv-6662-ODW(JCx), and should be combined
6  with the discovery status reports and responses for the related Ingenuity 13 cases.
7  Failure to timely comply with this order will result in the dismissal of this case.

8        **IT IS SO ORDERED.**

9  December 20, 2012

10

11  _____

12          **OTIS D. WRIGHT, II**
         **UNITED STATES DISTRICT JUDGE**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Brett L. Gibbs, Esq. (SBN 251000)
    Of Counsel to Prenda Law Inc.
2   38 Miller Avenue, #263
    Mill Valley, CA 94941
3   415-325-5900
    blgibbs@wefightpiracy.com
4
    *Attorney for Plaintiff*
5

6               IN THE UNITED STATES DISTRICT COURT FOR THE

7                    CENTRAL DISTRICT OF CALIFORNIA

8

9   INGENUITY13 LLC,                    )       **No.** 2:12-cv-08333-ODW-JC
                                        )
10                 Plaintiff,           )       **[PROPOSED] ORDER GRANTING
                                        )       PLAINTIFF'S MOTION FOR
11         v.                           )       DISQUALIFICATION OF HONORABLE
                                        )       JUDGE OTIS D. WRIGHT, II**
12  JOHN DOE,                           )
                                        )
13                 Defendant.           )
                                        )
14  ─────────────────────────────────── )

15  **ORDER GRANTING PLAINTIFF'S MOTION FOR DISQUALIFICATION OF
        HONORABLE JUDGE OTIS D. WRIGHT, II**

16          THIS CAUSE is before the Court upon Plaintiff's Motion for Disqualification of

17  Honorable Judge Otis D. Wright, II from the above-captioned case.

18          THIS COURT has reviewed Plaintiff's Motion, the pertinent part of the record, and

19  relevant case law, and is otherwise fully advised of the premise. Accordingly,

20          IT IS HEREBY ORDERED that Plaintiff's Motion for Disqualification of Honorable

21  Judge Otis D. Wright, II is GRANTED;

22          IT IS FURTHER ORDERED that the above-captioned case shall be reassigned to

23  another judge in accordance with the Central District of California's Local Rules.

24  IT IS SO ORDERED.

25

26  Dated: _____          _____

27                                              United States District Judge

28