UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-CR-334(1) (JNE/KMM)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING POSITION PAPER AND MOTION FOR EVIDENTIARY HEARING** |
| v. | |
| (1) PAUL R. HANSMEIER, | |
| Defendant. | |

The United States of America, by and through its attorneys Erica H. MacDonald, United States Attorney for the District of Minnesota, and Assistant United States Attorneys Benjamin F. Langner and David J. MacLaughlin, and Brian Levine, U.S. Department of Justice Senior Counsel, submits this response to the sentencing memorandum filed by defendant Paul R. Hansmeier.

**I.      Defendant's Objections**

Hansmeier raises three objections to the PSR.  *See* Defendant's Position Pleading, Doc. 126 at 2-12.  Hansmeier's first objection tracks the argument he pursued when seeking to dismiss certain counts in the Indictment, namely that his conduct does not amount to a scheme to defraud.  The government's understanding, after consulting with defense counsel, is that Hansmeier is no longer pursuing the specific factual objections noted in the addendum to the PSR and is not seeking to correct or alter any portion of the offense

conduct section of the PSR through this objection.[1] Rather, Hansmeier is merely preserving his objection pursuant to Rule 11(a)(2) as it relates to his forthcoming appeal challenging the legality of the charges against him. As such, the objection is moot at this time.

### A. Role in the Offense

Second, Hansmeier objects to the 4-level enhancement applied by the probation officer for his role in the offense, arguing instead that a 2-level enhancement is appropriate. U.S.S.G. § 3B1.1 provides that a defendant's offense level shall be increased by 4 levels if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The Guidelines define a "participant" as a person who is "criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, App. Note 1.

As the PSR demonstrates—and as was borne out by the government's investigation—there were at least five criminally responsible participants in the scheme. Paul Hansmeier and John Steele orchestrated the scheme. At least three other individuals knowingly participated in the scheme: Paul Duffy, Mark Lutz, and Paul's brother, Peter Hansmeier.[2]

---

[1] If Hansmeier were to persist in any specific factual objection, the government would call Special Agent Jared Kary to corroborate the factual averments in the PSR.

[2] The government did not (and does not intend to) bring charges against Mark Lutz, Peter Hansmeier, or Paul Duffy. Mark Lutz and Peter Hansmeier provided truthful information to the government during its investigation, and were clearly less culpable than Paul Hansmeier and John Steele. The final participant, Paul Duffy, died during the government's investigation.

Peter Hansmeier uploaded clients' movies to file-sharing websites and then helped Paul sue people who downloaded those movies.  Peter also participated in filming movies to use as bait, and helped Prenda obtain copyrights over those movies.  Peter also assembled IP addresses relating to individuals who had downloaded Prenda's movies, which Paul used to falsely accuse those individuals of hacking into their sham client's computer systems.

Mark Lutz worked as a paralegal for John Steele.  Initially, Lutz's role was to collect money from people whose subscriber information had been provided to Hansmeier and Steele after the defendants fraudulently obtained early discovery from various courts.  Later, Hansmeier and Steele used Lutz as a patsy, claiming that Lutz owned the sham clients Hansmeier and Steele created, such as AF Holdings and Ingenuity 13.  Lutz testified and signed numerous documents falsely attesting that he truly controlled those companies.  Lutz also participated in filming original movies that Hansmeier and Steele intended to use as bait.

Paul Duffy was an attorney who, at the direction of Hansmeier and Steele, filed numerous specious copyright infringement lawsuits.  Despite participating in the filming of movies and knowing about the true ownership of the sham clients, Duffy agreed to act as the owner of Prenda Law when Hansmeier and Steele wanted to distance themselves from the fraudulent scheme they created.  In that role, Duffy continued filing false and deceptive lawsuits, and also interfaced with other local counsel hired by Prenda to file fraudulent lawsuits across the country.

The defendant does not deny that he was a leader and organizer of the criminal activity, nor could he given his role in creating Prenda Law, directing his brother surreptitiously to upload movies to file-sharing websites, creating sham companies to use as clients, drafting complaints and other pleadings intended to deceive courts, overseeing Prenda's legal strategy, and receiving half of the illicit proceeds. Rather, Hansmeier argues that he should only be assessed a two-level enhancement because the government is only seeking a two-level role in the offense enhancement for co-defendant John Steele.

