TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---

FROM: 20953041
TO:
SUBJECT: Hard Time Motion - 01
DATE: 05/24/2021 02:20:50 PM

RECEIVED BY MAIL
JUN 01 2021
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

---

United States of America,
    Plaintiff,

v.

Paul Hansmeier,
    Defendant.

MOTION TO REDUCE TERM OF IMPRISONMENT AND MEMORANDUM IN SUPPORT

Case No. 16-cr-334

SCANNED
JUN 01 2021
U.S. DISTRICT COURT MPLS

---

MOTION TO REDUCE TERM OF IMPRISONMENT

Defendant Paul Hansmeier respectfully moves the Court pursuant to 18 U.S.C. 3582(c)(1)(A)(i) to reduce his term of imprisonment by 14 months (or such other amount as the Court deems just) to account for the extraordinarily harsh prison conditions Defendant experienced for an extended period of time during the COVID-19 pandemic. This motion is based on the attached memorandum in support and the entire record of these proceedings.

MEMORANDUM IN SUPPORT

I. Introduction

This motion asks the Court to reduce Defendant's term of imprisonment by 14 months in light of the conditions to which Defendant has been subjected since April 1, 2020---the date when Defendant's prison, Sandstone Federal Correction Institution, instituted what the Bureau of Prisons has termed "modified operations," which were aimed at safeguarding prisoners against COVID-19 infection. However well intentioned these measures may have been, these measures subjected Defendant to conditions that were orders of degrees harsher than what this Court could have reasonably anticipated when it weighed the 18 U.S.C. 3553 factors and sentenced Defendant to a term of imprisonment. Moreover, these harsh conditions---which, again, were aimed at safeguarding prisoners---were, in fact, entirely ineffective in safeguarding Defendant against infection.

As is argued in detail herein, these circumstances constitute the "extraordinarily and compelling reasons" required to trigger relief under 18 U.S.C. 3582. And there is no serious question that the remaining elements of 18 U.S.C. 3582 relief are satisfied here. Based on the foregoing and the below, the Court should grant Defendant's motion.

II. Background

On March 13, 2020, President Trump declared a national emergency based on the COVID-19 global pandemic. See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, The White House (March 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. On April 3, 2020, Attorney General William P. Barr exercised his emergency authority under Section 12003(b)(2) of the CARES Act, Pub. L. No. 116-136, and found that emergency conditions caused by the the COVID-19 virus exist within the Bureau of Prisons. Attorney General Barr's finding caused the Bureau of Prisons to implement what it termed "modified operations."

Defendant is housed at Sandstone Federal Correctional Institution in Sandstone, Minnesota. At Sandstone, modified operations began with inmates being confined to their units 24 hours a day, seven days a week. Visitation with family members, religious services, education programming, counseling services and drug abuse treatment programs, recreation/exercise and vocational-technical classes were all cancelled. Inmates had no access to fresh air, sunlight or exercise, no access to programming opportunities to reduce their risk of recidivism, no opportunity to attend to their spiritual needs and no opportunity

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---

to see their parents, children, spouses or friends.

Over time, Sandstone would from time-to-time provide inmates with incremental access to out-of-unit activities. For example, inmates were eventually allowed one hour of access to exercise opportunities per week. But any time there was an incident relating to COVID-19 at Sandstone, the institution would revert back to the default state of confining inmates to their housing units around the clock.

Since April 1, 2020, Defendant has had, at best, minimal access to fresh air, sunlight and exercise, programming opportunities to reduce his risk of recidivism, access to visitation and the ability to participate in religious services. The conditions at Sandstone which have prevailed since April 1, 2020 can accurately be described as mere human warehousing.

Defendant does not intend that the foregoing be construed as an attack on Sandstone officials. COVID-19 presented an impossible problem for prison officials overseeing institutions, such as Sandstone, where inmates live in dense, dormitory-style housing. Infection from the virus was the inevitable fate of virtually every inmate who was not offered home confinement via the CARES Act or compassionate release via 18 U.S.C. 3582. The only real question was how long it would take a staff member to be infected and pass that infection along to even one inmate. From there, the impossibility of social distancing all-but-guaranteed the spread of the highly virulent COVID-19.

