RECEIVED BY MAIL
AUG 02 2021
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
AUG 02 2021 mmp
U.S. DISTRICT COURT MPLS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>PAUL HANSMEIER,<br>Defendant. | Case No. 16-cr-334<br><br>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO REDUCE SENTENCE |

Defendant Paul Hansmeier respectfully submits this reply in support of his motion to reduce his sentence.

I. The Court should impose the sanction of default to address the Government's litigation misconduct.

The Court possesses inherent authority to address litigation misconduct. The Court's inherent powers are broad and sweeping and can be used to address litigation misconduct that even the various rules governing litigation do not cover. Here, the Government, acting through its officers in the Bureau of Prisons, has engaged in extreme litigation misconduct.

Specifically, in an apparent effort to quash Hansmeier's ability to prosecute his motion to reduce his sentence and assist other inmates in doing the same, the Government has thrown Hansmeier into administrative detention (or the "Hole," as it is referred to on Shawshank Redemption), obstructed Hansmeier's mailings to and from his attorneys and the courts, unlawfully denied Hansmeier access to his legal materials

and otherwise hindered Hansmeier from accessing the courts and assisting other inmates in doing so.

On June 7, 2021, Hansmeier was summoned by the compound officer and escorted to the Special Housing Unit, where Hansmeier has remained ever since. When Hansmeier arrived, it was made clear to Hansmeier that the Government disapproved of Hansmeier's motion. Hansmeier was advised to keep his litigation "under the radar" in the future, informed that he was being "taught a lesson," and told that he was going to be shipped "as far away as possible," —meaning that the Government was/is going to transfer Hansmeier to a prison as far away from his friends and family as the Government can manage.

The Government has specifically interfered with this litigation. The Government has denied Hansmeier access to his legal materials, denied Hansmeier access to attorney-client privileged phone calls, has delayed by weeks Hansmeier's mailings, including legal correspondence, has sharply limited Hansmeier's access to law library resources, has limited Hansmeier's communications to a single 15 minute phone call per month and letters (which the Government obstructs by weeks) and has otherwise limited Hansmeier's resources for replying to a legal pad, stamps, and a flexible six inch pen.

As a result, Hansmeier does not even know if the Government has filed a response, has been unable to follow developments in the law concerning compassionate release/18 U.S.C. § 3582 motions, and is being denied the opportunity to hire an attorney to litigate the remaining aspects of this motion. Indeed, Hansmeier would not have known about the Court's briefing schedule had it not been for his learning about the order through alternate channels (namely, his attorney representing him on his cert petition mentioning it to him in a mailing that was severely delayed).

While the sanction of default is a strong remedy, a strong remedy is warranted under the circumstances. The Court cannot allow litigants in the District of Minnesota to falsely imprison one another, intercept and delay each other's mailings and other communications from the court, isolate each other from their families, interfere with the attorney-client relationship, obstruct access to legal research and otherwise kneecap the adversary process. This is particularly true in the context of criminal proceedings, such as this, where the Constitutional protections around the liberty interest are at a peak.

The Court's decision — however it comes out — will have weighty consequences. If the Court takes a firm line against this form of misconduct, the inevitable result will be much less of this misconduct in the future. Contrarily, if the Court gives the Government a pass on this misconduct, a highly likely result will be a significant erosion of the only real check on abuses by prison officials — i.e., an inmate's access to the courts.

Another way to describe this elephant is an attempt by Department of Justice officials to undermine the Court's authority by controlling what issues ever make it onto the Court's docket. The Framers structured our Federal Government with the hope that officers of the various branches would jealously guard their power against encroachments from the coordinate branches. The instant request to the Court will test the Framer's understanding of human nature and reveal a glimpse into whether the foundations of our Constitutional system are as mighty as we all hope they are.

II. The Court should seriously consider Hansmeier's request for alternative relief.

The principal request in Hansmeier's motion to reduce his sentence is a 14 month reduction in sentence to account for the unusually harsh prison conditions that prevailed during the COVID-19 pandemic. Hansmeier's motion requests alternative relief, however, and the alternative relief Hansmeier would ask the Court to most seriously consider is to convert the remainder of Hansmeier's term of imprisonment to home confinement via the mechanism described below.

