TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 00 - INTRODUCTION
DATE: 12/17/2021 07:06:05 AM

I. Introduction.

Plaintiff Paul Hansmeier's sentence, change of plea and indictment violated Hansmeier's constitutional rights and should be vacated and dismissed as a result.

II. General Background.

This case arises out of "copyright trolling," in which two attorneys: (a) commissioned/purchased adult works; (b) instructed an investigator to post those works to a notorious digital piracy website; and (c) brought copyright enforcement actions against people who downloaded the works.

The complaints filed in these actions alleged that the plaintiffs owned a copyright and that the defendants copied those works, which is all that a copyright infringement plaintiff need prove. It is undisputed that these allegations were true.

The U.S. Attorney for the District of Minnesota nevertheless determined that these claims were meritless. He believed that by instructing an investigator to make the works available on the notorious digital piracy website, the attorneys authorized the website's users to download the works. Yet, this is a defense that has been attempted many times and which has always failed; indeed, this defense was specifically rejected by the Eighth Circuit in Olan Mills, Inc. v. Linn Photo. Co., 23 F.3d 1345 (8th Cir. 1994).

Ostensibly unaware of Olan Mills and its progeny, the U.S. Attorney for the District of Minnesota charged Hansmeier and his law partner with mail and wire fraud-related offenses. The indictment alleged that they brought specious claims copyright enforcement claims and pressured defendants into settling.

In an attempt to satisfy the essential elements of mail fraud and wire fraud, the indictment alleged that Hansmeier's complaints falsely claimed that the defendants' downloading was done without authorization. In light of Olan Mills, however, Hansmeier's complaints were accurate; it is the U.S. Attorney for the District of Minnesota who misapprehended the law of copyright enforcement.

The indictment also alleged that Hansmeier breached an affirmative duty to disclose his investigative methods and his financial interest in the claims. Yet, nothing in the established standards of copyright enforcement required Hansmeier to discuss these matters in the documents he filed with courts. Moreover, because these facts were not relevant to the legal standards governing Hansmeier's requests for relief, even if disclosed, these facts could not have changed the outcomes of the requests for relief which they were alleged to have related to.

Thus, what the indictment boils down to is the U.S. Attorney for the District of Minnesota imprisoning attorneys and/or litigants based on the U.S. Attorney's misapprehension of the law of copyright enforcement.

These socially destructive circumstances give rise to a series of straightforward constitutional violations that fall into two general categories. First, prosecutors circumvented the Fifth and Sixth Amendment's Grand Jury requirements. Prosecutors persuaded the Grand Jury to return an indictment that does not charge fraud; accepting the facts alleged in the indictment as true, all the indictment alleges is a scheme to assert copyright enforcement claims that leading copyright treatises describe as "routine" and providing "no defense," which is not fraud. Claims 1-5, infra, arise from these issues.

Second, as applied to Hansmeier's copyright enforcement claims, the statutes under which Hansmeier was convicted violate the many constitutional provisions that protect citizens from being imprisoned based on the participation in unpopular litigation. Hansmeier acknowledges that his "porno trolling collective," as one federal judge described it, was never going to be universally loved---though Hansmeier would proffer that this litigation helped defend the markets for creative expression. However, criminal charges and subsequent imprisonment are a constitutionally unsound way of addressing politically objectionable litigation. Claims 6-9, infra, arise from these issues.

Now, it cannot be overlooked that Hansmeier's motion to dismiss the fraud charges from the indictment failed before this Court and the Eighth Circuit. These events are the product of a third category of constitutional violations: structural defects in the district court and appellate proceedings. Claims 10-12 arise from these issues.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------

Beyond the copyright enforcement claims, the indictment alleged a second scheme to defraud. In the second scheme, it is alleged that Hansmeier filed no-merit "hacking" claims. While Hansmeier disputes the prosecutors' facts concerning these claims, Hansmeier understands that his opportunity to challenge facts will come at a later stage.

When the Court decided Hansmeier's motion to dismiss, the Court interpreted the indictment as alleging a single scheme. The Eighth Circuit took the approach of interpreting the indictment as alleging two schemes---one for the "copyright trolling" claims and one for the "hacker" claims. The Court should honor the Eighth Circuit's approach when it evaluates Hansmeier's claims in this motion.

This is important because even accepting the facts of the indictment as true, all that the indictment alleges with respect to the first scheme alleged in the indictment---i.e. "copyright trolling"---is a perfectly valid method of enforcing copyrights. The same cannot be said for the second scheme alleged in the indictment---i.e. false "hacker" claims.

This distinction makes a difference for some of the claims asserted herein. For example, the Noerr-Pennington argument is obvious with respect to the "copyright trolling" claims, while it is less obvious with respect to the "hacking" claims.

Hansmeier now turns to his claims.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 01 - NO INTENT TO HARM
DATE: 12/15/2021 08:32:44 AM

CLAIM 1: The Indictment Fails to Charge Fraud Crimes Because it Fails to Establish an "Intent to Harm"

The Framers did not want prosecutors to have unchecked power to subject people to the criminal process, so they imposed a Constitutional requirement that requires prosecutors to persuade a Grand Jury to return an indictment that validly charges whatever crimes a prosecutor wishes to prosecute. A charge in an indictment, in order to be valid, must establish all of the essential elements of the crime while at the same time describing the criminal act. When a prosecutor is unable to persuade a Grand Jury to return charges that meet this standard, a court lacks power to do anything other than dismiss the invalid charges.

In this case, the indictment failed to charge Hansmeier with fraud because it failed to establish the essential element of "intent to harm." Indeed, the indictment affirmatively pleads the prosecutors out of this element. The Court has no discretion but to vacate its judgment and Hansmeier's plea and dismiss the fraud dependent charges from the indictment. Hansmeier raised this argument to this Court and in his appeal, but it has gone unaddressed.

I. "Intent to Harm" is an Essential Element of Federal Mail Fraud and Wire Fraud.

The federal mail fraud and wire fraud statutes prohibit the use of interstate mails or wires to effect a scheme to defraud. 18 U.S.C. 1341 and 1343. "The essence of a scheme to defraud is an intent to harm the victim." United States v. Jain, 93 F.3d 436 (8th Cir. 1987).

"Intent to harm" has a specific meaning; it means an intent to deprive a victim of the benefit of a transaction. See, e.g., Jain, 436 F.3d at 442; United States v. Takhalov, 827 F.3d 1307, 1310 (11th Cir. 2016); United States v. Sadler, 750 F.3d 585, 591 (6th Cir. 2014); and United States v. Regent Office Supply Co., 421 F.2d 1174 (2d Cir. 1970). Another way of describing the same idea would be an intent to give the victim less than what they paid for.

Examples help make the point. Someone would be harmed if they paid for a diamond, but received a cubic zirconium. Someone would be harmed if they sold their car, but the buyer wrote them a bad check. Someone would be harmed if they paid money to settle a lawsuit, but the plaintiff refused to dismiss their claims. In each of these examples, someone entered into a transaction, but received less than what they bargained for. The shortfall between what someone bargained for and what they received is what constitutes "harm."

It is important to understand what harm is not. Harm is not the mere use of dishonesty to get someone to do something they might not have otherwise done. See, e.g., Takhalov, 827 F.3d at 1314 (11th Cir. 2016). "Even if a defendant lies, and even if a victim made a purchase because of that lie, a wire fraud case must end in an acquittal if the alleged victim received exactly what they paid for." Id. (internal quotation marks omitted).

Thus, in Jain, a doctor who accepted illegal referral kickbacks was innocent of mail fraud because there was no evidence that the kickbacks affected (or were intended to affect) the price or quality of his services. To be sure, the doctor was guilty of other crimes, but he was innocent of fraud. True, his patients might not have utilized his services if they were aware of his illegal kickback arrangement, but that does not mean the doctor intended to give his patients less than what they paid for.

In Regent Office Supply, salesmen sold stationery. The salesmen misrepresented their identities to prospective customers. For example, they falsely claimed that they had been referred by a friend of the customer or an officer of the customer's firm. Despite their dishonesty, the salesmen were innocent of fraud because they delivered the stationery they promised at the price they agreed to deliver it. True, the customers may not have purchased the stationery had they been aware of the lie, but that does not mean that the salesmen intended to deliver less than what they promised.

In Takhalov, a bar owner hired Eastern European women to pretend they were interested in traveling businessmen in Miami. The women would ask the businessmen to buy them a drink at the bar owner's establishment. The bar owner was innocent of wire fraud because the businessmen received the drink they ordered at the price they agreed to pay; there was no evidence that the bar owner intended to deliver anything less. True, the businessmen might not have been interested in buying the drink if they knew that the women had been hired by the bar owner, but that does not mean that the bar owner intended to deliver anything other than what the businessmen ordered at the bar.

In Sadler, the defendant lied to pharmaceutical distributors so they would fulfill pill orders for her sham "pain clinic." She used a

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------------------

fake name on her drug orders and falsely told distributors that her drugs were being used to serve indigent patients. Although the defendant being dishonest, she was innocent of fraud because she ordered pills and paid the distributors' asking price, nothing more. True, the distributors would not have sold her the pills had they known that she was lying, but that does not mean that the defendant intended to cheat the pharmaceutical companies out of a payment.

The common thread in Jain, Takhalov, Sadler and Regent Office Supply---and numerous other decisions---is the lack of an allegation that defendants intended to deliver less than what they promised. Absent such allegations, there is no intent to harm and thus no mail fraud or wire fraud.

## II. The Indictment Fails to Establish Hansmeier's Intent to Harm.

The indictment returned by the Grand Jury specifies the benefit that the settling defendants paid for when they settled Hansmeier's claims; the indictment affirmatively alleges that that the settling defendants sought to avoid the cost and embarrassment of defending against claims of pornography-related copyright infringement. Put in less glowing terms, the indictment alleges that the settling defendants were paying nuisance settlements.

While Hansmeier disputes these his claims were "nuisance" claims, that debate is beyond the scope of this claim. The critical point is that paying a nuisance settlement is not "harm," for the purposes of fraud. A person paying a nuisance settlement would be "harmed" if (and only if) they do not receive the "absence of nuisance" that they payed for. The settling defendants in Hansmeier's cases would have been harmed if their settlement payment did not allow them to avoid the expense and embarrassment of defending against claims of pornography-related copyright infringement.

There is no allegation in the indictment that Hansmeier deprived settling defendants of this benefit. Thus, the indictment does not allege actual harm.

"When there has been no actual harm, the government must produce evidence independent of the alleged scheme to show the defendant's fraudulent intent." Jain, 436 F.3d at 442. There is nothing in the indictment that would indicate that the Grand Jury believed that Hansmeier intended to harm the settling defendants. Indeed, the allegations in the indictment affirmatively show the opposite. The scheme alleged in the indictment---what prosecutors have sometimes referred to as a "settlement mill"---would self-destruct if Hansmeier failed to honor his settlement agreements. Attorneys would have warned their clients not to settle and word would have spread via the Internet.

This would be a much different case if, for example, the indictment alleged that Hansmeier went around agreeing to settle cases only to turn around and demand additional sums before dismissing a defendant who had eagerly agreed to settle. Or if the indictment alleged that Hansmeier accepted settlement payments only to turn around and breach the confidentiality that the defendants had paid for by selling the valuable information he had collected. Or if Hansmeier took defendants' money in settlement only to continue pursuing a judgment against them. In these examples, there would be an intent to harm that would support fraud charges. But there are no such allegations because Hansmeier never did any of those things. Instead, on the face of the indictment, the settling defendants were not harmed because they received exactly what they paid for.

Because the indictment fails to establish Hansmeier's intent to harm and affirmatively pleads prosecutors out of establishing this element, it does not charge Hansmeier with mail fraud or wire fraud or any fraud-dependent offense.

## III. Prejudice.

Prosecutors' end run around the Grand Jury process deprived the Court of subject matter jurisdiction, left the Court without authority to proceed on the fraud dependent charges, violated Hansmeier's Fifth and Sixth Amendment rights, is a structural defect in these proceedings and resulted in Hansmeier's imprisonment for crimes he did not commit. Hansmeier was not on notice of what theory of "intent to harm" prosecutors intended to prove at trial and thus had no ability to prepare a defense. Hansmeier was forced to enter a guilty plea that he would not have otherwise entered. It would have been impossible to determine on what basis a jury convicted Hansmeier because the indictment provided no basis for a conviction. Moreover, the invalid charges resulted in a lengthier sentence and higher restitution than what could have been imposed in the absence of the invalid charges. For all of these reasons the Court is constrained to vacate its judgment and Hansmeier's guilty plea and dismiss the fraud dependent charges from the indictment.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 02 - NO MATERIALITY
DATE: 12/15/2021 08:35:49 AM

CLAIM 2 - The Indictment Fails to Charge Fraud Crimes Because it Fails to Establish Materiality

The Framers did not want prosecutors to have unchecked power to subject people to the criminal process, so they imposed a Constitutional requirement that requires prosecutors to return an indictment that validly charges whatever crime prosecutors wishes to pursue. The indictment, in order to be valid, must establish all of the essential elements of the crime while at the same time describing the criminal act. When a prosecutor is unable to persuade a Grand Jury to return an indictment that meets this standard, a court lacks power to do anything other than dismiss the invalidly charged offense.