However, prior to Steele's cooperation, the government could not definitively establish that all five participants—in particular, Paul Duffy—knowingly participated in the scheme. Steele met with the government on several occasions pursuant to a "proffer" agreement whereby the government agreed not to use Steele's statements against him "in connection with any sentencing proceeding." The detailed explanation provided by Steele of the fraudulent scheme and the roles each individual played in the scheme solidified the categorization of Duffy, as well as Lutz and Peter Hansmeier, as criminally liable participants. However, adhering to the spirit, if not the letter, of the proffer agreement, the government agreed not to seek a 4-level enhancement for Steele, instead seeking a 2-level role enhancement. The Guidelines in fact contain a specific carve-out for information gleaned by the government from proffer agreements.

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

4

U.S.S.G. § 1B1.8(a).

The government has no such proffer agreement with Hansmeier, and is free to use information or corroboration provided by Steele to enhance Hansmeier's guidelines range and ultimate sentence. *See United States v. Buckendahl*, 251 F.3d 753, 761 (8th Cir. 2001) (in case involving prosecution's use of proffer agreements pursuant to U.S.S.G. § 1B1.8, finding that disparities arising from "appropriate prosecutorial practices (or sentences resulting from those practices) are justified under the Guidelines").[3]

B.   **Obstruction of Justice**

Third, Hansmeier objects to the 2-level increase applied for obstruction of justice. According to U.S.S.G. § 3C1.1, this enhancement applies where a defendant "willfully obstructed or impeded, or attempted to obstruct of impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." Furthermore, "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by [§ 3C1.1] if the conduct was purposely calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1, App. Note 1.

---

[3] Even if there were not five or more participants, the scheme orchestrated by Hansmeier likely qualifies as "otherwise extensive." In total, Hansmeier and Steele filed hundreds of deceptive lawsuits against thousands of individuals. They filed these fraudulent cases in state and federal courts throughout the country. Over the years, they hired about 10 employees to help operate the fraudulent enterprise they created, and contracted with numerous local counsel who unwittingly filed deceptive lawsuits on their behalf. According to the Sentencing Guidelines, the "a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." U.S.S.G. § 3B1.1, App. Note 3. As a result, although Hansmeier must only satisfy one of the two prongs of § 3B1.1, he in fact satisfies both.

The Guidelines provide examples of the type of conduct covered by § 3C1.1, including: (a) "committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction"; (b) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding"; (c) "providing materially false information to a judge"; and (d) "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding." *Id*. at App. Note 4.

In early 2013, several judges presiding over fraudulent lawsuits brought by Hansmeier and Steele began asking questions about the true nature of Prenda Law and its clients. On March 14, 2013, Judge Otis Wright from the Central District of California issued an Order to Show Cause requiring Hansmeier and Steele (and others) to appear and explain "[w]hy they should not be sanctioned for defrauding the Court by misrepresenting the nature and relationship of the individuals and entities [pertaining to Prenda Law]." *Ingenuity 13, LLC v. Doe*, 2:12-cv-8333 (ODW), Doc. 86. On April 2, 2013, Hansmeier and Steele (and others) appeared before Judge Wright and invoked their Fifth Amendment privilege against self-incrimination rather than testify before the court. *Id*. at Doc. 103. On May 6, 2013, Judge Wright issued an order imposing sanctions against Hansmeier and Steele (among others), and specifically referred the matter for investigation to "the United States Attorney for the Central District of California" and the "Criminal Investigation

Division of the Internal Revenue Service." *Id*. at Doc. 130.[4]  As a result, by April 2013 (when Hansmeier and Steele invoked their Fifth Amendment rights) and certainly by May 2013 (when Judge Wright referred them for prosecution), Hansmeier and Steele's obstructive conduct was carried out at least in part to shield themselves from criminal prosecution.