In Defendant's case, Defendant made it until December 2020 before contracting COVID-19. Indeed, all but a very small handful of inmates at Sandstone contracted the virus. Sandstone nevertheless continues to be under an only slightly relaxed version of modified operations. The Bureau of Prisons has not communicated to Sandstone inmates when they can expect to return to ordinary operations. Sandstone officials appear to be acting conservatively in light of an entirely preventable inmate COVID-19-related death.

Thus, Defendant's term of imprisonment since April 1, 2020, has largely consisted of sitting on his bunk bed, eating, socializing with his fellow inmates and waiting to contract COVID-19 (and then recovering from COVID-19). Defendant has been deprived of access to family visits, fresh air and exercise, education and other rehabilitation opportunities, opportunities for worship and re-entry programming---all while being housed in conditions that violated CDC Guidelines, which resulted in Defendant's infection with a deadly disease. According to an inmate who has served 38 years in the Bureau of Prisons across a wide variety of institutions and security levels, the living conditions at Sandstone since modified operations began on April 1, 2020, have been by far and away the very worst living conditions he has ever experienced during his stay in the Bureau of Prisons.

III. Argument

A prisoner seeking to reduce his term of imprisonment pursuant to 18 U.S.C. 3582(c)(1)(A)(i) must make four showings: (1) exhaustion of administrative remedies; (2) extraordinary and compelling circumstances; (3) no danger to the safety of any other person or to the community; and (4) the 18 U.S.C. 3553(a) factors support a reduction in sentence. See 18 U.S.C. 3582(c)(1)(A). See also, e.g., United States v. Campbell, No. CR03-4020-LTS, 2020 U.S. Dist. LEXIS 112335 (N.D. Iowa June 26, 2020). Defendant can make all of these showings.

   1. Exhaustion of Administrative Remedies.

A party "exhausts administrative remedies as required by 18 U.S.C. 3582(c)(1)(A) so long as his motion [] is filed at least 30 days after the receipt of an administrative request by his warden." Id. Defendant sent and the warden of Defendant's institution received Defendant's request for the relief sough in this motion on or around April 6, 2021_____. Over 30 days have passed since the the warden's receipt of Defendant's administrative request. Defendant has exhausted his administrative remedies. 18 U.S.C. 3582(c)(1)(A)(i).

   2. Extraordinary and Compelling Circumstances.

18 U.S.C. 3582 was originally enacted as a "safety valve" to re-assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). The First Step Act made significant changes to 18 U.S.C. 3582. See 18 U.S.C. 3582(c)(1)(A)(i). Now, section 3582 empowers to reduce a defendant's sentence after they have exhausted their administrative remedies whenever "extraordinary and compelling circumstances warrant such a reduction." Id.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---

FROM: 20953041
TO:
SUBJECT: Hard Time Motion - 02
DATE: 05/24/2021 02:21:24 PM

. This is so, because while Congress initially delegated to the U.S. Sentencing Commission ("Commission") the responsibility of defining "extraordinary and compelling reasons." 28 U.S.C. 994(t); it was not until 2007, more than two decades after the statute was enacted, that the Commission stated that "extraordinary and compelling reasons" include medical conditions, age, family circumstances and "other reasons." U.S.S.G. 1b1.13, comm. n.1. Now, in light of the First Step's Act's objective to increase court's abilities to grant compassionate release or otherwise reduce sentences, courts are no longer constrained by either the Commission or the Bureau of Prisons' determination of whether a sentence reduction is appropriate.

When a defendant exhausts their administrative remedies the court may, upon motion of the defendant, reduce the defendant's sentence after considering the factors set forth in 18 U.S.C. 3553(a) to the extent they are applicable, provided the court finds that extraordinary and compelling reasons warrant such a reduction. See, e.g., United States v. Long, No. 20-3064 (D.C. Cir. May 18, 2021) ("We, like seven other circuits, hold that this policy statement is not applicable to compassionate release motions filed by defendants, and so we vacate the district court's order and remand for further proceedings."); United States v. Valdez, No. 98-cr-133-01, 2019 WL 7373023, at *2 (D. Alaska Dec. 31, 2019) ("This court concludes that it is no longer bound to look to the Director of the Bureau of Prisons for a definition of extraordinary and compelling reasons beyond application note 1(A) through (C)"); United States v. O'Bryan, No. 96-10076-30, 2020 WL 869475, at *2 (D. Kansas Feb. 21, 2020) (agreeing with "numerous courts" that have "recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence---and may do so under the 'catch all' provision similar to that recognized in U.S.S.G. Manual 1b1.13 n.1(D), that is, 'an extraordinary and compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C)' relating to the prisoner's health or family relations.").