The Court has the power to convert the remainder of Hansmeier's term of imprisonment to home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A), which authorizes courts to "reduce [a] term of imprisonment" and "impose a term of imprisonment with or without conditions that does not exceed the unserved portion of the original term of imprisonment." (emphasis added). See also, e.g., United States v. Parmar, No. 18 CR 877 (VB), 2020 U.S. Dist. LEXIS 245680, at *2 (S.D.N.Y. Dec. 31, 2020)(recognizing authority to transfer an inmate to home confinement pursuant to Section 3582(c)(1)(A)(i)); United States v. Dragone, No. 3:16 cr 30 (JBA), 2021 U.S. Dist. LEXIS 17980, at *4 (D. Conn. Feb. 1, 2021)(granting motion for compassionate release, reducing sentence to time served, and ordering defendant to be released to home confinement); and United States v. Ciprian, No. 1 Cr. 1032-74 (PAE), 2021 U.S. Dist. LEXIS 18698, at *12 (S.D.N.Y. Feb. 1, 2021)(granting compassionate release and, as a condition of supervised release, ordering defendant to spend the first six months of release in a halfway house or in home confinement. Thus, as an alternative form of relief, the Court could reduce Hansmeier's term of imprisonment to zero and ~~order Hansmeier to serve the remainder~~ impose a term of supervised release in the amount of the unserved portion of Hansmeier's term of imprisonment to be served on home confinement.

The Court should grant Hansmeier this relief. As an initial matter, the Bureau of Prisons has exercised its authority to transfer inmates to home confinement where the inmates had remaining terms of imprisonment comparable to Hansmeier's, i.e. roughly ten years after accounting for statutory good time. Hansmeier was not eligible for this relief due to his relative youth. There is ample precedent for white collar offenders, such as Hansmeier, being transferred to lengthy terms of home confinement. Second, it should not need to be said that Hansmeier poses zero risk of safety to anyone or a risk of flight. Out on the streets, Hansmeier was a boring lawyer with a not-so-boring area of practice. Third, there is no obvious benefit to be gained from Hansmeier serving his remaining term of imprisonment at a Bureau of Prisons facility versus home confinement. During COVID-19 modified operations, the Bureau of Prisons experience boils down to sitting in a densely-packed housing unit waiting for the next variant of COVID-19 to sweep across the facility. And even when the Bureau of Prisons resumes normal operations (and it's not clear when, if ever, that will happen), in Hansmeier's particular circumstances there are no meaningful opportunities for rehabilitation or other personal growth within the Bureau of Prisons.

If released to home confinement, Hansmeier would live at his house in Woodbury, Minnesota. Inmates who have recently been released to home confinement have indicated that the job market is very favorable to inmates on home confinement. Hansmeier would live a quiet life as an ordinary citizen and contribute to society and his wife and his two young children.

Finally, Hansmeier is deeply concerned about the prospect of further unlawful retaliation by the Government if he remains imprisoned at a BOP facility versus home confinement. Hansmeier is filling his vast blocks of idle time by litigating/ challenging the Constitutionality of the federal mail fraud, wire fraud and extortion statutes,

18 U.S.C. §§ 3141, 3143 and 1951, respectively; to the copyright enforcement methods used in Olan Mills, Inc. v. Linn Photo. Co., 23 F.3d 1345, 1348 (8th Cir. 1994) (provided that Hansmeier's interest in the cases and investigative methods are fully disclosed to the courts) and the civil rights enforcement methods described in Havens Realty Corp. v. Coleman, 455 U.S. 363, 374, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (again, provided that Hansmeier's interest in the cases and the enforcement methods are fully disclosed to the courts). Bureau of Prisons officials have specifically threatened Hansmeier with retaliation for his advancement of those cases, which gives Hansmeier a credible fear of future retaliation. If placed on home confinement it would be difficult, if not impossible, for Bureau of Prisons officials to retaliate against Hansmeier and they would have limited reason to do so.

### III. Conclusion.

The Court should grant Hansmeier's motion.

Respectfully submitted,

Date: July 29, 2021

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072