In this case, the indictment failed to charge Hansmeier with fraud because it failed to establish the essential element of materiality. The Court has no discretion but to vacate its judgment and Hansmeier's plea and dismiss the fraud dependent charges from the indictment. Hansmeier raised this argument in his appeal, but the Eighth Circuit rejected it. The Eighth Circuit's decision was the product of prosecutors' misstatements. In this 2255 motion, the Court is not bound by res judicata, collateral estoppel or the law of the case doctrine and is thus permitted to hold in Hansmeier's favor.

I. Materiality is an Essential Element of Federal Mail Fraud and Wire Fraud.

The federal mail fraud and wire fraud statutes prohibit the use of interstate mails or wires to effect a scheme to defraud. 18 U.S.C. 1341 and 1343. The Supreme Court has held that the 1341 and 1343 concept of the term "defraud" carries with it the common law requirement that the government prove "materiality of falsehood." Neder v. United States, 527 U.S. 1, 21-25 (1999). In practice, this means that the mail and wire fraud statutes extend only to a falsehood that has "a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." United States v. Heppner, 519 F.3d 744 (8th Cir. 2008).

II. The Indictment Fails to Establish Materiality.

At a minimum, the indictment fails to allege materiality with respect to the first scheme. The Court need not reach the issue with respect to the second scheme because the first scheme is inextricably intertwined with the second. The Eighth Circuit's decision was the result of prosecutors' misstatements of fact and law.

  A. The Indictment Fails to Establish Materiality With Respect to the First Scheme.

The indictment fails to establish materiality with respect to the first scheme because it fails to identify a misstatement that was capable of influencing the decision of the decision-making body to which it was addressed. At oral argument before the Eighth Circuit, the government conceded that the misstatements and omissions alleged in the indictment were immaterial to the settling defendants. Accordingly, the focus of this claim is the courts.

As for the courts, the alleged misstatements and omissions were unrelated to the legal standards governing Hansmeier's requests for relief from the courts. Courts make decisions by applying the law to the facts. If a fact does not bear on the legal standard governing a decision, it is incapable of influencing that decision and is thus immaterial.

The indictment's allegations of misstatements and omissions fall into two buckets. The first bucket relates to Hansmeier's investigative methods. The second bucket relates to Hansmeier's financial interest in the litigation.

  1. Investigative Methods.

The indictment alleges that Hansmeier instructed an investigator to lure infringers by posting copyrighted works to the Pirate Bay so that Hansmeier could sue the people who downloaded the works. The indictment alleges that courts would have denied Hansmeier's motions to discover the names of the downloaders and dismissed Hansmeier's cases if they had known that Hansmeier was using this investigative method. These allegations are overridden by Eighth Circuit precedent.

The investigative method alleged in the indictment closely resembles that which was used by the copyright holder in Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345 (8th Cir. 1994). In Olan Mills, a photo studio suspected its competitors of infringing. The photo studio created a photo for the exclusive purpose of aiding an infringement investigation. It then provided the photo to a third-party infringer with instructions to lure infringers. The investigator succeeded in luring infringers. The photo studio brought

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------------------------

claims for copyright infringement. The defendant moved for summary judgment on the grounds that the investigator's actions, which included signing a "Permission to Copy Agreement" at the instruction of the photo studio's attorney, gave rise to authorization defense. The district court granted the defendant's motion for summary judgment. the Eighth Circuit reversed. The Eighth Circuit noted that the "investigative scheme" was "not different from investigative schemes that have been upheld in other copyright enforcement cases in this and other circuits." Id. at 1348. The Eighth Circuit noted that the photo studio did not authorize the investigator to validate infringing conduct; rather, the investigator's assignment was to catch infringers. The copyright holder thus never had intent to authorize the infringer's infringement. The Eighth Circuit ordered the district court to enter judgment in the copyright holder's favor.

Copyright defendants in online file sharing cases have attempted similar "authorization" defenses. See, e.g., Arista Records LLC v. Lime Group LLC, 06 CV 5936, at *15 (KMW) (S.D.N.Y. Mar. 30, 2011) ("Defendants argue further that, because the only downloads that Plaintiffs have established were performed by their own investigators, Plaintiffs have not met their burden to show 'unauthorized copying' of Plaintiffs' works."). These arguments have been "uniformly rejected by courts." Id.; see also Atlantic Recording Corp. v. Howell, 554 F. Supp. 2d 976, 985 (D. Ariz. 2008) (holding that MediaSentry downloads could form the basis of copyright infringement claim because 'the recording companies obviously did not intend to license MediaSentry to authorize distribution or to reproduce copies of their works. Rather, the investigator's assignment was part of the records companies' attempt to stop Howell's infringement, and therefore the 12 copies obtained by MediaSentry are unauthorized.") (citing Olan Mills). Indeed, the leading copyright treatise advises that a copyright holder's "use of ... undercover investigators and the like to ferret out infringement is routine, and provides no defense." 4-13 Nimmer on Copyright 13.09[B].

In a decision that post-dated Hansmeier's arrest in 2016 for using routine copyright enforcement methods, a copyright infringement defendant specifically invoked the charges against Hansmeier in an attempt to defend against a "copyright troll litigation mill." The district court described the defendants' positions as "frivolous" and "legally-unsupported." The district court accused defendants' counsel as "fail[ing] to grasp the fundamentals of copyright protection." The district court assisted defendant's counsel by explaining, "Whether it is possible to download a photo and use it without payment ... and whether it is legal to do so are distinct questions, just as whether it is possible to take an unlocked bike from a neighbor's porch without permission is a different question from whether it is legal to do so." Harrington v. Aeroglic Ballooning, LLC, 18-cv-2023 (MSK/NYW) (Aug. 8, 2019).

With this background in mind, the indictment fails to establish materiality with respect to Hansmeier's disclosures of his investigative methods. The facts concerning Hansmeier's investigative methods were incapable of making courts more likely to dismiss Hansmeier's claims or deny his motions for discovery because Hansmeier's investigative methods were "not different from investigative schemes that have been upheld in other copyright enforcement cases in [the Eighth Circuit] and other circuits." Olan Mills, 23 F.3d at 1348. They were thus immaterial to Hansmeier's interactions with the courts.

    2. Financial Interest.

When a business entity is a party to a lawsuit, it must disclose whether there is a publicly-traded company that owns more than 10% of the company. See Fed. R. Civ. P. 7.1. According to the Advisory Committee Notes, the exclusive purpose of this disclosure is to help the presiding judge evaluate conflicts of interest.

The issue of "who owns the plaintiff" otherwise had no materiality in Hansmeier's lawsuits. For example, the prevailing legal standard governing motions for early discovery required courts to consider five factors: (1) concreteness of the plaintiff's showing of a prima facie claim of copyright infringement; (2) the specificity of the discovery request; (3) the absence of alternative means for obtaining the information; (4) the need for the information; and (5) privacy interests. Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010). The issue of "who owns the plaintiff" had no relevance to any of these elements and was therefore incapable of influencing a judge's evaluation of the motion. In other words, the issue was not material.

The indictment thus fails to establish materiality with respect to the first scheme.

  B. The Eighth Circuit's Contrary Decision Was the Product of Prosecutors' Misstatements.

The Eighth Circuit's contrary decision was the product of prosecutors' misstatements. In the appeal, prosecutors misrepresented the law of copyright enforcement and made the false claim that courts started dismissing claims and issuing sanctions when they learned about Hansmeier's investigative methods and his financial interest in the outcome of cases. The Eighth Circuit relied on these misstatements in its decision.

Hansmeier was sanctioned on a limited number of occasions, but it was not for his investigative methods or for having an interest in the outcome of cases. There would be no reason to sanction Hansmeier based on his use of "routine" copyright

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------

enforcement methods that "provided no defense." Moreover, there would be no reason to sanction Hansmeier for the financial interest issue because it had nothing to do the merits of Hansmeier's claims.

Hansmeier invites prosecutors to identify a single case in which the uploading issue or the ownership issue resulted in sanctions or dismissals of Hansmeier's claims. If they cannot, then the Court can take judicial notice that the allegation was false and infer that the Eighth Circuit's affirmance was influenced by prosecutors' misstatements.

    C. The Court Need Not Address the Second Scheme at This Time.

The indictment alleges that Hansmeier also brought entirely invented claims of hacking into computers that did not exist. While Hansmeier intends to challenge the factual basis for these allegations, this is not the appropriate procedural stage to do so. The relevant point at this stage is the indictment's failure to establish materiality with respect to the first scheme requires relief irrespective of whether it did so with respect to the second scheme. After all, Hansmeier is serving a term of imprisonment based on the first scheme, he is paying restitution with respect to the first scheme, the Court convicted him of the first scheme and the indictment charges the first and second schemes in a single count and incorporates statements about the first scheme to explain why Hansmeier would resort to entirely invented claims of hacking into computers that did not exist. If prosecutors are able to persuade a Grand Jury to validly charge Hansmeier with respect to the second scheme then Hansmeier will defend against those charges at the appropriate time.

III. Prejudice.

Prosecutors' end run around the Grand Jury process deprived the Court of subject matter jurisdiction, left this Court without authority to proceed on the fraud dependent charges, violated Hansmeier's Fifth and Sixth Amendment rights, is a structural defect in these proceedings and resulted in Hansmeier's imprisonment for crimes he did not commit. Hansmeier was not on notice of a valid theory of "materiality" that prosecutors intended to prove at trial and thus had no ability to prepare a defense. Hansmeier was forced to enter a guilty plea he would not have otherwise entered. It would have been impossible to determine on what basis a jury convicted Hansmeier because the indictment provided no basis for a conviction. Moreover, the invalid charges resulted in a lengthier sentence and greater restitution than what could have been imposed in the absence of the invalid charges. For all of these reasons, the Court is constrained to vacate its judgment and Hansmeier's guilty plea and dismiss the fraud dependent charges.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---

FROM: 20953041
TO:
SUBJECT: *CLAIM 03 - NO PROPERTY
DATE: 12/10/2021 08:09:22 PM

CLAIM 3 - The Indictment Fails to Charge Fraud Crimes Because it Fails to Establish That the Object of Hansmeier's Alleged Fraud Was Money or Property in the Hands of the Victim

The Framers did not want prosecutors to have unchecked power to subject people to the criminal process, so they imposed a Constitutional requirement that requires prosecutors to persuade a Grand Jury to return an indictment that validly charges whatever crimes a prosecutor wishes to prosecute. A charge in an indictment, in order to be valid, must establish all of the essential elements of the crime while at the same time describing the criminal act. When a prosecutor is unable to persuade a Grand Jury to return charges that meet this standard, a court lacks power to do anything other than dismiss the invalid charges.

In this case, the indictment failed to charge Hansmeier with fraud because it failed to establish that the object of Hansmeier's alleged scheme to defraud was money or property in the hands of the victim. The Court has no discretion but to vacate its judgment and Hansmeier's plea and dismiss the fraud dependent charges from the indictment. Hansmeier raised this argument to this Court and in his appeal, but it has gone unaddressed. The Supreme Court's recent decision in United States v. Kelly, which post-dates briefing in Hansmeier's appeal, supports Hansmeier's position in this claim.

I. Deprivation of a Property Interest is an Essential Element of Federal Mail Fraud and Wire Fraud.

The federal mail fraud and wire fraud statutes prohibit the use of interstate mails or wires to effect a scheme to defraud. 18 U.S.C. 1341 and 1343. The Supreme Court has held that the federal fraud statutes are "limited in scope to the protection of property rights, and the ethereal right to accurate information doesn't fit that description." United States v. Sadler, 750 F.3d 585, 591 (6th Cir. 2014) (citing Cleveland v. United States, 531 U.S. 12, 23, 121 S. Ct. 365, 148 L. Ed. 2d 221 (2000)).

At one time, the mail fraud statute had long been used as a "stopgap device" against fraudulent activity. "United States v. Maze, 414 .S. 395, 404-05, 94 S. Sct. 645, 38 L. Ed. 603 (1974) (C.J. Burger, Dissenting). Indeed, Chief Justice Burger argued that the mail fraud statute was an indispensable, all-purpose prosecutorial tool used against all sorts of evils before Congress could pass specific legislation outlawing those acts. Id. at 405-06.

However, the Supreme Court froze "this expanding universe of intangible-right protections, limiting the fraud statutes' scope to rights that sounded in property." Salder, 750 F.3d at 591 (6th Cir. 2014). "Congress amended the fraud statutes to cover some intangible rights," but "it did not stretch the statute to cover the right to accurate information before making some otherwise fair exchange." Id. Accordingly, "Congress's reverberating silence about other intangible interests tells us all we need to know." Sadler, 750 F.3d at 591.

In 2000, a unanimous Supreme Court held that "section 1341 does not reach fraud in obtaining a state or municipal license ... for such a license is not 'property' in the government regulator's hands. Again, as we said in McNally, [i]f Congress desires to go further, it must speak more clearly than it has." Cleveland, 531 U.S. at 20 (quoting 483 U.S. at 360).