The first thing Hansmeier and Steele decided to do after reading Judge Wright's scathing order was to destroy evidence material to the investigation against them.  *See* PSR at ¶ 37.  Steele and Lutz destroyed their computers and hard drives in Chicago and Miami, and Steele instructed their employee, KM, to destroy her computer and hard drive in Las Vegas.  These actions standing alone, coming on the heels of a criminal referral, are sufficient to warrant the application of § 3C1.1.

However, Steele and Hansmeier then instigated a perjury campaign designed to conceal their direct involvement in orchestrating the nationwide lawsuits filed by Prenda Law.  *See* PSR at ¶¶ 31-34, 39.  The Indictment lists eight occasions after May 6, 2013, in which the defendants or Lutz (acting at their direction) testified falsely or signed documents falsely attesting to facts designed to exculpate Hansmeier and Steele.  *See* Doc. 1 at ¶ 33(g)-(n); PSR at ¶¶ 31-34.  These repeated instances of perjury, suborning perjury, and providing false information to a judge, undertaken at a time when the defendants knew that they were

---

[4] Additionally, on November 6, 2013, Magistrate Judge Franklin Noel, responding to similar concerns as those raised by Judge Wright, referred Hansmeier and Steele to the United States Attorney's Office for the District of Minnesota for investigation. *See AF Holdings, LLC, v. Does*, 12-cv-1445 (JNE/FLN), at Doc. 67.

7

under criminal investigation,[5] are exactly the type of obstructive conduct that § 3C1.1 was intended to penalize. As such, Hansmeier's offense level should be increased by 2 levels.

## II. Restitution

As noted in the PSR, Hansmeier and Steele received more than $3,000,000 in fraudulent copyright infringement settlement payments between April 2011, when they began uploading movies to BitTorrent websites, and 2014 when their scheme finally unraveled. Many of those payments were made through anonymized means, which appealed to victims who wanted to keep their identities hidden. Other payments were received through lawyers or law firms who represented the victims. As a result, the government has access to a limited set of readily identifiable victims.

In order to augment this list, the government issued a press release encouraging victims to submit claims for reimbursement, along with proof of payment, to a website created by the Department of Justice. The government also sent letters to each of the law firms and lawyers who made payments to Hansmeier and Steele according to their bank records.

The government intends to seek restitution for victims who can be identified from the records obtained during its investigation, as well as those victims who submit verifiable information to the DOJ website. The government has provided to defense counsel a preliminary list of these victims and the amounts they paid to Hansmeier and Steele.

---

[5] However, as noted above, "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by [§ 3C1.1] if the conduct was purposely calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1, App. Note 1.

To the extent that Hansmeier objects to using the above-referenced methodology to identify victims and set restitution in this case, the government respectfully moves the Court to hold an evidentiary hearing at sentencing at which the United States will introduce evidence in support of its restitution request. The government will call one witness, FBI Special Agent Jared Kary, and estimates that his testimony on direct examination will take approximately 30-45 minutes.

### III.   Acceptance of Responsibility

In his plea agreement, defendant Hansmeier agreed that the government's recommendation that he receive a reduction for acceptance of responsibility was conditioned upon his cooperating with the probation department in the preparation of the PSR, and fully identifying all of his assets and making a good faith effort to make restitution to his victims. As of the date of this memorandum, Hansmeier has failed to submit a financial disclosure form to the probation department and failed to "fully identify" his assets. This information is vital both to assist the Court in determining what financial penalties are appropriate in this case, and also to allow the government to identify what assets might be available for restitution.

If the defendant continues to refuse to provide this information, the Court should not deduct two points from the defendant's sentencing Guidelines range for acceptance of

responsibility, and should order the defendant to provide financial disclosures as part of its judgment.

Dated: May 29, 2019                    Respectfully submitted,

                                                      ERICA H. MACDONALD
                                                     United States Attorney

                                                     s/ *Benjamin F. Langner*

                                                     BY: BENJAMIN F. LANGNER
                                                     DAVID J. MACLAUGHLIN
                                                   Assistant U.S. Attorneys

                                                   BRIAN L. LEVINE
                                                   Senior Counsel
                                                   United States Department of Justice