As these examples illustrate, courts, no longer constrained by the Commission and Bureau of Prisons' narrow interpretation of "extraordinary and compelling reasons," have embraced their broad discretion under 3852(c)(1)(A) to grant motions to reduce sentences. Defendant respectfully submits that the conditions to which he had been subjected since April 1, 2020, constitute "extraordinary and compelling reasons," as they implicate serious negative departures from the standards of confinement at Sandstone FCI.

LACK OF ACCESS TO FRESH AIR AND EXERCISE. Since April 1, 2020, Defendant has on average received less than 90 minutes of outdoor exercise per week. This condition raises serious Constitutional questions, in addition to constituting an extraordinary and compelling reason. "[E]xercise has been determined to be one of the basic human necessities...." Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). Although the courts have not identified a specific amount of weekly exercise that must be afforded, it has been held that providing pretrial detainees in administrative segregation with, at best, only 90 minutes of out-of-cell exercise "does not give meaningful protection to this basic human necessity." Pierce v. County of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008). Accordingly, Sandstone FCI's subjection of Defendant to an average of fewer than 90 minutes of outdoor exercise per week presents an "objectively, sufficiently serious deprivation of outdoor exercise." Morgan v. Morgansen, 465 F.3d 1041, 1043 (9th Cir. 2006).

Making these conditions even more extraordinary and compelling is that Sandstone FCI's denial of access to outdoor exercise was contrary to Centers for Disease Control guidance, which encouraged outdoor exercise as a way to stay healthy during the pandemic. Indeed, Defendant's ability to social distance from his fellow inmates would have been greatly enhanced out on the exercise yard, which has an estimated 20 times greater area than the densely-packed open dormitory housing unit in which Defendant lives. The serious Constitutional questions raised by Defendant's lack of access to fresh air and exercise since April 1, 2020, is one reason for the Court to find the presence of extraordinary and compelling reasons.

LACK OF REHABILITATIVE PROGRAMMING. Prior to the pandemic, Defendant actively participated in productive activities to keep himself busy and to continue his progress towards being a contributing member of society when he leaves prison. All of this came to a halt on April 1, 2020, when Sandstone FCI announced that inmates would be restricted to their housing units for the indefinite future. Treatises suggest that "[C]ourts have not made a positive rehabilitative program a constitutional right. It is clear, however, that a penal system cannot be operated in such a manner that it impedes the ability of prisoners to attempt their own rehabilitation, or simply to avoid physical, mental, or social deterioration." John Palmer, Constitutional Rights of Prisoners, 10.2 Right to Rehabilitation (9th ed.). Sandstone FCI's COVID-19 mitigation strategy consisted of confining inmates to their housing units. This strategy, of course, came at the expense of rehabilitative opportunities. This lack of rehabilitative opportunities is a factor that is properly considered in a finding of extraordinary and compelling reasons for the purposes of 18 U.S.C. 3582.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---

INHUMANE HOUSING. In the midst of a deadly global pandemic, Defendant was housed in a crowded open dormitory setting where he had no ability to protect himself from COVID-19 infection. And Defendant, in fact, was infected with the virus in a setting where numerous inmates were hospitalized and one inmate died. Defendant's COVID-19 infection took a substantial physical and emotional toll on Defendant.

District courts nationwide have given significant weight to an inmate's inability to protect themselves from the virus when determining the presence of extraordinary and compelling reasons. For example, in United States v. Atkinson, No. 2:19-cry-55 JAM(CHI), 2020 WL 1904585, **2-4 (D. Nev. Apr. 17, 2020), the court recognized how the realities of prison life make it impossible for medically vulnerable inmates to follow CDC guidelines to protect themselves in the face of COVID-19. Id. at *4. See also United States v. Burrell, No. 17-CR-491-RS-1, 2020 WL 1846788, at *4 (N.D. Cal., Apr. 10, 2020) (same). Defendant's housing conditions, which made him unable to protect himself from past and future COVID-19 infection, is an extraordinary and compelling reason.