In Cleveland, the defendant was convicted under the mail fraud statute "for making false statements in applying to the Louisiana State Police for permission to operate video poker machines." Id. at 15. Concluding that such permits or licenses "do not qualify as property within section 1341's compass," the court opined that it is not sufficient "that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim." Id. the court noted if it were to accept the government's argument, it would subject to federal mail fraud prosecution a wide range of conduct traditionally regulated by state and local authorities. Id. at 22. The court further noted that the State of Louisiana provides its own statute that "unambiguously imposes criminal penalties for making false statements on license applications." Indeed, the court cautioned that the government's reading of "the statute would appear to arm federal prosecutors with power to police false statements in an enormous range of submissions to state and local authorities." Id. at 26. Accordingly, without a "clear statement by Congress, [the Court] will not read the mail fraud statute to place under federal superintendence a vast array of conduct traditionally policed by the States." Id. at 27.

In United States v. Kelly, a unanimous Supreme Court reaffirmed Cleveland. 590 U.S. ___, 140 S. Ct. ___, 206 L Ed. 2d 882 (2020). In Kelly, the defendant was convicted of fraud based on allegations that she lied to Port Authority officials to get them to reroute traffic lanes leading up to the George Washington Bridge. Her motive, according to the government, was that she did so to effect political payback on a mayor who refused to support New Jersey's governor. Invoking Cleveland, the Supreme Court reminded prosecutors that the object of valid scheme to defraud must be money or property in the hands of the victim. According

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------

to the Court, it was not sufficient that prosecutors proved the defendant lied to government officials to get them to make a decision they would not have otherwise made. This is true even though the lies cost Port Authority officials money in the form of employee wages and other expenses. The point reaffirmed in Kelly is that the object of a scheme to defraud must be money or propery in the hands of the victim.

II. The Indictment Fails to Establish That the Object of Hansmeier's Alleged Scheme Was Money or Property in the Hands of the Victims.

The indictment boils down to prosecutors' attempt to make an end run around the Supreme Court's decisions in Cleveland and Kelly. In those decisions, the Supreme Court made clear that schemes to use false statements to obtain favorable government action fall outside the scope of the mail fraud and wire fraud statutes because they do not implicate a property interest. Courts have no more of a property interest in the exercise of their discretion than the State of Louisiana had in its power to issue video poker machine licenses (Cleveland) or Port Authority officials had in their decision to reroute traffic lanes leading up to the George Washington Bridge (Kelly). It cannot be said that Hansmeier targeted property in the hands of the courts.

Yet, viewed through the lens of common sense, the indictment portrays the courts as the victims. According to the indictment, Hansmeier defrauded the courts into granting motions---just as the defendants in Kelly and Cleveland allegedly defrauded government officials into taking favorable action.

The indictment makes no suggestion that settling defendants were deprived of the value of their settlement payments. The mere fact that Hansmeier generated cash flow from these settlements is not sufficient to establish that the settling defendants were victims. In Cleveland, for example, the defendant generated millions of dollars from his video poker operations. The defendant's alleged scheme did not "target" money or property in the hands of his video poker customers or the State of Louisiana because his intent from day one was to operate the video poker machines in accordance with regulations and pay all of the taxes on his revenues. Similarly, Hansmeier gave the settling defendants exactly what they were promised when they paid him. The settling defendants were not deprived of a property interest. Rather, just like the video poker customers in Cleveland, the settling defendants made a property exchange and received everything they paid for and were not victims (or intended victims) of the scheme alleged in the indictment.

The indictment portrarys the courts as the victim, but Hansmeier did not target property in the hands of the courts. Rather, the indictment alleges that Hansmeier targeted favorable court orders. A court's exercise of discretion is not a property interest.

In Cleveland and Kelly, the Supreme Court cautioned against expanding the fraud statutes to areas traditionally regulated by other officials because it would greatly expand federal criminal jurisdiction. Expanding the fraud statutes to cover litigation conduct, which is generally overseen by the courts, would seem to run contrary to the Supreme Court's cautionary instructions in Cleveland and Kelly.

For these reasons, the indictment does not establish that Hansmeier's scheme targeted money or property in the hands of his victims. It thus fails to establish this essential element of mail fraud and wire fraud.

III. Prejudice.

Prosecutors' end run around the Grand Jury process deprived the Court of subject matter jurisdiction, left the Court without authority to proceed on the fraud dependent charges, violated Hansmeier's Fifth and Sixth Amendment rights, is a structural defect in these proceedings and resulted in Hansmeier's imprisonment for crimes he did not commit. Hansmeier was not on notice of what theory of targeting a property interest prosecutors intended to prove at trial and thus had no ability to prepare a defense. It would have been impossible to determine on what basis a jury convicted Hansmeier because the indictment provided no basis for a conviction. Moreover, the invalid charges resulted in a lengthier sentence and higher restitution than could have been imposed in an absence of the invalid charges. For all of these reasons the Court is constrained to vacate its judgment and Hansmeier's guilty plea and dismiss the fraud dependent charges from the indictment.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 04 - LITIGATION IS NOT FRAUD
DATE: 12/17/2021 06:53:45 AM

CLAIM 4 - The Indictment Fails to Charge Fraud Crimes Because Allegations of Fraudulent Litigation Do Not Come Within the Scope of the Federal Fraud Statues.

The Framers did not want prosecutors to have unchecked power to subject people to the criminal process, so they imposed a Constitutional requirement that requires prosecutors to persuade a Grand Jury to return an indictment that validly charges whatever crimes a prosecutor wishes to prosecute. A charge in the indictment, in order to be valid, must establish all of the essential elements of the crime while at the same time describing the criminal act. When a prosecutor is unable to persuade a Grand Jury to return charges that meet this standard, a court lacks power to do anything other than dismiss the inavlid charges.

In this case, the indictment failed to charge Hansmeier with fraud because, at most, it alleged that Hansmeier engaged in fraudulent litigation activity. Invoking the constitutional avoidance cannon and out of concern for the orderly functioning of the judicial system, the overwhelming weight of authority holds that allegations of fraudulent litigation do not come within the scope of the mail fraud and wire fraud statutes. There is no reason for the Court to depart from the overwhelming weight of authority. Hansmeier raised this argument in his appeal, but it went unaddressed.

I. Allegations of Fraudulent Litigation Fall Outside the Scope of the Federal Mail Fraud and Wire Fraud Statutes.

Numerous private litigants and a small handful of government actors have attempted to deter unwanted litigation via the mail fraud and wire fraud statutes. As one court observed, "The reality is that litigating parties often accuse each other of bad faith." United States v. Pendergraft, 297 F.3d 1198, 1204-09 (11th Cir. 2002) (dismissing mail fraud charges arising from allegations of fraudulent litigation). The Eleventh Circuit's recent decision in DiMartini v. Town of Gulf Stream, 2019 U.S. App. LEXIS 34698 (11th Cir. Nov. 21, 2019) arose from allegations that were similar to those made in the indictment here.

In DiMartini, the town of Gulf Stream, Florida, was bombarded with public records requests from a lawyer-controlled group. According to the complaint, over the course of the year, the town received over 1,500 public records requests, which gave rise to 36 lawsuits alleging inadequate responses by the town. Responding to the records requests and defending against the resulting lawsuits cost the town $370,000. The town decided to respond with a lawsuit of its own; the town hired an attorney, who advised the town that the "best way to counteract" the public records operation was to "file a RICO action in federal court." The Mayor endorsed the lawsuit, stating that the town "ha[d] suffered enough" as a result of the "scandalously malicious and frivolous lawsuits and public records requests...." The Mayor opined that there was a "conspiracy ... to advance actions that essentially do nothing other than to shake down municipal agencies and related contractors for funds." The town brought its complaint and the defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court dismissed the complaint and the Eleventh Circuit affirmed. In its affirmance, the Eleventh Circuit assumed that the defendants had engaged in a pattern of frivolous litigation activity while abusing, on a grand scale, their statutory right to request public documents from the government. Ultimately, however, the Eleventh Circuit affirmed the district court's dismissal of the complaint, stressing that the law encourages citizens to use the courts to redress wrongs and enforce rights, including to resolve public records disputes. Moreover, the Eleventh Circuit noted that citizens have a constitutional right to petition the government for redress under the First Amendment. The Eleventh Circuit concluded that the regardless of the scope and scale of the public records litigation, the courts are equipped with procedures to deal with parties who file frivolous litigation. Id.

A survey of appellate decisions indicates that apparently every federal appellate court to be presented with the issue has rejected the application of the federal mail fraud statute to allegations of fraudulent litigation conduct. See, e.g., Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018) (concluding that allegations of frivolous, fraudulent, or baseless litigation activities, such as proffering false affidavits and testimony to a state court, cannot constitute mail fraud); Snow Ingredients, Inc. v. SnoWizard, Inc. 833 F.3d 512, 525 (5th Cir. 2016) (same); United States v. Camick, 796 F.3d 1206, 1214-17 (10th Cir. 2015) (reversing conviction for mail fraud based on allegations of fraudulent litigation); Raney v. Allstate Ins. Co., 370 F.3d 1086, 1087-88 (11th Cir. 2004) (holding that "alleged conspiracy to extort money through the filing of malicious lawsuits" was not predicate acts of extortion or mail fraud under RICO); Gabovitch v. Shear, 70 F.3d 1252 (table) (1st Cir. 1995) (per curiam) (concluding that "proffering false affidavits and testimony to [a] state court" does not constitute a predicate act of extortion or mail fraud.").

Similarly, the overwhelming majority of district courts to consider the issue have rejected efforts to apply the mail fraud and wire fraud statutes to allegations of fraudulent litigation---including district courts in circuits where the courts of appeals have not decided the issue. See, e.g., Edelson PC v. Bandas Law Firm PC, No. 16 C 11057, at *9 (N.D. Ill. Feb. 6, 2018) ("Courts have declined to treat abusive litigation tactics as criminal in part because of the possibility that doing so would chill valuable litigation

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------------------

activity by 'subject[ing] almost any unsuccessful lawsuit to a colorable ... [RICO] claim.'"); Dillon v. Alan H. Shifrin & Assocs., LLC, No. 16-cv-5761, at *10 n.4 (N.D. Ill. June 8, 2017) ("federal fraud charges cannot be based on the filing of court documents."); Neal v. Second Sole of Youngstown, Inc., No. 1:17-cv-1625 (N.D. Ohio Jan. 9, 2018) (rejecting application of mail fraud statutes to a pattern of allegedly meritless litigation); and Luther v. American Nat. Bank of Minnesota, Civ. No. 12-1085 (MJD/LIB), 2012 WL 5471123, at *6 (D. Minn. Oct. 11, 2012) ("Even if any litigation documents that were filed by the Defendant's counsel in the state court proceedings were false or fraudulent, as numerous courts around the country have held, such documents, generally, cannot be the basis of a RICO claim.").

The foregoing cases arose from a wide range of circumstances, including: civil cases; criminal cases; cases involving a single allegation of fraudulent litigation; cases involving a pattern of fraudulent litigation; cases involving mainstream litigation; and cases involving unpopular litigation. Despite the wide range of circumstances appearing in these cases, courts have consistently articulated similar justifications for rejecting the application of the mail fraud and wire fraud states to allegedly fraudulent litigation. Specifically, courts reason that applying the mail fraud and wire fraud statutes to allegedly fraudulent litigation would impermissibly undermine the judicial system. The Kim court articulated these concerns:

"First, if litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action, which would inundate the federal courts with procedurally complex RICO pleadings. Furthermore, permitting such claims would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them. Moreover, endorsing this interpretation of RICO would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts because any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability."

Kim, 884 F.3d at 104 (internal quotations, record citations and quotation marks omitted).

Although the Eighth Circuit has not decided the issue, its reasoning in I.S. Joseph anticipated the reasoning of the courts which have rejected the application of the mail and wire fraud statutes to allegations of fraudulent litigation. In I.S. Joseph, the Eighth Circuit held that even a groundless, bad faith threat to sue did not come within the scope of the Hobbs Act: "If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary." I.S. Joseph Co. v. Lauritzen, 751 F.2d 265, 267-68 (8th Cir. 1984).

The Eighth Circuit's rejection of the application of the Hobbs Act to allegations of fraudulent litigation activity is particularly notable because prosecutors and civil litigants often pair fraud and extortion claims when attempting to criminalize litigation. The reasoning underlying the extortion analysis is often applied to the fraud analysis and vice versa. See, e.g., United States v. Pendergraft, 297 F.3d 1198, 1208 (11th Cir. 2002) (applying similar reasoning in rejecting charges for mail fraud and extortion based in allegations of fraudulent litigation); Edelson PC v. Bandas Law Firm PC, No. 16 C 11057, at *20 (N.D. Ill. Feb. 6, 2018) ("the fraud claims suffer from the same infirmities that infect the Hobbs Act claim."); Neal v. Second Sole of Youngstown, Inc., Case No. 1:17-cv-1625, at *8 (N.D. Ohio Jan. 9, 2018) ("Finally, applying the mail fraud statute to Neal's [allegedly fraudulent litigation] conduct here raises the same constitutional and absurdity concerns as subjecting it to the Hobbs Act."). It should come as no surprise, then, that federal district courts have cited I.S. Joseph in rejecting mail fraud and wire fraud claims arising from allegedly fraudulent litigation.