INABILITY TO ATTEND TO SPIRITUAL NEEDS. Since April 1, 2020, Defendant has been unable to attend a single religious service or otherwise attend to his spiritual needs. The chapel only recently opened, and then it is open for the purpose of allowing inmates to sit silently individually or watch movies.

NO VISITATION. Defendant has been unable to visit with his loved ones. The Court can imagine the emotional and mental anguish that would result from someone being unable to see their children, parents, siblings and other loved ones. Though visiting has recently "reopened," visitation currently consists of sitting in a room separated by a plastic shower curtain. There is no hugging or other contact. Children under the age of 16 are not allowed to visit. Visit times are sharply restricted. The "visiting" that occurs right now is almost no visiting at all. This is true even for inmates and visitors who have been fully vaccinated.

OVERALL. The above factors, whether considered together or separately, strongly support a finding of extraordinary and compelling reasons. Defendant asks the Court to review a decision from the Southern District of New York, United States v. Hatcher, 18-CR-454-10 (KPF) (S.D.N.Y.). In Hatcher, a district court that had previously denied a 18 U.S.C. 3582 motion to reduce a sentence in the early months of the COVID-19 pandemic reversed course and granted a similar motion in light of the extreme length of time to which the movant in that case had been subjected to harsh prison conditions. The conditions described by the movant in that case and the physical and emotional toll caused by those conditions are directly comparable to Defendant's experience in the Bureau of Prisons during the COVID-19 pandemic.

C. Defendants' Motion, if Granted, Would Not Result in Defendant's Release; The Granting of Defendant's Motion Thus Cannot Plausibly be Said to Present a Danger to Anyone.

Defendant's motion does not ask that Court to grant him immediate release. Rather, Defendant's motion asks the Court to reduce Defendant's remaining term of imprisonment. Accordingly, the granting of Defendant's motion cannot plausibly be said to present a danger to anyone.

D. The 3553 Factors Favor a Reduction in Sentence.

In a motion governed by 18 U.S.C. 3582, courts must consider the relevant sentencing factors set forth in 18 U.S.C. 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. 3582(c)(1)(A)(i).

At Defendant's sentencing, the Court considered the 3553 factors and imposed a term of imprisonment which, in its discretion, it determined was warranted. It is not the point of this motion to revisit the Court's sentencing decision. Rather, the fundamental question posed by this motion is whether the Court would have imposed a different sentence had it known that Defendant would face much harsher prison conditions than what the Court could have possibly anticipated at sentencing.

In United States v. King, No. 17-cr-20332, 2020 U.S. Dist. LEXIS 165451, *14-16 (E.D. Mich. Sept. 10, 2020), the district court granted a sentence reduction motion based, in part, on the inmate's description of conditions at Ashland FCI during the COVID-19 pandemic. According to the inmate's description, Ashland FCI implemented modified operations on April 1, 2020, to mitigate the spread of COVID-19. These operations, which sound quite familiar to Defendant, consisted of limited access to: institution facilities; outdoor exercise; commissary; and Bureau of Prisons programming. In its order granting the defendant's motion, the court observed, "Had the Court known when it sentenced King that he would be subjected to such additional restrictions while incarcerated, it may have sentenced him to a shorter term of imprisonment." Id. Defendant asks the Court to apply similar reasoning here.

The defendant in King requested and received immediate release. Though Defendant would accept the Court's granting of

CASE 0:16-cr-00334-JNE-KMM   Doc. 193   Filed 06/01/21   Page 5 of 5

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C
--------------------------------------------------------------------------------

immediate release if it were to be ordered, at a minimum Defendant is requesting a 14 month reduction in sentence to account for the 14 months of extraordinarily difficult living conditions that Defendant has been subjected to during the COVID-19 pandemic. In the event that the Court finds that 14 months is an insufficient correction for the harsh conditions Defendant has experienced, then Defendant asks the Court to exercise its discretion to determine an appropriate reduction.

IV. Conclusion

The Court should grant this motion.

_____  Date: May 27, 2021
Signature

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, Minnesota 55072

## VERIFICATION

I am the the Defendant in the above-captioned action. I certify under the penalty of perjury that the warden received my request for a sentence reduction based on the harsh prison conditions I have experienced during the COVID-19 pandemic over 30 days ago and that the facts presented in my motion and supporting memorandum accurately describe the prison conditions I have experienced during the COVID-19 pandemic at Sandstone FCI.

_____  Date: May 27, 2021
Signature