II. The Allegations in the Indictment Fall Outside the Scope of the Mail Fraud and Wire Fraud Statutes.

If the Court accepts the decisions comprising the overwhelming weight of authority, as at least one court has described it, then the inexorable conclusion is that the allegations in the indictment fall outside the scope of the mail fraud and wire fraud statutes. Using prosecutors' own words, the scheme alleged in the indictment is a scheme to bring specious claims used to extort money out of the defendants. While Hansmeier would contest prosecutors' characterization of his use of a "routine" copyright enforcement model, the material point for purposes of this claim is that the indictment contains nothing more than allegations within the four corners of litigation.

Notably, the magistrate judge, who rejected Hansmeier's argument on this point in her report and recommendation on Hansmeier's motion to dismiss, recently invoked Kim v. Kimm---which was decided after the report and recommendation was issued---in holding that "[T]he only acts of the defendants alleged to have taken place within the past four years relate to litigation activities that cannot constitute predicate acts under RICO." Kuzner v. Hiniker, No. 20-cv-883, 2020 U.S. Dist. LEXIS 106842 (JRT/KMM) (D. Minn. June 3, 2020). Mail fraud and wire fraud are among the crimes comprising RICO predicate acts. It may be the case that the magistrate judge has joined the overwhelming weight of authority.

The overwhelming weight of authority holds that allegations of fraudulent litigation activity fall outside the scope of the mail fraud

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------

and wire fraud statutes. The indictment's allegations relate exclusively to litigation activity. The indictment thus fails to charge mail fraud or wire fraud.

III. Prejudice.

Prosecutors' end run around the Grand Jury deprived the Court of subject matter jurisdiction, left the Court without authority to proceed on the fraud dependent charges, violated Hansmeier's Fifth and Sixth Amendment rights, is a structural defect in these proceedings and resulted in Hansmeier's imprisonment for crimes he did not commit. Hansmeier was not on notice of what theory of fraud prosecutors intended to prove at trial and thus had no ability to prepare a defense. Hansmeier was forced to enter a guilty plea that he would not have entered had the indictment validly charged fraud. It would have been impossible to determine on what basis a jury convicted Hansmeier because the indictment provided no basis for a conviction. Moreover, the invalid charges resulted in a lengthier sentence and higher restitution than what could have been imposed in the absence of the invalid charges. For all of these reasons, the Court is constrained to vacate its judgment and Hansmeier's guilty plea and dismiss the fraud dependent charges from the indictment.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 05 - NO FACTUAL BASIS FOR PLEA
DATE: 12/16/2021 05:53:29 PM

Claim 5 - Prosecutors Failed to Meet Their Burden of Proving That Hansmeier's Plea Had a Factual Basis

To guard against innocent people being imprisoned for non-crimes, it is incumbent upon prosecutors to meet their burden of proof at a change of plea hearing of establishing the facts supporting the essential elements of the charges subject to a defendants' plea. When prosecutors fail to do so, it is prejudicial error for a Court to accept a defendant's guilty plea.

I. Prosecutors Failed to Establish the Essential Elements of the Charges Subject to Hansmeier's Change of Plea.

At the change of plea hearing, Hansmeier and prosecutors went through a script that consisted of a subset of the facts contained in the indictment. In Claims 1-4, supra, Hansmeier identified the essential elements that are missing from the indictment. Because the indictment failed to establish the essential elements of the offenses subject to Hansmeier's plea, the subset of the facts presented at the change of plea hearing also failed to establish the essential elements of Hansmeier's offenses.

II. Prejudice.

The Court should not have accepted Hansmeier's plea and Hansmeier was convicted of crimes he is innocent of in violation of his Constitutional rights.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

----------------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 06 - NOERR-PENNINGTON
DATE: 12/15/2021 01:00:05 PM

Claim 6 - The Fraud Charges Violate the Noerr-Pennington Doctrine

Hansmeier has provided the Court with several paths that would allow the Court to avoid the Constitutional question of whether the statutes defining the fraud dependent charges in the indictment (the "Challenged Statutes") violate the First Amendment under the Noerr-Pennington doctrine.

The Eighth Circuit evaluated the indictment as alleging two schemes. If the Court decides that it must reach the First Amendment issue, then it is constrained to conclude that, at a minimum, the Challenged Statutes violate the First Amendment as applied to the first scheme alleged in the indictment.

Hansmeier raised these issues to this Court and in his appeal. Evaluating the scheme alleged in the indictment as a single scheme (versus two schemes, as the Eighth Circuit did), the Court held that the allegations in the indictment triggered the sham exception to Noerr-Pennington immunity. The appellate court did not address Hansmeier's argument.

I. Legal Framework.

Under the Supreme Court's decision in BE&K Construction Company v. National Labor Relations Board, 122 S.Ct. 2390, 153 L. Ed. 2d 499, 536 U.S. 516 (2002), the Court must apply a four step test to assess the applicability of Noerr-Pennington immunity. First, the Court must determine if the Challenged Statutes burden Hansmeier's petitioning activity. Second, if they do, then the Court must examine the precise petitioning conduct Hansmeier engaged in to determine whether the burden identified may be imposed consistently with the Constitution. Third, if there is a substantial question that it may not, then the Court must determine whether the Challenged Statutes clearly provide for liability for the conduct at issue. Fourth, only where the Challenged Statutes clearly provide for the burden will the Court need to address whether the statute may be applied to the petitioning conduct consistently with the Constitution.

II. At a Minimum, the Challenged Statutes Violate the First Amendment as Applied to the First Scheme.

Under the BE&K analysis, at a minimum the Challenged Statutes violate the First Amendment as applied to the first scheme alleged in the indictment. In the first scheme, Hansmeier is alleged to have produced adult videos, instructed an investigator to post those videos to the Pirate Bay and filed complaints in federal court against individuals who downloaded the videos. After filing the complaints, Hansmeier would seek a court order allowing him to identify the infringer and would use the information obtained by the court order to pursue a settlement. According to the indictment, Hansmeier did not disclose his investigative methods or his financial interest in the outcome of the case in his discovery motions.

A. Whether the Challenged Statutes Burden Hansmeier's Petitioning Activities.

At the first step of the BE&K analysis, the Court must assess whether the Challenged Statutes burden Hansmeier's petitioning activities. Hansmeier was convicted under the Challenged Statutes for engaging in the first scheme, sentenced to a 14 year term of imprisonment and subjected to a restitution judgment in excess of $1.5 million. Accordingly, the Challenged Statutes pose a burden on Hansmeier's petitioning activities.

B. Whether Imposing These Burdens Runs Afoul of the Petition Clause.

At the second step of the BE&K analysis, the question is whether imposing these burdens on Hansmeier's copyright enforcement petitioning activity runs afoul of the Petition Clause. In analyzing this question, the Court must consider whether the activities comprising the first scheme constitute either protected petitioning activity or activity which must be protected to afford breathing space to the right of petition guaranteed by the First Amendment.

The activities in the first scheme fall squarely within the definition of petitioning, which includes the full array of communications to a court, including a complaint and other assorted documents and pleadings in which plaintiffs and defendants make representations and present arguments to support their request that the court do or not do something. With respect to the first scheme, these activities would include the complaints and motions for early discovery that Hansmeier allegedly filed in support of his copyright enforcement efforts. Any of the activities that do not fall squarely within the definition of petitioning are certainly within the "breathing space" of the petitioning right recognized in Bukley v. Valeo, 422 U.S. 1, 17 (1976) (per curiam) and its

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------------------

progeny. These activities would include the presuit investigation and communications with defendants, which fall within the "breathing space" of the petitioning right because they are closely related to activities that fall squarely within the right. These activities would also include the allegations in the indictment that Hansmeier concealed his investigative methods and interest in the litigation. Misrepresentations and omissions are protected to a certain degree under the "breathing space" principle to give room for advocacy. If they were not, then most litigants could be imprisoned for 14 years, just like Hansmeier. As the Eighth Circuit panel observed during oral argument, in the typical case a judge is likely to experience at least some advocacy from either side that could be construed as a misrepresentation of the facts or the law. And the Court should not overlook the fact that mail fraud and wire fraud count qualify as predicate acts for civil RICO claims, which would open up a world of possibilities to aggressive litigants.

Not all misrepresentations and omissions fall within the "breathing space" principle, however. When litigation is objectively baseless and is associated with a subjective unlawful purpose, then the "sham exception" to Noerr-Pennington immunity is triggered. The allegations in the indictment do not suggest the applicability of the "sham exception." Though the Court held differently at the motion to dismiss phase, at the time of its order the Court did not have the benefit of the Eighth Circuit's clarification that the indictment should be analyzed as two separate schemes.

With respect to the first scheme, all the indictment does is allege that Hansmeier implemented a copyright enforcement scheme that is closely modeled after the scheme used by the copyright holders in Olan Mills and its progeny---including copyright holders who have enforced their copyrights against Internet-based infringers who used file sharing platforms to commit their infringement. The methods used by Hansmeier are so common that a leading copyright law treatise describes them as "routine" and "providing no defense." The indictment claims that Hansmeier's use of these copyright enforcement methods gave rise to an "authorization"-style defense. Objectively speaking, though, this argument was raised by the defendant in Olan Mills and was rejected by the Eighth Circuit. Moreover, this argument has been rejected by court after court in virtually every Internet-based infringement context imaginable. If prosecutors cannot cite contrary authority, then the reasonable conclusion is that prosecutors made a grave error that the Court must correct.

The litigation activities in the first scheme are reasonably based petitioning activities. Because of this, there would be no legitimate basis for the Court to apply the sham exception to the petitioning activities alleged in the first scheme. There is thus a substantial Petition Clause issue.

    C. Whether the Challenged Statutes Clearly Proscribe the Litigation Activities in the First Scheme.

The question at this stage is whether the Challenged statutes clearly proscribe the copyright enforcement activity associated with the first scheme. Only when the the Challenged Statutes clearly provide for the burden will the Court need to address whether the statute may be applied to the petitioning conduct consistently with the Constitution.

The natural place to begin this analysis is with the observation that Congress has specifically legislated in this area. 18 U.S.C. 1001 prohibits people from making material misrepresentations and omissions to judicial officers, among other federal officers. To avoid chilling access to the courts, Congress exempted parties and their attorneys from the scope of the statute. In other words, Congress did not want litigants and their attorneys to face criminal prosecution whenever someone believed that they had made a misstatement or omissions in a judicial proceeding; people would be hesitant to access the courts if they could so easily be prosecuted. Thus, Congress has specifically legislated in this area; Congress has exempted parties and their attorneys from criminal liability based on allegations of misrepresentations and omissions to the courts.

The Challenged Statutes, on the other hand, do not specifically apply to litigation conduct. Rather, they were enacted at a time when misdoers were exploiting state jurisdictional boundaries by, for example, selling counterfeit bank notes across state lines. For the Court to conclude that Challenged Statutes clearly apply to litigation conduct, it would have to reach the illogical conclusion that Congress declined to criminalize misrepresentations and omissions to courts by parties and their attorneys so as to promote access to the courts, but intended for the Challenged Statutes---which are associated with greater penalties than those provided for in 18 U.S.C. 1001---to criminalize the same misrepresentations and omissions. This glaring contradiction deserves careful consideration.

Beyond this inconsistency, there are the many textual and constitutional reasons to reject expanding Challenged Statutes to cover litigation conduct. As was discussed in Claim 4, citing these textual and constitutional reasons, federal courts overwhelmingly hold that even allegations of fraudulent litigation activity fall outside the scope of the fraud statutes. If the Court joins the overwhelming weight of authority, then it need not reach the significant constitutional question presented by the Challenged Statute's criminalization of routine copyright enforcement methods.

    D. Whether the Fraud Statutes May be Applied to the Petitioning Conduct Consistently With the Constitution.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------------

If the Court reaches this stage, then the correct result is to hold that, at a minimum, the Challenged Statues violate the Petition Clause as applied to the first scheme alleged in the indictment. A fuller analysis of this issue is provided in Claim 7, but in short there is no compelling government interest in criminalizing the litigation activities associated with the first scheme. These litigation activities were conducted in strict compliance with the legal standards governing Internet-related copyright enforcement, which serves a vital role in defending the markets for creative works and thus the public's access to creative works. There are far less restrictive means for addressing whatever interest prosecutors may cite for expanding the scope of the Challenged Statutes to cover copyright enforcement litigation. For example, prosecutors are always entitled to file a statement of interest on behalf of the United States to persuade courts to modify their precedents. Moreover, prosecutors are entitled to file an ethics complaint with a state licensing authority if they believe an attorney has acted unethically. For these reasons, the Constitution does not permit the Challenged Statute's application to the litigation conduct alleged in the indictment.

III. Prejudice

The charges in this matter, Hansmeier's change of plea and the Court's judgment are void because they are in conflict with the First Amendment to the United States Constitution. As a result, Hansmeier is improperly imprisoned, he was subjected to penalties far in excess of what would have been appropriate in the absence of Constitutional violations, the Court improperly accepted his change of plea and Hansmeier was subjected to the criminal process in violation of the First Amendment. The Court is constrained to vacate its judgment and Hansmeier's change of plea and dismiss the fraud charges from the indictment.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 07 - FIRST AMENDMENT
DATE: 12/14/2021 09:21:42 AM

Claim 07 - the Statutes Defining the Fraud Dependent Charges in the Indictment Violate the First Amendment as Applied to Hansmeier

Hansmeier has identified several paths that would allow the Court to avoid the Constitutional question of whether the statutes defining the fraud dependent charges in the indictment (the "Challenged Statutes") violate the First Amendment. If the Court nevertheless decides it must reach the issue, then it is constrained to conclude that, at a minimum, the Challenged Statutes violate the First Amendment as applied to the first scheme alleged in the indictment. Accordingly, Hansmeier's change of plea and conviction are void and the fraud dependent charges must be dismissed from the indictment. Hansmeier raised this argument in his appeal, but it went unaddressed.

I. The Conduct Alleged in the Indictment is First Amendment Protected Speech, Expressive Activity, Petitioning Activity and Associational Activity.

According to the Eighth Circuit, the indictment alleges two schemes. At a minimum, the Challenged Statutes violate the First Amendment as applied to the first scheme. Whether they violate the First Amendment as applied to the second scheme does not need to be decided at this stage.

   A. The Challenged Statutes Violate the First Amendment as Applied to the First Scheme.

According to the indictment, in the first scheme Hansmeier: (1) produced adult videos; (2) published the videos on the Pirate Bay; and (3) brought claims for copyright infringement against Pirate Bay users who downloaded the videos without authorization. Moreover, according to the indictment, Hansmeier pursued these activities by associating with limited liability companies and a law firm.

   1. The Activities Associated With the First Scheme are First Amendment Protected Activities.

Video production is First Amendment-protected speech and expressive activity. Publishing works on the Internet is also First Amendment-protected speech and expressive activity. Filing claims for copyright infringement and seeking other forms of relief from the federal courts is First Amendment-protected petitioning activity. Creating and acting through an organization is First Amendment-protected associational activity.

Taken together, the allegations concerning the first scheme describe an intellectually property enforcement model that is so common that it has its political adversaries who have assigned it a nickname: "trolling." Trolling boils down to acquiring/creating intellectual property for the purpose of asserting infringement claims against infringers versus practicing the art. "Trolling" claims are often brought through claim assertion entities, such as the companies described as "shams" in the indictment. Defendants in "trolling"-related claims often describe the plaintiffs as "shams" because the plaintiffs are non-practicing entities that have no operations outside of owning intellectual property and asserting intellectual property claims. For more background on "trolling," the Court may listen to the "When Patents Attack" media publication, which the Court may locate via a simple Google search.

Hansmeier was a well recognized "troll" and was regularly featured on such notable blogs as "DieTrollDie" and "FightCopyrightTrolls." The prosecutors in this case have invoked the term; in their response to Hansmeier's motion for release pending appeal during the COVID-19 pandemic, prosecutors described Hansmeier as a threat to public safety based on his status as a "troll." The company that Hansmeier and Steele created to license their infringement monitoring software was called "Under the Bridge Consulting."

   2. As Applied to the First Scheme, the Challenged Statutes are Subject to Strict Scrutiny Because They Impose a Content-Based Restrictions and Target Petitioning Activity and Political Speech.

As Applied to the First Scheme, the Challenged Statutes are subject to strict scrutiny for two separate reasons.

First, the Challenged Statutes are a content-based restriction on speech, expressive activity, petitioning activity and associational activity. A content-based restriction is one that "cannot be justified without reference to the content of the regulated [activity]." Reed v. Town of Gilbert, 135 S.Ct. 2218, 2227 (2015). Content-based speech restrictions are presumptively unconstitutional and subject to strict scrutiny. As applied to the first scheme, the Challenged Statutes single out a certain form of

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------------------

speech, expressive activity, petitioning activity and associational activity---namely, "trolling." If Hansmeier wishes to enforce intellectual property rights against Internet-based infringers, whether he may do so depends on whether he "trolls" or uses less effective or more difficult non-"trolling" means. This is the essence of an impermissible content restriction.

Second, strict scrutiny is warranted because the Challenged Statutes target political speech on issues of public concern. The Supreme Court "has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protections." Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 759 (1985) (internal quotations omitted). This special protection extends to First Amendment protected activity "relating to any matter of political, social, or other concern to the community ...." Snyder v. Phelps, 562 U.S. 443, 453 (2011) (citations and quotations omitted).

"Trolling" has been the subject of vigorous political debate. President Obama delivered a speech railing against copyright trolls shortly before Hansmeier was charged with fraud. Members of Congress have introduced anti-trolling legislation. During the time he was under indictment, a member of Congress introduced the Stop Copyright Trolls Act. Even the judiciary joined the political fray. Magistrate Judge Noel delivered a lunchtime lecture at the University of Minnesota Law School to criticize "trolls" in general and Hansmeier in particular. Trolling has also generated significant discussion in the press. Hansmeier a primary subject of the Internet blogs "fightcopyrighttrolls" and "DieTrollDie." Hansmeier was regularly featured in the local papers. Hansmeier's charges were publicized in newpapers and online publications across the world.

Finally, the issues in this case are of public concern. The copyright laws exist to create a market for creative works. Without such a market there would be no financial incentive to publish creative works and the public's access to such works would be much more limited. The United States is the global leader in creative expression because, until the dawn of the Internet at least, it has had the largest market for creative works. Thus, creative professionals have a strong incentive to publish their works in the United States. "Trolling" is essentially the only check against Internet-based infringement, which materially impairs the American market for creative expression. The harm from Internet-based infringement is sometimes difficult to apprehend; the harm to the public is all of the works that would have been created or published, but weren't, due to the impairment that infringement imposes on markets for creative expression. The public has a significant interest in the cost/benefit calculus of "trolling."

Because the Challenged Statutes burden "trolling," which relates to "core political speech," strict scrutiny unquestionably applies. McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 347 (1995).

   3. The Challenged Statutes Cannot Survive Strict Scrutiny.

To survive strict scrutiny a statute must: (1) serve a compelling government interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest. Sable Commc'ns of Cal., Inc. v. FCC, 492 U.S. 115 (1989). The Challenged Statutes fail every element of that test.

Prosecutors cannot articulate a compelling interest in applying the Challenged Statutes to "trolling." Here, the "trolling" model employed by Hansmeier is, by no small coincidence, carefully modeled after the methods used by the plaintiff in Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345 (8th Cir. 1994) and the anti-piracy campaigns waged by the Recording Industry Association of America in the 2000's. These methods are legitimate; these methods repeatedly withstood challenge by copyright infringement defendants and are described as "routine" and "providing no defense" by a leading learned treatise. Moreover, Hansmeier's "trolling" served as an important check on the otherwise "free for all" infringement that is taking place online. It is difficult to imagine any interest that prosecutors might have, much less a "compelling" interest.

The Challenged Statutes are not narrowly tailored to achieve whatever interest prosecutors might have. Here, the Challenged Statutes require copyright holders to refrain from trolling altogether. For example, according to prosecutors, "trolling" generates meritless claims and bringing meritless claims violates the fraud statutes. Prosecutors hold this position even though settled precedent provides just the opposite.

Accordingly, the Challenged Statutes sweep too broadly and burden constitutionally protected speech. There are less restrictive means for prosecutors to address whatever concerns they have with trolling. For example, they can file a statement of interest on behalf of the United States in "trolling" cases to attempt to persuade judges to overrule "trolling" precedents. Or, if they believe an attorney has acted unethically, they can file a complaint with state licensing authorities. Or if all else fails they can lobby their elected representatives to support the Stop Copyright Trolls Act or whatever its modern incarnation is.

   4. The Challenged Statutes Cannot Survive Intermediate Scrutiny.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

Even if the Court applies intermediate scrutiny, the Challenged Statutes cannot survive because they are not "narrowly tailored to serve a significant governmental interest and ... [do not] leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). The lack of any legitimate interest or tailoring is discussed above, and the absence of "ample alternative channels" is apparent. For the reasons discussed above, copyright holders need "trolls" to check infringement and defend the markets for creative expression.

B. The Court Need Not Conduct a First Amendment Analysis With Respect to the Second Scheme at This Time.

If the Court concludes that the Challenge Statutes violate the First Amendment as applied to the first scheme, then the Court lacked authority over the charges in the indictment because the first scheme is inextricably intertwined with the charges that were the subject of Hansmeier's plea. The Court lacked subject matter jurisdiction to accept Hansmeier's plea and impose a term of imprisonment with respect to that charge. The Court must vacate the judgment, Hansmeier's plea and dismiss the fraud dependent charges from the indictment.

III. Prejudice.

The Challenged Statutes violate the First Amendment as applied to Hansmeier. Accordingly, the Court's judgment and Hansmeier's change of plea are void. The Court should vacate the judgment, Hansmeier's change of plea and dismiss the indictment.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 08 - FIFTH AMENDMENT
DATE: 12/14/2021 09:24:32 AM

CLAIM 8 - As applied to Hansmeier, the Fraud Statutes are Void for Vagueness

Hansmeier has provided the Court with several paths to avoid the issue of whether the federal mail fraud and wire fraud statutes (the "Challenged Statutes") violate the Fifth Amendment. If the Court concludes that it must reach the issue, then it is constrained to conclude that, at a minimum, the Challenged Statutes violate the Fifth Amendment's Due Process requirements as applied to the first scheme alleged in the indictment.  Hansmeier raised this issue in his appeal. The Eighth Circuit mentioned the issue in passing in its opinion, but ultimately did not reach the issue.

I. Overly Vague Statutes Are Void Under the Due Process Clause.

The Challenged Statutes are void because, as applied to the first scheme alleged in the indictment, they are "(1) so vague that they fail to give ordinary people fair notice of the conduct they punish, or (2) so standardless that they invite arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569 (2015). Because of the potential chilling effects, "a more stringent vagueness test" applies when, as here, a law "interferes with the rights of free speech." Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

II. As Applied to the First Scheme, the Challenged Statutes Meet Both Prongs of the Johnson Test.

  A. The Challenged Statutes Fail to Give Ordinary People Fair Notice of the Conduct They Punish.

As applied to the first scheme, the Challenged Statutes are impermissibly vague because they fail to give ordinary people fair notice that "trolling" is violative of the statutes. While "trolling" may be fairly described as polarizing, it is beyond serious dispute that "trolling" is a well-established and accepted intellectual property enforcement model. Prosecutors' belief that trolling results in meritless claims has no support in the plain text of the Copyright Act or judicial interpretations of it. Indeed, court after court has rejected the very defenses that prosecutors have invoked in this case. The Eighth Circuit, in particular, has held that a copyright holder may hire a private investigator to ferret out infringement without creating an authorization defense in the hands of a copyright infringement defendant. An average person would not suspect that they are committing fraud by engaging in litigation that is carefully modeled after prior intellectual property enforcement campaigns.

  B. The Challenged Statutes Are So Standardless That They Invite Arbitrary Enforcement.

As applied to the first scheme, the Challenged Statutes are impermissibly vague because they are so standardless that they invite arbitrary enforcement. In the first scheme, Hansmeier instructed an agent to upload videos to the Pirate Bay and filed complaints against the people who downloaded the videos. When he filed the complaints, Hansmeier did not know the names of the downloaders. Accordingly, he had to file a motion asking the courts to order the downloader's Internet Service Provider to divulge the downloader's name. Once Hansmeier obtained the name he proceeded with obtaining a settlement.

The indictment alleges that Hansmeier committed fraud because his complaints represented that the copyright infringement defendants downloaded Hansmeier's video without authorization and because, in his motions for early discovery, Hansmeier failed to disclose his investigative methods and financial interest in the case. These allegations are standardless because they are untethered from the law of copyright enforcement and/or conflict with the law of copyright enforcement. What these allegations amount to is prosecutors creating copyright enforcement doctrines from thin air and imprisoning "trolls" because the "trolls" did not follow these entirely invented doctrines.

According to the law of copyright enforcement, a plaintiff establishes a claim for copyright infringement by showing ownership of a copyright and copying of constituent elements of that protected work. Feist Pubs., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). There is no dispute that this happened here, which means that Hansmeier had a prima facie claim for copyright infringement. Prosecutors claim that Hansmeier had no prima facie claim for copyright infringement because of his investigative tactics. Yet, A plaintiff's use of an investigator to ferret out infringement is "routine" and "provides no defense." Contrary to the prosecutors' understanding of copyright law, Hansmeier's investigator's actions did not somehow undermine Hansmeier's prima facie claim.

A plaintiff who wishes to pursue a copyright infringement claim against an infringer is entitled to file a complaint in federal court. A complaint need only contain a short plain statement of the facts that entitle the plaintiff to relief. There is no requirement that a

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------------

complaint anticipate a defendant's possible defenses. There was thus no requirement that Hansmeier discuss his investigative methods or list who has an ownership interest in the plaintiff in his complaint.

A plaintiff who files a complaint must assist the court in assessing conflicts of interest. The Federal Rules of Civil Procedure provide that a plaintiff must disclose whether a publicly traded company owns 10% or more of the plaintiff. See Fed. R. Civ. P. 7.1. The defendant must file a similar disclosure. Id. There is no allegation that Hansmeier circumvented these rules to benefit from a conflict of interest.

A plaintiff who wants to obtain an infringer's information from their Internet Service Provider may file a motion seeking that information. Courts consider five factors when evaluating such a motion: (1) the concreteness of hte plaintiff's showing of a prima facie claim of copyright infringement; (2) the specificity of the discovery request; (3) the absence of alternative means for obtaining the information; (4) the need for the information; and (5) privacy interests. See Arista Records LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010). None of the allegations in the indictment bear on these factors.

As the above legal authority makes clear, the misrepresentations and omissions alleged by the indictment have nothing to do with the law of copyright enforcement. The indictment's allegation that Hansmeier failed to disclose his investigative methods ignores that this disclosure was not required by the legal standards discussed above. The indictment's allegation that Hansmeier's use of an investigator "authorized" the infringers' downloads is an incorrect statement of the law of copyright enforcement. The indictment's allegation that Hansmeier failed to disclose his financial interest ignores the fact that the Hansmeier complied with all applicable requirements to do so and that the only purpose of financial disclosures is to assist the courts in assessing conflicts of interest.

These circumstances violate the Fifth Amendment's Due Process requirements. Here, Hansmeier strictly followed all of the requirements of the law of copyright enforcement. He was nevertheless imprisoned for fraud based on prosecutors' allegations that factors unrelated to (or in confict with) the law of copyright enforcement would have been "material" to a judge's decisionmaking. Put differently, the Challenged Statutes allowed prosecutors to rewrite the law of copyright enforcement to obtain a conviction. Laws that can be rewritten at the whim of a prosecutor are no laws at all. Standards that can be changed in an ex post facto manner are no standards at all. This is the very sort of standardless environment that the Fifth Amendment prohibits.

III. The Court Need Not Assess the Second Scheme at This Time.

While Hansmeier disputes the prosecutors' allegations regarding the second scheme, this is not an appropriate stage to challenge factual assertions. Nor is it necessary to address the second scheme in order to provide Hansmeier with relief under this claim because he first scheme is inextricably intertwined with the second scheme. The Court should dismiss the fraud dependent charges from the indictment.

IV. Prejudice.

As applied to Hansmeier, the Challenged Statutes violate the Fifth Amendment. Hansmeier's conviction and sentence are void. The Court should vacate the judgment and Hansmeier's change of plea and dismiss the fraud dependent charges from the indictment.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 09 - IMPERMISSIBLY INTRUDES WITH L/J POWERS
DATE: 12/14/2021 01:14:09 PM

CLAIM 9 - As Applied to Hansmeier the Fraud Statutes Impermissibly Intrude Upon Powers Delegated to Congress and the Judiciary.

Hansmeier has provided the Court with several paths for avoiding the Constitutional issue of whether the mail fraud and wire fraud statutes (the "Challenged Statutes"), as applied to Hansmeier, impermissibly intrude upon powers delegated by the Constitution to the legislative and judicial branches of the federal government. If the Court concludes that it must reach the issue, then it should rule that the Challenged Statutes impermissibly intrude upon Congress' copyright power and the Judiciary's power to interpret the law.

I. The Constitution Delegates Powers Among the Branches of Government.

The core design feature of the Constitution is its diffusion of power to different branches of government. This design feature protects liberty because it prevents power from being overly concentrated. The more distributed power is within our government, the more our government will be responsive to the people versus the whims of whomever holds the reins of power. Judges serve a vital role in checking laws that impermissibly upset the Constitutional design.

The Constitution expressly delegates to Congress the power to protect intellectual property rights, including copyrights. U.S. Const. Congress has exercised its power by drafting the Copyright Act. The Constitution also expressly delegates to the Judiciary the power to interpret the law. The Judiciary has exercised this power by interpreting the Copyright Act. For example, in Olan Mills, the Eighth Circuit rejected an interpretation of the Copyright Act that prosecutors are imposing through the Challenged Statutes.

II. The Challenged Statutes Impermissibly Intrude Upon Congress's Copyright Power and the Judiciary's Power to Interpret the Law.

As applied to Hansmeier, the Challenged Statutes impermissibly intrude upon Congress's copyright power and the judiciary's power to interpret the law. The prosecutors' theory of fraud is that Hansmeier violated the Challenged Statutes by making statements and omissions that would be material to judges. Yet, accepting the facts on the face of the Indictment as true, Hansmeier's statements and omissions were consistent with the law governing copyright enforcement and judicial interpretations thereof. By permitting prosecutors to charge people with fraud based on engaging in litigation that is consistent with the law, but objectionable to prosecutors, the Challenged Statutes impermissibly interfere with powers that the Constitution delegates to Congress and judges.

Indeed, in such a society, prosecutors would wield greater power than judges. When a judge disagrees with a plaintiff's position, the plaintiff's worst case scenario is the loss of their claim. When a prosecutor disagrees with a plaintiff's position, the plaintiff's worst case scenario is a loss of their liberty. If a plaintiff is forced to choose between the viewpoint of a judge or prosecutor, the prosecutor will always be favored because they wield the stick of imprisonment. The Challenged Statues impermissibly give prosecutors supremacy over judges in the core judicial function of saying what the law is.

There are other examples, but the point should clear. The Challenged Statutes impermissibly bestow upon prosecutors powers that the Constitution does not permit them to have.

III. Prejudice.

The Challenged Statutes are unconstitutional as applied to Hansmeier. Accordingly, the judgment and change of plea are void. The Court should vacate the judgment and change of plea and dismiss the indictment.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 10 - FRAUD PART 1
DATE: 12/15/2021 08:30:47 AM

CLAIM 10 - Prosecutors' Material Misstatements and Omissions Violated Hansmeier's Constitutional Rights

I. Introduction. ·

One of the dangers of interpreting fraud statues to include allegations of meritless legal claims is the reality that busy prosecutors cannot possibly obtain expertise in all areas of the law. Grave errors are possible.

In this case, Paul Hansmeier was convicted of fraud based on allegations that he brought meritless claims for copyright infringement and concealed the invalidity of his claims. Prosecutors claim that Hansmeier's investigative methods yielded meritless claims. But experienced copyright law practitioners would know that Eighth Circuit precedent holds exactly the opposite. Indeed, experienced copyright law practitioners would recognize the methods used by Hansmeier as "routine" and "providing no defense," in the words of a leading copyright law treatise.

Prosecutors have a duty to refrain from making material misstatements. That they failed to do so at the outset of this case is understandable. The prosecutors in this case were not experienced copyright law practitioners and they may not have been familiar with copyright law practice.

However, once they were alerted to their error, prosecutors continued making material misstatements versus offering a correction. This is unfortunate. The Eighth Circuit relied on these misstatements in its affirmance.

The prosecutors' material misstatements and their failure to correct their material misstatements violated Hansmeier's constitutional rights, prejudiced him and justifies the relief sought herein.

The public interest strongly favors the relief sought in this motion. The public's faith in the criminal justice system would be undermined if prosecutors are allowed to knowingly use material misstatements in order to obtain convictions. Moreover, third parties are relying on the prosecutors' material misstatements to their detriment, resulting in economic injury, confusion and fear. Finally, the prosecutors' material misstatements are necessitating litigation that is imposing a growing burden on the courts.

II. Background.

Hansmeier is an attorney who represented clients in enforcing their copyrights against Internet-based infringement. Hansmeier's team would monitor known piracy websites and record the Internet Protocol Addresses ("IP Addresses")---i.e., the numerical label assigned by an Internet service provider---used to download his clients' copyright-protected works. However, Hansmeier could not associate an identity with the IP address. That would require obtaining subscriber information from the infringer's Internet Service Provider.

Thus, Hansmeier filed civil lawsuits in federal district courts against "John Doe." From there, Hansmeier filed a motion asking the court to order John Doe's internet service provider to disclose John Doe's identifying information. In these motions, Hansmeier discussed the factors ordinarily considered by courts in connection with such requests, e.g., Arista Records LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010), but did not discuss anything else, including "John Doe's" possible defenses.

Hansmeier then used this information to direct communications to the infringer, stating the circumstantial case for the infringer's civil liability under the Copyright Act and offering to resolve the matter in exchange for a financial sum. In many cases, the infringer agreed to the proposed settlement in lieu of further civil litigation. This copyright enforcement method has survived appellate court scrutiny. Killer Joe Nevada, LLC v. Does 1-20, 807 F.3d 908 (8th Cir. 2015).

Over time, Hansmeier tweaked this copyright enforcement method by instructing his investigator to upload his clients' copyrighted works to piracy websites instead of waiting for third parties to do so. By doing so, Hansmeier was able to catch infringers from the time the work became available versus missing the infringers who downloaded the work before his investigator discovered that it had been posted. This investigative method has survived appellate scrutiny. See Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345 (8th Cir. 1994) (ordering judgment to be entered in favor of copyright holder whose investigator made works available to suspected infringers and used deceptive tactics in order to induce infringement). Indeed, this investigative method is "routine." 4-13 Nimmer on Copyright 13.09[B] ("Use of ... undercover investigators and the like to ferret

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------------------------------

out infringement is routine, and providers no defense.").

Finally, Hansmeier helped create claim assertion entities---i.e., entities that aggregate intellectual property for the purpose of asserting infringement claims. These entities were clients of Hansmeier's law firm, through prosecutors allege that Hansmeier was the de facto owner of these entities. Claim assertion entities are common plaintiffs in intellectual property litigation because they offer litigation advantages over operating companies, e.g., they are not typically susceptible to counterclaims and they have no operations to be interrupted by the burdens of discovery.

Based on the above actions, the government charged Hansmeier with mail fraud, 18 U.S.C. 1341, and wire fraud, 1343, as well as conspiracy to commit said offenses. The indictment erroneously claimed that Hansmeier's copyright infringement claims were meritless.

The indictment stated:

"The defendants then uploaded movies to file-sharing websites hoping to lure people into downloading their movies, when HANSMEIER and STEELE ensnared someone in their trap, they filed false and deceptive copyright infringement lawsuits that concealed their role in distributing the movies, as well as their significant personal stake in the outcome of the litigation." Dkt. 1 at para. 17.

"Thus, defendants knowingly caused their clients' movies to be shared and distributed on BitTorrent websites, and thereby purposely allowed and authorized the BitTorrent users to obtain their clients' movies." Dkt. 1 at para. 20;

"Thereafter, despite colluding in the purported infringement of their clients' copyrights, HANSMEIER and STEELE caused lawsuits to be filed disingenuously alleging that the individuals who purportedly downloaded the movie did so 'without authorization' or consent from the copyright holder or its agents." Dkt 1 at para. 21;

"[O]n or about April 29, 2011, the defendant filed an "ex parte" motion seeking to obtain early discovery ... and therein falsely and misleadingly represented to the court that the John Does 'without authorization'[] used an online peer-to-peer ('P2P') media distribution system to download Plaintiff's copyrighted works to the public ... by making Plaintiff's copyrighted works available for distribution to others." Dkt. 1 at para. 22;

"[C]aused to be filed ex parte motions for early discovery that failed to disclose their involvement in uploading the copyrighted movies and falsely accused the purported downloader of obtaining the movie without authorization or consent. Courts throughout the country, relying on the false and misleading representations made or caused to be made by the defendants, granted early discovery." Dkt. 1 at para 23; and

"Defendants falsely represented to the subscribers that they and their clients had legitimate copyright infringement claims against the subscriber when, in fact and as defendants knew, they had uploaded to the BitTorrent website the very movie that they now threatened to sue the subscriber for downloading." Dkt. 1 at para. 24.

These allegations were misstatements. Under Olan Mills and its progeny, a copyright holder may make works available to prospective infringers without risking an authorization defense.

Hansmeier brought a motion to dismiss the indictment's fraud charges for failure to state a legally-viable theory of the charged offense under Federal Rule of Criminal Procedure 12(b)(3)(B)(v). In that motion, Hansmeier corrected prosecutors' misunderstanding of copyright law. Instead of correcting their material misstatements, prosecutors concealed the Eighth Circuit's decision in Olan Mills, notwithstanding their professional duty to disclose conflicting precedent. Prosecutors continued to repeat their material misstatements regarding the merits of Hansmeier's claims for copyright infringement and falsely accused Hansmeier of concealing the invalidity of his claims.

To make their theory of fraud more plausible, prosecutors made the material misstatement that courts dismissed Hansmeier's claims when they learned they were invalid. The Court may take judicial notice of the federal docket to determine that no court has ever dismissed one of Hansmeier's copyright infringement claims based on Hansmeier's "control and ownership and uploading," as prosecutors stated.

The magistrate judge recommended that the motion to dismiss be denied, reasoning that the misrepresentations and omissions alleged in the indictment satisfied the materiality requirement of the mail and wire fraud statutes. The magistrate judge's report and recommendation was heavily influenced by the prosecutors' misstatements. Over objection, the Court adopted the recommendation of the magistrate judge and denied the motion to dismiss.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

------------------------------------------------------------------------------------------------------------

Prosecutors then engaged in an extensive campaign of repeating their material misstatements to prospective witnesses in Hansmeier's cases, including attorneys who had worked with Hansmeier, federal district court judges whom prosecutors were grooming as witnesses and other individuals who had been associated with Hansmeier during the time when he practiced copyright law.

Hansmeier entered a conditional guilty plea under Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the district court's ruling on the motion to dismiss. Prosecutors continued making the material misrepresentation that Hansmeier's copyright infringement claims were meritless. These material misrepresentations surfaced in the presentence investigation report, the government's sentencing memorandum and in the restitution litigation.

In his opening appellate brief, Hansmeier once again corrected prosecutors' misunderstanding of copyright law. Regrettably, prosecutors once again resorted to material misstatements regarding the merits of Hansmeier's copyright infringement claims. Prosecutors stated, "Hansmeier's [uploading] conduct impliedly authorized the downloading of seeded movies." Resp. Br. at 4; "Each of those lawsuits was fraudulent;" Resp. Br. at 5-6. "[S]eeding the materials impliedly authorized the downloading of those materials." Prosecutors also continued making the false claim that courts dismissed Hansmeier's copyright infringement claims once they became aware of the invalidity of the claims.

Hansmeier provided prosecutors with an opportunity to correct their misstatements of law. In a letter sent to prosecutors on [date], which was filed with the Eighth Circuit, Hansmeier notified prosecutors of their misstatements and their professional obligation to offer a correction. Prosecutors took no action. Indeed, at oral argument, prosecutors repeated their lie that Hansmeier's investigative methods gave rise to an authorization-related defense.

The Eighth Circuit Court of Appeals affirmed. In its decision, the court of appeals interpreted the indictment as alleging two separate schemes to defraud. The first scheme involved Hansmeier's copyright infringement claims. The second scheme involved so-called "hacking" claims.

Regarding the copyright infringement claims, the court of appeals held that the misrepresentations and omissions alleged in the indictment qualified as an actionable "scheme to defraud" under the mail and wire fraud statutes. The court of appeals held that Hansmeier's omissions met the materiality requirement under the mail and wire fraud statutes because they concealed the invalidity of Hansmeier's claims. The court of appeals was particularly taken by prosecutors' false allegation that Hansmeier faced dismissals of his lawsuits and sanctions when courts learned about Hansmeier's investigative tactics/ownership.

The decision stated:

"Had the courts known that Hansmeier intentionally posted the films on websites used for illegal file sharing or that [defendants] were in fact the personal beneficiaries of their clients' copyright claims, they would have treated the subpoena requests with far greater skepticism---indeed, the indictment alleges that [Hansmeier] faced dismissals of [his] lawsuits and sanctions when the extent of [his] involvement eventually came to light."

Hansmeier's request for Supreme Court review was denied on October 6, 2021.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

----------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 10 - FRAUD PART II
DATE: 12/15/2021 06:36:20 AM

II. Prosecutors' Misstatements and Omissions Were Material to These Proceedings.

Prosecutors' misstatements and omissions were material to these proceedings.

    A. Grand Jury Proceedings.

The prosecutors' misstatements regarding the merit of Hansmeier's cases and their concealment of the Eighth Circuit's decision in Olan Mills was material to the Grand Jury. Hansmeier's brother participated in the Grand Jury proceedings. One of the few questions he was asked by the Grand Jury probed at the issue of why Hansmeier would bring meritless cases when an attorney can make good money by bringing meritorious cases. This issue was naturally at the heart of the Grand Jury's decision making process on whether to return an indictment, but the Grand Jury was unaware that Hansmeier's cases were "routine" cases to which there was "no defense."

The Grand Jury process was tainted by the prosecutors' material misstatements and omissions and the Grand Jury would not have returned the indictment which contained the inaccuracies it did (or any indictment at all, perhaps) had prosecutors been truthful and candid to the Grand Jury.

    B. Motion to Dismiss Proceedings.

At the motion to dismiss stage, prosecutors were on actual notice that they had misstated the law of copyright enforcement and were concealing the Eighth Circuit's decision in Olan Mills. Now unquestionably on actual notice of their error, prosecutors knowingly made material misstatements to the magistrate judge and this Court and repeatedly and falsely described Hansmeier's copyright enforcement cases as fraudulent. If prosecutors had told the truth, they would have acknowledged their mistake of law and taken efforts to correct it. Instead, the magistrate judge and this Court relied on prosecutors' knowing material misrepresentations in denying Hansmeier's motion to dismiss the fraud dependent charges from the indictment. This Court, for example, invoked the sham litigation exception to Noerr-Pennington immunity, which would not be appropriate with respect to the reasonably grounded copyright enforcement claims that Hansmeier brought. If prosecutors had told the truth about the law of copyright enforcement and Hansmeier's claims, then the Court would have been constrained to dismiss the first scheme from the indictment.

Prosecutors' knowing material misstatements and omissions were prejudicial. Once this Court was deceived into believing that use of the Olan Mills copyright enforcement is a federal crime, there was no way for Hansmeier to defend against prosecutors' claims. No matter what Hansmeier did, the jury was going to be under the false impression, based on instructions from this Court, that Hansmeier's use of the Olan Mills copyright enforcement methods was a federal crime. Prosecutors' knowing misstatements and omissions put Hansmeier in a position where there was nothing for him to do but change his plea.

    C. False Statements to Prospective Witnesses/Witness Intimidation.

After they prevailed against Hansmeier's motion to dismiss. Prosecutors and their agents went around the nation making knowing material misrepresentations and omissions to potential witnesses. For example, prosecutors' agents approached attorney Tim Anderson, who served as local counsel in some of Hansmeier's cases, and made knowing misrepresentations and omissions to him by telling him that the copyright enforcement claims he had been associated with were fraudulent. That was the opposite of the truth, but Anderson had no choice but to play along, lest he too be subject to criminal charges. Anderson was forced to express his deep shame for being associated with these "fraudulent" claims.

Prosecutors' material misstatements and omissions were particularly prejudicial due to the nature of the prosecutors' theory of fraud. Under the prosecutors' theory of fraud, use of the Olan Mills copyright enforcement method was a federal crime and anyone who disagrees is committing a federal crime. When given the choice between telling the truth and facing a lengthy prison sentence or playing along with with prosecutors and avoiding prison, most of the witnesses who might have otherwise testified on Hansmeier's behalf chose the latter.

    D. Change of Plea.

Prosecutors' knowing misrepresentations constrained Hansmeier into changing his plea. Prosecutors' misstatements and

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------------------------------------------

intimidation deprived Hansmeier of access to witnesses and evidence. Prosecutors' misstatements to the Court and the Court's subsequent denial of Hansmeier's motion to dismiss placed Hansmeier in the unusual position where his participation in a "routine" form of copyright enforcement which provides "no defense" was going to result in his conviction for fraud. Hansmeier could not deny that he used these routine methods, but prosecutors had successfully used false statements to convince the Court that this standard form of copyright enforcement was fraudulent. Hansmeier had no choice but to change his plea because he did, after all, participate in Olan Mills-style copyright enforcement. Had prosecutors been honest and forthcoming about their mistake of law, Hansmeier would have simply gone to trial on the so-called "hacking" claims and demonstrated how these claims were quite different from prosecutors' mistaken understanding of them.

E. Sentencing.

Prosecutors continued knowingly misrepresenting the law of copyright enforcement during the sentencing process. Prosecutors made knowing material misstatements and omissions to United States Probation. The Presentence Investigation Report inaccurately described Hansmeier as having brought fraudulent copyright enforcement lawsuits, when the truth was that, accepting the facts on the face of the indictment as true, Hansmeier's copyright enforcement lawsuits were reasonably grounded. Prosecutors' knowing material misstatements and omissions resulted in the Presentence Investigation Report portraying Hansmeier in a more negative light than what was warranted under the circumstances and resulted in Hansmeier receiving enhancements that significantly increased his sentencing guidelines. For example, Hansmeier received enhancements based on number of victims and loss amounts that would not have been warranted if the Olan Mills-style claims had not contributed to those enhancements. Nor would Hansmeier have been eligible for an enhancement based on use of a computer, as the prosecution's entire theory of the "hacking" claims---as mistaken as it may have been---was that there were no computers.

Separately, but also relevant to sentencing, the prosecutors' knowing misrepresentations and omissions put this Court in the position where a reasonable observer would perceive it to be a victim of Hansmeier's Olan Mills-style copyright enforcement claims. This Court presided over cases AF Holdings, LLC v. John Doe, 12-cv-1441, 12-cv-1442, 12-cv-1443, 12-cv-1444 and 12 -cv-1445 (JNE/FLN) (D. Minn.), which were associated with claims that are at the heart of the first scheme alleged in the indictment. According to the prosecution's theory of fraud, which this Court accepted, Hansmeier deceived and tricked this Court. It is difficult to imagine that the Court was unaffected by its involvement with these cases.

F. Appeal.

Prosecutors' made knowing misrepresentations and omissions in the appeal. Specifically, they continued falsely claiming that a copyright holder authorizes copying of their works if they have an investigator make works available to potential infringers for the purpose of ferreting out infringement. Moreover, prosecutors falsely claimed that Hansmeier's copyright enforcement cases were dismissed by courts and that Hansmeier was sanctioned once Hansmeier's financial interest in the cases and investigative methods were revealed. At oral argument, panel member Judge Kelly appeared to be curious about prosecutors' insistence that Hansmeier's copyright enforcement claims were meritless and asked a direct question on that point. Prosecutors knowingly made the false representation to Judge Kelly that Hansmeier's claims were meritless. The Eighth Circuit relied on these knowing misrepresentations and omissions in its affirmance. The Eighth Circuit claimed that judges would have treated Hansmeier's claims with a much greater degree of skepticism if they had known about Hansmeier's investigative methods and financial interest in the claims and, as evidence for this statement, the Eighth Circuit referenced prosecutors' false claim that courts dismissed Hansmeier's cases and sanctioned Hansmeier once they became aware of these facts. If prosecutors had refrained from knowingly making false statements and omissions, there would have been no basis for the Eighth Circuit to affirm with respect to the first scheme.

G. Other Knowing Misrepresentations and Omissions.

Beyond the knowing misrepresentations and omissions directly associated with Olan Mills and its progeny, prosecutors made several other knowing misrepresentations and omissions in this case. First, prosecutors concealed the Eighth Circuit's decision in United States v. Jain from the Grand Jury, the magistrate judge, this Court and the Eighth Circuit. Jain, which states that the essence of a scheme to defraud is the intent to give a victim less than what they paid for, has been dispositive of the prosecutor's theory of fraud from the initiation of these proceedings. There has never been even a hint of a suggestion in these proceedings that Hansmeier intended to give the settling defendants less than what they paid for in settlement. There has thus been no basis to contend that Hansmeier was involved with a scheme to defraud. Prosecutors never acknowledged Hansmeier's argument on this point or disclosed that their theory of fraud must fail under Eighth Circuit precedent, notwithstanding their professional responsibility to correct prior misstatements to a tribunal.

Second, prosecutors concealed the fact that their statements about what judges may or may not have deemed material in

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

Hansmeier's "John Doe" copyright enforcement cases were inconsistent with the legal standards governing those cases. For example, prosecutors claimed that Hansmeier should have disclosed his investigative methods, even though under the governing legal standards, Hansmeier's investigative methods would be relevant only once a defendant appeared and asserted an affirmative defense. If prosecutors had disclosed that their claims were inconsistent with these legal standards, then the Grand Jury, magistrate judge, this Court and the Eighth Circuit would have been less likely to accept prosecutors' theory of fraud.

Third, prosecutors concealed the fact that their theory of fraud conflicted with the Supreme Court's decision in Cleveland. In Cleveland, the Supreme Court rejected the government's contention that a person commits fraud by lying to government officials to obtain favorable government action. That is exactly what prosecutors are claiming happened here and if prosecutors had been forthright about this reality, then they would have been less likely to succeed in this case.

Fourth, prosecutors failed to disclose or acknowledge the overwhelming weight of authority specifically rejecting attempts to ground theories of fraud in allegations of litigation misconduct. Both the magistrate judge and this Court appeared to be affirmatively misled by the prosecutors' deception on this point. Had prosecutors been honest about this body of decisions, then they would have been less likely to succeed in this case.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 10 - FRAUD PART III
DATE: 12/15/2021 09:43:11 AM

III. Prosecutors' Misrepresentations and Omissions Prejudiced Hansmeier.

Prosecutors' misrepresentations and omissions prejudiced Hansmeier. The misrepresentations and omissions have also prejudiced third parties and the courts.

   A. Prosecutors' Misrepresentations and Omissions Prejudiced Hansmeier.

Prosecutors' misrepresentations and omissions prejudiced Hansmeier. First, the Grand Jury would have been less likely to return an indictment charging the first scheme alleged in indictment if they had been aware that Hansmeier's investigative methods were "routine" and provided "no defense." The Grand Jury's concern was that Hansmeier's cases were meritless, but had prosecutors provided accurate information to the Grand Jury then this concern would not have been present.

Second, prosecutors' misrepresentations and omissions resulted in the failure of Hansmeier's motion to dismiss. If the Court had known that the theory of fraud alleged in the indictment: (1) conflicted with the Eighth Circuit's decision in Jain; (2) resulted in a rewriting of the legal standards governing copyright enforcement; (3) conflicted with the Supreme Court's decision in Cleveland; and (4) asked the Court to depart from the overwhelming weight of authority rejecting the application of the fraud statutes to allegations of litigation conduct, then this Court would have been far more likely to dismiss the fraud dependent charges from the indictment. Moreover, if prosecutors had not concealed Olan Mills and its progeny from the Court, then the Court could not have plausibly described Hansmeier's copyright enforcement cases as a sham and would have been constrained to sustain Hansmeier's First Amendment challenge to the prosecutors' theory of fraud.

Third, prosecutors' misrepresentations and omissions forced Hansmeier to change his plea. Prosecutors' misrepresentations and omissions deceived the Court into believing that Hansmeier's copyright enforcement investigative methods were illegitimate. Once this deception was successful the die was cast. Hansmeier could not deny being associated with Olan Mills-style copyright enforcement claims. In addition, prosecutors' resort to misrepresentations and omissions with respect to prospective witnesses eliminated the pool of individuals who might have been willing to provide correct statements of copyright enforcement law to the Court. It is unrealistic to expect legal professionals to risk their careers and their liberty to provide correct statements of copyright law in the face of the threat of criminal prosecution---particularly after a federal judge has declared such methods to be a sham. If prosecutors had told the truth, then Hansmeier would have obviously gone to trial.

Fourth, prosecutors' misrepresentations and omissions resulted in United States Probation recommending a sentence in excess of what it would have recommended if prosecutors had been truthful and candid with the Court. Further, the Court was put in a position where it consciously or subconsciously believed it was Hansmeier's victim. Hansmeier ended up receiving a sentence in excess of what even the government requested at sentencing and which was at the very top of the inflated-through-deception recommended guideline range.

Fifth, prosecutors' misrepresentations and omissions deceived the Eighth Circuit into an affirmance. The Eighth Circuit specifically cited inaccurate facts that were offered by prosecutors during the appellate proceedings to support its affirmance. Had the Eighth Circuit been presented with accurate statements then it would have had no plausible basis to affirm---at least with respect to the first scheme.

Sixth, and finally, prosecutors' misrepresentations and omissions deprived Hansmeier of the effective assistance of counsel. The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. Counsel cannot perform their duties effectively when their opposing counsel is resorting to the use of material misstatements and omissions. Hansmeier's counsel, while certainly aware that prosecutors would advocate their position zealously, had no reason to know or believe that prosecutors would go so far beyond the line of zealous advocacy via their use of material misrepresentations and omissions. Prosecutors' misrepresentations and omissions adversely affected Hansmeier's counsel's ability to provide effective assistance.

   B. Other Prejudice.

Prosecutors' resort to misstatements and omissions to secure Hansmeier's conviction resulted in other prejudice.

   1. Loss of Public Confidence in the Courts.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------

The theory of fraud advanced by prosecutors in this case is that a person commits fraud if they use material misrepresentations and omissions to persuade a court to rule in their favor and obtains money as a result. This is precisely what prosecutors did in this case; they used the misrepresentations and omissions documented in this claim to gain a conviction and a significant restitution award against Hansmeier. The public's confidence in the criminal justice system would be shaken if prosecutors can resort to misconduct or even conduct that falls within the scope of the federal mail fraud and wire fraud statutes to obtain convictions.

    2. Prejudice to Third Parties.

Third parties have relied on prosecutors' erroneous understanding of copyright law to their detriment, resulting in economic injury. In Harrington v. Aerogelic Ballooning, LLC, No. 18-cv-2023 (D. Colo.), a hot air ballooning company used a photographer's photograph on its website without permission. The photographer sued for copyright infringement and the hot air ballooning company defended against the claim specifically referencing Hansmeier's criminal case and the theories of copyright enforcement offered by prosecutors in this case. In arguments that read like the indictment in this case, the hot air ballooning company accused the photographer of being a "copyright troll litigation mill." The hot air ballooning company accused the photographer of posting his photographs on his website with loose security controls with the intent of entrapping people into copying and using his photographs so that he can file suit against them. The hot air ballooning company suggested that by placing his photographs on the internet, the photographer had authorized third parties to copy them.

In a series of opinions that read how this Court's opinions might have read but for prosecutors' misstatements, the district court tore the hot air ballooning company and its counsel limb from limb. The district court labeled the hot air ballooning company's defense strategy as an odious form of victim blaming. The district court called the defendant's arguments "frivolous" and "legally unsupported." The district court accused the defendant's counsel of failing to grasp the "fundamentals of copyright law" and provided remedial instructions in the area.

Third parties who rely on the prosecutors' misstatements and omissions are bogging down the courts with frivolous and legally unsupported defenses that fail to grasp the fundamentals of copyright law, according to at least one federal district court judge.

    3. Prejudice to the Courts.

The prosecutors' successful use of material misrepresentations and omissions to suddenly criminalize standard litigation models poses a significant risk to those who would access the U.S. District Court for the District of Minnesota to resolve a claim.

Future copyright holders with Olan Mills-style copyright enforcement claims would be ill advised to proceed on such claims without first filing preemptive "as applied" Constitutional challenges to the federal fraud and extortion statutes. This will turn every copyright enforcement action into two cases. One case becomes two, which will burden the Court's scarce resources.

This issue is not limited to copyright enforcement claims. In the course of Hansmeier's criminal matter, prosecutors threatened Hansmeier with charges arising from Hansmeier's participation in Americans With Disabilities Act enforcement matters. Prosecutors were prepared to allege that Hansmeier's association with so-called "serial" litigants yielded meritless claims. Prosecutors' understanding of Americans with Disabilities Act litigation was just as wanting as their understanding of the law of copyright enforcement; the attacks they were prepared to raise against Hansmeier's clients' Americans With Disabilities Act claims had been heard and rejected by federal courts nationwide. But someone who wants to be associated with this type of claim would be ill advised to proceed on such claims in the District of Minnesota without first filing preemptive "as applied" Constitutional challenges to the federal fraud and extortion statutes. This will turn every Americans With Disabilities Act enforcement action into two cases. One case becomes two, which will burden the Court's scare resources.

There is no obvious limiting principle to prosecutors' ability to criminalize unwanted claims. From the perspective of a risk adverse plaintiff, it is difficult to see how one can safely proceed with claims in the District of Minnesota without first establishing safety via "as applied" Constitutional challenges.

This is not a theoretical problem. Hansmeier has already started to proceed with the "as applied" challenges described above. The limited number of straightforward claims Hansmeier has brought has already generated "sprawling" litigation, in the words of the presiding judge. While Hansmeier expects these claims to become more efficient as judicial decisions provide clarity, the claims would not be necessary but for prosecutors' resort to material misstatements and omissions to criminalize standard litigation models.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

IV. Conclusion.

Prosecutors resorted to material misstatements and omissions to obtain a conviction in this case. In doing so, prosecutors violated Hansmeier's rights under the Fifth and Sixth Amendments, converted this Court into a victim, and otherwise prevented the judicial machinery from functioning in this case. Prosecutors' actions rise to the level of fraud and thus rendered these proceedings a nullity. The Court is constrained to vacate the judgment and Hansmeier's change of plea and dismiss the indictment. The Court's dismissal should be with prejudice to reflect the seriousness of prosecutors' misconduct.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 11 - APPEARANCE OF PARTIALITY
DATE: 12/15/2021 06:41:46 AM

CLAIM 11 - As a Victim or Affected Party and Material Witness to Hansmeier's First Scheme, the Court Should Not Have Presided Over This Case.

Criminal defendants have an absolute and non-waivable Constitutional right to an impartial judge. This principle is so important that judges have an affirmative duty to recuse themselves whenever their partiality might reasonably be questioned. Whenever an partial judge presides over a matter, all of the judge's actions are void and subject to a "do over" in front of a neutral judge.

I. According to the Indictment, Hansmeier Made Material Misrepresentations and Omissions to the Court to Gain Favorable Orders in Connection With the First Scheme Alleged in the Indictment.

The Court presided over the matters of AF Holdings, LLC v. John Doe, Nos. 12-cv-1441, 12-cv-1442, 12-cv-1443, 12-cv-1444 and 12-cv-1445 (D. Minn.). These are cases described in the first scheme alleged in the indictment. AF Holdings, LLC is one of the companies described as a "sham" entity in the indictment. The investigative method was the "uploading" or Olan Mills investigative method described in the indictment. In those cases, Hansmeier's complaint alleged that the defendants' copying was done without authorization. The early discovery motion that the Court granted did not disclose the copyright holder's investigative method and it did not contain financial disclosures. According to the indictment, the foregoing activity constituted fraud and the Court was the victim of that fraud---or, at a minimum, the party who was deceived in furtherance of the fraud.

II. The Court Would Reasonably be Perceived as a Victim of the First Scheme Alleged in the Indictment.

Hansmeier's counsel provided the Court with a letter alerting the Court to the likelihood of its need to recuse. It is difficult to imagine that the Court could have been free of either conscious or unconscious bias in this matter in light of the incendiary allegations in the indictment. Even if the Court managed the super human feat of acting above bias, it remains the case that an ordinary observer would reasonably question the Court's impartiality under the circumstances.

III. Even if the Court Was Not a Victim, it Was Nevertheless a Material Witness to the First Scheme and Would Have Been Called as a Witness at Trial.

Even if the Court were not a victim or affected party, the Court was nevertheless a material witness to Hansmeier's scheme by virtue of its status as a judge who presided over the matters identified above. Prosecutors were prepared to call two federal district court judges and one federal magistrate judge as witnesses to testify against Hansmeier. The Court could have expected to be called as a witness by Hansmeier or perhaps even the prosecutors at trial, given the overlap between the issues that arose in those matters and the issues at the heart of prosecutors' theory of fraud. Judges should not preside over matters in which they have material knowledge or might be called as witnesses.

IV. Prejudice.

The Court's participation in these proceedings violated Hansmeier's Constitutional right to an impartial judge. The Court is constrained to vacate its judgment and Hansmeier's change of plea.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: *CLAIM 12 - INEFFECTIVE ASSISTANCE OF COUNSEL
DATE: 12/16/2021 08:13:19 AM

Claim 12 - Prosecutors' Material Misstatements and Omissions Constructively Denied Hansmeier the Assistance of Counsel.

The Sixth Amendment entitles criminal defendants to the effective assistance of counsel. Counsel cannot perform their professional duties when prosecutors resort to material misstatements and omissions and other litigation misconduct. Here, prosecutors resorted to material misrepresentations and omissions to obtain Hansmeier's conviction. Hansmeier was thus deprived of the effective assistance of counsel in a manner that prejudiced Hansmeier. The Court should vacate the judgment and Hansmeier's change of plea.

I. The Sixth Amendment Entitles Criminal Defendants the Effective Assistance of Counsel.

The Sixth Amendment entitles criminal defendant the effective assistance of counsel. Criminal defendants can be constructively denied the effective assistance of counsel under certain circumstances.

II. Prosecutors' Material Misstatements and Omissions Denied Hansmeier the Effective Assistance of Counsel.

Prosecutors' material misstatements and omissions denied Hansmeier the effective assistance of counsel. This is true for several reasons.

First, prosecutors misled Hansmeier's counsel regarding the law of copyright enforcement. Prosecutors made unhedged and false pronouncements that a copyright holder authorizes copying of their works when they have an undercover investigator make those works available to suspected infringers and that Hansmeier's copyright claims were thus meritless. While Hansmeier's counsel would reasonably expect prosecutors to zealously advocate for their position, Hansmeier's counsel would not expect prosecutors---who, as attorneys, are officers of the Court---to simply fabricate copyright law. For some period of time, Hansmeier's counsel were unaware that prosecutors were fabricating copyright law in pursuit of their conviction. While under such an impression, they could not have provided Hansmeier with effective assistance.

Second, prosecutors' failure to correct their false statements of law required Hansmeier's counsel to devote scare briefing resources towards providing prosecutors and the Court with remedial instructions regarding the law of copyright enforcement--- much as the district court judge in Harrington had to provide remedial instructions regarding the law of copyright enforcement to the defendant and its counsel. Time, briefing space and other resources were spent towards unwinding prosecutors' misstatements and omissions instead of advancing relevant arguments in attacking charges that would have been dismissed but for prosecutors' misdeeds. This was true at the district court level and on appeal.

Third, once it became clear that the prosecutors' deception was successful, there was nothing Hansmeier's counsel could do but advise Hansmeier to plead guilty to charges he was innocent of. The Court was wrongfully persuaded that it was a sham for Hansmeier to assert Olan Mills-style copyright enforcement claims---even though this idea would be repugnant to other jurists, including the district court judge in Harrington and the dozens (if not hundreds) of district court judges that have rejected authorization defenses arising from a copyright holder's use of an investigator. If prosecutors had been honest, then the fraud charges would have been dismissed at least with respect to the Olan Mills-style claims and prosecutors' invented authorization defense. To the extent that the "hacking" claims survived Hansmeier's motion to dismiss, then Hansmeier would have gone to trial and addressed prosecutors' mistaken understanding regarding these claims.

Fourth, prosecutors' theory of fraud created a conflict of interest between Hansmeier and his counsel. The centerpiece of prosecutors' first scheme was that Hansmeier, as an attorney, committed fraud by alleging that defendants to his claims had downloaded copyrighted works "without authorization." This theory of fraud forced Hansmeier's counsel into a position where they had two choices: (1) resist the prosecutors' misapprehension of the law of copyright enforcement and face fraud charges of their own; or (2) bypass such arguments or pursue such arguments less zealously than they might have in the absence of a conflict.

III. Prejudice.

Prosecutors' material misstatements and omissions constructively denied Hansmeier the effective assistance of counsel in violation of Hansmeier's Fifth and Sixth Amendment rights. Absent prosecutors' material misstatements and omissions, Hansmeier would not have pled guilty and would have proceeded to trial on any charge that survived Hansmeier's motion to

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

dismiss. The Court should vacate its judgment and Hansmeier's change of plea.