UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-334(1) (JNE/KMM)

UNITED STATES OF AMERICA,

            Plaintiff,

    v.

PAUL R. HANSMEIER,

            Defendant.

**GOVERNMENT'S RESPONSE TO
HANSMEIER'S SECTION 2255
MOTION (ECF NOS. 209 AND 210)**

The United States of America, by and through its undersigned attorneys, respectfully submits its Response to Hansmeier's Section 2255 Motion (ECF Nos. 209 and 210) in the above-captioned case.

## BACKGROUND RELEVANT TO HANSMEIER'S SECTION 2255 MOTION

**The Indictment**.  The Indictment filed on December 14, 2016 charged Hansmeier in 18 counts, including one count of conspiracy with his codefendant, John Steele (and others), to commit mail and wire fraud (Count 1), five counts of mail fraud, ten counts of wire fraud, one count of conspiracy to commit money laundering (Count 17), and one count of conspiracy to commit and suborn perjury.  ECF No. 1.

Count 1 of the Indictment alleged a conspiracy in which Hansmeier uploaded pornographic movies to file-sharing websites, obtained the IP addresses of individuals who downloaded the movies, tricked courts into granting Hansmeier subpoena authority to discover, from internet service providers, the identity of the individuals, and then sought "settlement payments" from the individuals, purportedly in return for not suing them for

copyright infringement and, in the process, publicly outing them as pornography downloaders.  Indictment paragraphs 8-28.

When Courts became reluctant to grant Hansmeier the subpoena authority he needed to identify his victims, Hansmeier began filing lawsuits falsely alleging that the downloaders had hacked into the computer system of one of his purported companies. Indictment paragraphs 29-31.

Finally, when the Courts detected Hansmeier's scheme and sought to sanction him, Hansmeier falsely denied his conduct, and falsely denied any association with the entities through which the fraud scheme was accomplished.  Indictment paragraph 32.

Count 1 of the Indictment is richly detailed.  For purposes of the arguments asserted in Hansmeier's Section 2255 motion, the following details are important:

1. Hansmeier used sham entities (principally, AF Holdings and Ingenuity 13) he and Steele created, owned, and controlled to pose as the copyright plaintiffs in the myriad copyright infringement lawsuits he filed throughout the country. Hansmeier concealed his ownership of these entities through the use of nominees. Indictment paragraphs 13 and 26.

2. Hansmeier brought most of the copyright infringement suits through Prenda Law, a firm he owned and controlled, but which was owned by a nominee. Indictment paragraph 9.

3. Hansmeier uploaded the pornographic movies to the Pirate Bay to lure people into downloading movies.  Indictment paragraph 17.

4. Hansmeier himself shot many of the pornographic movies he uploaded to the Pirate Bay.  Hansmeier did not publicly distribute or commercially release the movies he created.  Their sole purposes was to attract downloaders.  Indictment paragraph 27.

5. Hansmeier captured the IP address of the lured downloaders.   Indictment paragraph 18.

6. Hansmeier then filed copyright infringement suits in federal and state courts against "John Doe" defendants, alleging that they had downloaded the copyrighted pornographic content "without authorization." Hansmeier filed these suits to obtain court authority to serve subpoenas on the ISPs associated with the captured IP addresses to identify individuals from whom to demand settlements. Indictment paragraph 18.

7. Hansmeier concealed from the courts from which he sought subpoena authority that he had uploaded the pornographic content himself in order to lure downloaders, and that he and Steele, not the fake owners of AF Holdings or Ingenuity 13, were the real plaintiffs in the actions. Indictment paragraph 23.

8. Hansmeier did not intend to follow through with any of the filed copyright infringement cases by actually suing the downloaders. Instead, Hansmeier dismissed the lawsuits against downloaders who did not readily settle: "When [the individual downloaders] did fight back, the defendants dismissed the lawsuits rather than risk their scheme being unearthed." Indictment paragraph 17.

9. The downloaders who chose to settle, fearing the apparent prospect of damages and public embarrassment, and not knowing that Hansmeier had no intention to actually sue them if they did not settle with Hansmeier, lost $6 million to Hansmeier's scheme. Indictment paragraph 34.

10. When the Courts began denying Hansmeier's early discovery requests, Hansmeier pivoted to falsely claiming that the downloaders had hacked into nonexistent computer systems, and sought early discovery on that basis. Indictment paragraphs 29-31.

11. When the Courts sought to sanction Hansmeier, Hansmeier committed and suborned perjury in order falsely to deny being the principal behind AF Holdings, Ingenuity 13, Prenda Law, or the mastermind of the massive fraud scheme. Indictment paragraph 32.

**Hansmeier's Motion to Dismiss.** On April 24, 2017, Hansmeier filed a Motion to Dismiss, and a 64-page Memorandum of Law in Support of Motion to Dismiss. ECF Nos. 48 and 49. Hansmeier's motion sought the pretrial dismissal of all counts in the Indictment, except for Count 18, which charged a conspiracy to commit and suborn perjury. In general, Hansmeier argued that the Indictment did not allege a crime, but

merely an aggressive approach to unpopular copyright litigation.  Hansmeier analyzed each step described in the Indictment, argued that each step was legal, and therefore that the totality of those steps could not have amounted to a fraud scheme.

Hansmeier also argued that the Indictment was unconstitutional.  ECF No. 49, p. 7.  Hansmeier argued that the Indictment impermissibly sought to criminalize civil litigation activities, in violation of, among other things, the Petition Clause of the First Amendment.  ECF No. 49, p. 7.  Hansmeier argued that the Indictment violated the constitutional "separation of powers amongst coordinate branches of the federal government."  ECF No. 49, pp. 31 and 62.

Hansmeier also argued that the Indictment was based upon a misunderstanding of both copyright law, and the law of mail and wire fraud.  Hansmeier argued that uploading copyrighted content to sites like the Pirate Bay is legal, and cannot, therefore, be alleged as part of a mail fraud scheme.  ECF No. 49, p. 44.   Hansmeier argued that the Indictment failed to establish that any misrepresentation made by Hansmeier was "material" or that his misrepresentations impermissibly cheated the downloaders of anything.  Hansmeier argued that inducing the Courts to grant him subpoena authority did not violate the mail and wire fraud statutes because subpoena authority is not "property" within the meaning of *Cleveland v. United States.*  ECF No. 49, p. 33.

Finally, Hansmeier cited *United States v. Pendergraft* and *I.S. Joseph Co v. Lauritzen A/S* to argue that "civil litigation activities can [never] generate liability under federal criminal fraud or analogous statutes."  ECF No. 35.  In this vein, Hansmeier argued that he had no duty to disclose to the courts from which he sought subpoena

authority his stake in the underlying copyright litigation, and that any fraud he may have committed against any court was properly addressable through civil sanctions, not criminal prosecution.

**The R & R.**  On July 24, 2017, in a well-reasoned R & R, the (then) magistrate judge rejected every argument Hansmeier made that the Indictment failed to state an offense or is otherwise illegal,  embraced a misapprehension of copyright law, or sought improperly to criminalize civil litigation activities.  ECF No. 66.

First, the magistrate judge emphasized that indictments generally, and fraud indictments particularly, must be "read in their totality."  She reasoned that the Indictment in this case – which alleges "an overarching scheme to defraud" whose constituent parts included i) uploading pornographic movies to the Pirate Bay, ii) *concealing* the uploading activities from both the Courts and the downloaders, iii) using sham plaintiffs to conceal from the courts and the downloaders that Hansmeier and Steele were the copyright plaintiffs, iv) using the nominee-owned "Prenda Law" to bring file the John Doe lawsuits, v) misrepresenting to the downloaders that Hansmeier would sue them if they did not settle, vi) resorting to fabricated "hacking" allegations, and the use of "strawman defendants," when the Courts became reluctant to grant subpoena authority, and vii) then lying and causing others to lie to those Courts when the sought to sanction Hansmeier – stated an offense under the mail and wire fraud statutes.  R & R at 3 – 7.

Second, the magistrate judge rejected Hansmeier's argument that civil litigation activities cannot form the basis of criminal fraud charges.  The magistrate judge's discussion of *I.S. Joseph*, *Pendergraft*, and a third case called *United States v. Eisen*, 974

F.2d 246 (2ⁿᵈ Cir. 1992), firmly supports her conclusion that "these decisions demonstrate that civil litigation activities can give rise to criminal charges." R & R at 7 – 9.

Finally, the magistrate judge rejected Hansmeier's materiality arguments, noting that Hansmeier's argument that a "lie or material omission to one party that induces another party to part with her money or property" flies in the face of established Eighth Circuit precedent. R & R at 12.

**This Court's Adoption of the R & R**.  On September 8, 2017, this Court issued an order adopting the Report and Recommendation and overruling Hansmeier's objections to it. ECF No. 76.  However, this Court supplemented the R & R with its own discussion rejecting Hansmeier's argument that the Indictment in this case is unconstitutional under the Petition Clause of the First Amendment.  This Court noted that the Noerr-Pennington doctrine has never been applied in a criminal case[1] and noted, even before Hansmeier's plea, that "the Court might find that the alleged activities place Hansmeier's civil litigation efforts under the sham exception to that doctrine." ECF No. 76, p. 5.

**Hansmeier's Plea Agreement and Plea Hearing**.  On August 17, 2018, Hansmeier pled guilty to Counts 1 and 17 of the Indictment (charging the fraud conspiracy and a money laundering conspiracy, respectively).  Hansmeier conditioned his plea on the right to appeal "this court's denial of his Motion to Dismiss [Docket nos. 66,

---

[1] The Noerr-Pennington doctrine was held not to apply in a federal criminal extortion case in 2021 by the Ninth Circuit in the *Koziol* discussed below.

76].”  Plea Agreement and Sentencing Stipulations, ECF No. 103, at p. 2.  Put differently,
Hansmeier's plea agreement permitted him, on appeal, to attack the Indictment on any
ground that would invalidate it and require its dismissal.

In his plea agreement, Hansmeier stipulated that he caused a person named "P.H."
to upload pornographic movies to the Pirate Bay, knowing that the Pirate Bay's purpose
is to facilitate copyright infringement.  Hansmeier also stipulated that he utilized the
nominee-owned Prenda Law to bring the subsequent copyright suits, and that he utilized
entities he surreptitiously controlled to act as the purported copyright plaintiffs in those
suits.  ECF No. 103, pp. 4-5.  With respect to these facts, Hansmeier also stipulated:

> In each of these lawsuits and accompanying *ex parte* motions for early discovery,
> HANSMEIER and Steele concealed from the court that they: (a) uploaded their
> clients' movies to BitTorrent websites, (b) filmed their own pornographic movies
> in order to upload them to BitTorrent websites, and (c) owned and controlled the
> plaintiffs and thus had a significant person stake in the litigation.  HANSMEIER
> and Steele knew that these facts were material to the courts' decisions whether to
> permit early discovery.

*Id.* at 5.  Hansmeier also stipulated that the hacking allegations in the Indictment were
true.  *Id.* at 5-6.

At his change of plea hearing, Hansmeier affirmed his stipulations under oath.
The following is a partial colloquy between the prosecutor, Hansmeier, and this Court:

> Mr. MacLaughlin:  In fact it says here [in the plea agreement] that on three
> separate occasions in Chicago, Miami and Las Vegas, you guys sort of hired
> people to be in these movies so you could shoot them, right?
>
> Hansmeier:  Yes.
>
> Mr. MacLaughlin:  And then you have those movies as well put up on Pirate Bay
> and similar sites; is that true?

Hansmeier:  Yes.

Mr. MacLaughlin:  All right.  So even after that, you continue to bring lawsuits, including based on movies that you guys had shot, right?

Hansmeier:  Yes.

Mr. MacLaughlin:  And you continued to allege –

The Court:  That's you and Mr. Steele, right?

Hansmeier: Correct.

Mr. Hansmeier, you continued to allege in the complaints that the people downloading these movies were downloading them without authorization or consent of the copyright holder, right?

Hansmeier:  Yes.

Mr. MacLaughlin:  Even though in a sense the copyright holder was you, and you and Mr. Steele and your brother had uploaded the content to be stolen, right?

Hansmeier:  Yes.

Mr. MacLaughlin:  Okay.  So I think sort of the bottom line on the BitTorrent piece of this case is on page 5.  I'm going to read it into the record and make sure you agree with this.
        One more step.  You would file the complaint, and then you would file a motion for early discovery, right?

Hansmeier:  Yes.

Mr. MacLaughlin:  You would tell the judge, as you have all along:  We've got this complaint.  It's against John Does, but we don't know who the John Does are.

Hansmeier:  Yes.

Mr. MacLaughlin:  And so we're giving you a motion to give us the authority to do early discovery, and it says here [in the plea agreement]:  In each of the lawsuits and the accompanying ex parte motions for early discovery, Hansmeier and Steele concealed from the Court that they, A, uploaded their clients' movies to BitTorrent websites; B, filmed their own pornographic movies in order to upload

them to BitTorrent websites; and C, that you guys really surreptitiously controlled the plaintiffs and had a significant personal stake in the litigation.

You did conceal those things from the courts, both in the complaints and in the motions for early discovery?

Hansmeier:  Yes.

Mr. MacLaughlin:  And it says here you guys both knew that these facts were material to the courts' decisions whether to permit early discovery, and you did know that, right?

Hansmeier:  Yes.

Plea Transcript at 25-27.  Hansmeier also admitted that the hacking allegations were entirely fabricated in order to continue the scheme, and admitted using what the magistrate judge called "strawman defendants" to make the hacking allegations work.  *Id.* at 28-29.

**Hansmeier's Sentence and Notice of Appeal**.  On June 17, 2019, this Court sentenced Hansmeier to 168 months' imprisonment, and ordered him to pay $1,541,527 in restitution.  ECF No. 135 and 136.  Hansmeier filed his Notice of Appeal with the clerk of this Court on June 26, 2019.  ECF No. 149.

**Hansmeier's Appeal**.  On October 15, 2019, Hansmeier, through Andrew Mohring, filed a 63-page brief with the Eighth Circuit (79 pages including the prefatory sections), reasserting his arguments that the Indictment should be dismissed.  Appellate Case 19-2386, Entry ID 4841473 ("Hansmeier's Brief").  In another attempt to separately analyze each act described in the Indictment, Hansmeier likened the allegations in count 1 of the Indictment to a 3-legged stool.

The first leg was the Indictment's purported implicit assertion that "a copyright holder mustn't upload digitized files containing her copyright-protect works to a computer

9

file-sharing network, with the goal of monitoring and identifying persons who download those same files so as to bring civil enforcement actions."  Hansmeier's Brief at 30-31. Citing *Olan Mills*, and similar cases, Hansmeier argued that the first leg of the government's theory violated substantive copyright enforcement law.

The second leg was the Indictment's assertion that Hansmeier's lies to the Courts were material to the fraud scheme.  Citing *Cleveland v. United States,* 531 U.S. 12 (2000), Hansmeier argued that Hansmeier's deception of the Courts was merely to obtain subpoena authority, which "is a regulatory power in the hands of governmental officials, not economic 'money or property' as required to state an offense under the mail-wire fraud statutes."  Hansmeier's Brief at 44.

The third leg was the Indictment's purported assertion that the settlement proposal letters sent to the downloaders were fraudulent.  Hansmeier argued that the settlement letters contained nothing but true statements. The downloaders really were guilty of downloading the seeded pornography and really did face the possibility of damages under the Copyright Act, and the letters thus validly induced them to write "a check for a non-trivial sum rather than risk ongoing civil litigation."  Hansmeier's Brief at 54.  Hansmeier reasserted his argument that a "civil litigation activity" like sending a demand letter to a downloader could not form the basis of a criminal fraud prosecution.  Hansmeier's Brief at 57-58.

**The Eighth Circuit Opinion**.  On February 10, 2021, the Eighth Circuit filed its published, *de novo* opinion affirming this Court's denial of Hansmeier's motion to dismiss the Indictment.  *United States v. Hansmeier,* 988 F.3d 428 (8th Cir. 2021).

The Eighth Circuit held that Hansmeier and Steele had concealed from the courts from which he sought subpoena authority "(1) that they directed agents to make the copyrighted works available on websites known for illegal downloading; and (2) that the clients were in fact companies that Hansmeier and Steele set up in order to personally profit from anticipated settlements. On its face, this alleged conduct meets the elements required for a fraudulent scheme." *Id.* at 437.

The Eighth Circuit further held that the concealment of these facts from the Courts was material:

> The information they misrepresented was also material. Had the courts known that Hansmeier and Steele intentionally posted the films on websites used for illegal file sharing or that the two men were in fact the personal beneficiaries of their "'clients'" copyright claims, they would have treated the subpoena requests with far greater skepticism . . . That Hansmeier and Steele created multiple organizations under the names of their associates in order to pursue litigation, rather than naming themselves as the copyright holders, itself suggests they knew how relevant the courts would find this information.

*Id.* In so holding, the Eighth Circuit reaffirmed its prior precedent that mail and wire fraud liability encompasses lies to one party (such as the courts) in order to get money or property from another party (the downloaders), rejecting Hansmeier's *Cleveland*-based argument:

> Finally, though fraud necessarily involves misrepresentations made with the "object" of obtaining money or property from victims, it is not the case that the victims targeted must be the direct recipients of the materially deceptive statement or concealment . . . Rather, we have held that the misrepresentations may be made to third parties, where the third parties are used to further the scheme to defraud the ultimate victims.

*Id.*

The Eighth Circuit summarized its rejection of Hansmeier's arguments thusly:

11

> Putting the different elements together, the indictment alleges that Hansmeier and Steele (1) developed and executed a plan that depended on them (2) deliberately concealing material information from the courts, (3) with the purpose of convincing those courts to grant their discovery requests and (4) with the ultimate object of obtaining settlement payments from alleged infringers they identified through those discovery requests. This conduct meets the elements of criminal fraud.

*Id.* at 438.

The Eighth Circuit rejected Hansmeier's three-legged stool analogy, which is really a reiteration of his rejected admonition to this Court not to view the indictment as a whole, but as a series of unrelated constituent parts: "There is no authority suggesting the courts should approach fraud charges in this fragmented matter." *Id.* at 438-39, n. 5.

Finally, and contrary to Hansmeier's assertion in his Section 2255 motion, the Eighth Circuit nowhere holds that count 1 of theIindictment alleges separate conspiracies, or that Hansmeier's fictitious hacking claims, or the lies he told and suborned when the courts sought to sanction him, which dominated the last year of the scheme, should be analyzed separately from the fraudulent copyright lawsuits that dominated the first three years of the scheme.

**Hansmeier's Certiorari Petition is Denied**. On October 4, 2021, the Supreme Court denied Hansmeier's petition for a writ of certiorari. ECF No. 207. Hansmeier's Section 2255 motion, filed on December 27, 2021, is thus timely.

**Hansmeier's Section 2255 Motion**. Hansmeier's 34-page, single-spaced memorandum in support of his Section 2255 motion (ECF No. 210) ("Hansmeier Memo") largely reasserts the arguments he has already lost before this Court and the

Eighth Circuit.  They are therefore not cognizable under Section 2255.  To whatever extent they are cognizable in this proceeding, they are meritless.

Hansmeier's motion contains 12 "claims."  Hansmeier places those claims into 3 categories.

The category 1 claims, comprised of claims 1 through 5, posit that the government violated his Fifth and Sixth amendment rights by "persuad[ing] the Grand Jury to return an indictment that does not charge fraud."  Hansmeier Memo at 1.  In support of this category of claims, Hansmeier argues, as he has done repeatedly throughout this case, that (claim 1) he had "no intent to harm" because the downloaders got what they bargained for (Hansmeier Memo at 3-4); that (claim 2) his misrepresentations to the courts were not material to their decision whether to grant him subpoena authority (Hansmeier Memo at 5-7); that (claim 3) the object of the fraud scheme was not to obtain money or property in the hands of the downloaders (Hansmeier Memo at 8-9); and (claim 4) that civil litigation activities can never, as a matter of law, support a criminal fraud prosecution (Hansmeier Memo at 10-12).  He adds, in claim 5, that, since the Indictment failed to state an offense, and since the factual basis supporting his plea followed the indictment's "script," his guilty plea lacks a valid factual basis (Hansmeier Memo at 13).

The category 2 claims, comprised of claims 6 through 9, posit that the Indictment is unconstitutional.  Hansmeier argues in claim 6 that the Indictment violates his constitutional right to petition the government for redress of grievances under the Noerr-Pennington doctrine (Hansmeier Memo at 14-16).  He argues in claim 7 that this Indictment violates his First Amendment Right to engage in protected, expressive activity

(Hansmeier Memo at 17-19).  He argues in claim 8 that the mail and wire fraud statutes are void for vagueness under the due process clause of the Fifth Amendment (Hansmeier Memo at 20-21).  And he argues in claim 9 that the mail and wire fraud statutes violate the separation of powers among the branches of government (Hansmeier Memo at 22).

The category 3 claims, comprised of claims 10 through 12, allege "structural defects" in the proceedings both before this Court, and before the Eighth Circuit, which purportedly invalidate all of the proceedings which came before this Section 2255 motion.  In claim 10, Hansmeier argues that the government committed fraud upon grand jury, upon this Court, upon the Eighth Circuit, and upon potential government witnesses, by concealing the fact that Hansmeier's uploading of pornographic movies to the Pirate Bay, and use of "claim assertion entities" to punish ensnared infringers, is perfectly legal as a matter of Copyright Law under *Olan Mills* (Hansmeier Memo at 23-31).  In the closely related Claim 12, Hansmeier argues that the government's fraud "constructively" denied him the effective assistance of counsel.  Finally, in claim 11, Hansmeier argues that this Court should have *sua sponte* recused itself because it presided over some of the underlying copyright infringement cases, purportedly undermining its impartiality.

## TITLE 28, UNITED STATES CODE, SECTION 2255

Section 2255 provides, in relevant part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Section 2255 provides a limited opportunity to challenge the constitutionality, legality, or jurisdictional basis of a sentence imposed by the Court. *Embry v. Hershberger,* 131 F.3d 739, 740 (8th Cir. 1997). Such collateral relief is an extraordinary remedy and will not be allowed to do service for an appeal. *See Bousley v. United States,* 523 U.S. 614, 621 (1998) *and Fletcher v. United States*, 858 F.3d 501, 505 (8th Cir. 2017). "Relief under 28 U.S.C. Section 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel,* 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted). "A Section 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petition to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Sanders v. United States,* 341 F.2d 720, 722 (8th Cir. 2003) (citation and internal quotation marks omitted).

Three principles of Section 2255 cognizability in particular present fatal procedural blows to the claims raised in Hansmeier's Section 2255 motion.

First, Hansmeier raised most of the arguments he makes in his Section 2255 motion in his direct appeal. Prisoners cannot use Section 2255 to relitigate issues they lost on direct appeal. *Bear Stops v. United States,* 339 F.3d 777, 780 (8th Cir. 2003) ("'It is well settled that claims which were raised and decided on direct appeal cannot be

relitigated on a motion to vacate pursuant to 28 U.S.C. Section 2255'" (quoting *United*

*States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981)).

Second, to whatever extent Hansmeier now seeks to raise issues he could have

raised in his direct appeal, those claims are not cognizable:

> Relief under 28 U.S.C. Section 2255 is reserved for transgressions of
> constitutional rights and for a narrow range of injuries that could not have been
> raised on direct appeal and, if uncorrected, would result in a complete miscarriage
> of justice.  A movant may not raise constitutional issues for the first time on
> collateral review without establishing both cause for the procedural default and
> actual prejudice resulting from the error.

*Apfel*, 97 F.3d at 1076 (citations omitted).  *See also United States v. Moss,* 252 F.3d 993,

1001 (8th Cir. 2001) ("Because habeas relief is an extraordinary remedy which will not be

allowed to do service for an appeal, significant barriers exist in the path of a petitioner

who seeks to raise an argument collaterally which he failed to raise on direct appeal.").

Third, a challenge to the sufficiency of an indictment is not cognizable in a section

2255 action absent exceptional circumstances.  *See Shabazz,* 657 F.2d at 190; *Moore v.*

*United States,* 337 F.2d 350, 352 (8th Cir. 1964) ("absent exceptional circumstances, the

sufficiency of the indictment is not subject to collateral attack") and *Taylor v. United*

*States,* 332 F.2d 918, 919-20 (8th Cir. 1964) (same).

## THE OLAN MILLS CASE

Hansmeier's Section 2255 motion repeatedly cites *Olan Mills v. Linn Photo Co.,*

23 F.3d 1345 (8th Cir. 1994), in support of nearly every one of the twelve claims it

asserts.  Hansmeier laments that, had the United States Attorney simply understood the

*Olan Mills* case, the United States Attorney would have seen that Hansmeier's

methodology of having his "investigator" upload pornography to the Pirate Bay to catch downloaders is a perfectly valid method of enforcing copyrights. Instead, claims Hansmeier, the United States Attorney, not understanding *Olan Mills,* mistakenly concluded that Hansmeier's claims against the downloaders were "meritless," and then sought to criminalize those meritless claims.

Hansmeier needs to stop comparing his conduct in this case to the conduct of plaintiffs like Olan Mills because the comparison is ridiculous.

The plaintiff Olan Mills was a real business that operated more than 1,000 portrait studios throughout the United States. *Id.* at 1347. It became aware that the defendant, Linn Photo, which reproduced photographs, was copying Olan Mills' copyrighted photographs. Olan Mills thus "contacted Linn Photo and requested that Linn Photo cease this activity." *Id.* But Linn Photo did not cease copying Olan Mills' photographs.

Olan Mills thus hired an investigator to order reproductions from Linn Photo of photos which were clearly copyrighted by Olan Mills. Linn Photo filled the order, and Olan Mills brought suit. The district court "granted Linn Photo's motion for summary judgment on the ground that the investigator, as Olan Mills' agent, licensed the copying." *Id.* The Eighth Circuit reversed the grant of summary judgment, rejecting the district court's agency theory: "Olan Mills did not authorize the investigator to validate Linn Photo's unlawful conduct. Indeed, the investigator's assignment was part of Olan Mills' attempt to stop Linn Photo's infringement." *Id.* at 1348. The Eighth Circuit remanded for a determination of appropriate damages. *Id.* at 1349.

Hansmeier's reliance on *Olan Mills* and similar cases is completely misplaced.

First, the plaintiff in *Olan Mills* **disclosed** to the court and the defendant that it had used an investigator to catch Linn Photo infringing.  Its investigative methods were laid on the table, in open sunshine.  The same is true of all of the cases Hansmeier has cited, both in his Section 2255 motion and in his briefing to the Eighth Circuit.  In contrast, the gravamen of the charges against Hansmeier is that Hansmeier **concealed** his use of an "investigator" (his brother) to upload the pornography because, as he explicitly admitted under oath at his change-of-plea hearing, Hansmeier knew that the courts would be less likely to grant early discovery authority if they knew that Hansmeier uploaded the pornography to be stolen.

Second, the plaintiff in *Olan Mills* was a genuine going concern being damaged by Linn Photo's ongoing infringing activities.  Olan Mills genuinely wanted Linn Photo to stop damaging its business, and requested Linn Photo to cease its reproduction of Olan Mills' copyrighted photos.  Its lawsuit was brought only after Linn Photo refused to stop its infringing activities.

None of this is true of Hansmeier.  Hansmeier did not have an ongoing pornography business being damaged by downloaders.  The Indictment alleges that Hansmeier did not commercially distribute his pornographic movies.  Rather, their **only purpose** was to attract defendants from whom to seek "settlements."  Hansmeier utilized his brother to upload pornography because he **wanted** the downloading to occur. Hansmeier uploaded the pornography to create the opportunity for him to commit a

crime, not, as in *Olan Mills,* to prevent or stop ongoing wrongful conduct that was damaging an ongoing business.[2]

### GOVERNMENT'S RESPONSES TO HANSMEIER'S CLAIMS

For the reasons that follow, this Court should deny Hansmeier's Section 2255 motion without a hearing because his claims are contradicted by the record of this case. Further, none of his claims have any merit whatsoever.  No reasonable jurist would sustain any of them.  For that reason, the Court should decline to issue a certificate of appealability.

A.  Claims 1 through 5.  Hansmeier characterizes his claims 1 through 5 as Fifth and Sixth Amendment violations arising out of the government's having improperly persuaded the grand jury to "return an indictment that does not charge fraud; accepting the facts alleged in the indictment as true, all the indictment alleges is a scheme to assert copyright enforcement claims that leading copyright treatises describe as 'routine' and providing 'no defense,' which is not fraud."  Hansmeier Memo at 1.

Hansmeier urges the Court to analyze this argument by ignoring the hacking allegations contained in paragraph 29 through 31 of the Indictment.  "The Eighth Circuit

---

[2]Hansmeier's uploading of the pornography in this case brings to mind the Byron David Smith murder case from the Little Falls area.  In that case, Smith attracted intruders into his home so he could shoot them.  Smith moved his car out of the garage, and walked back to his house, entering it from the back which faced a river, rather than approaching the main entry of his house from the street, to make it look like he was not at home.  *Smith v. State*, 876 N.W. 2d 310, 317 (Minn. 2016).

Taking the bait, intruders came, and Smith killed them.  Thus, Hansmeier and Smith each encouraged their victims to do something illegal (copyright infringement and unlawful entry, respectively) in order to create the opportunity to commit a crime (fraud and murder, respectively).

took the approach of interpreting the indictment as alleging two schemes – one for the 'copyright trolling' claims and one for the 'hacker' claims." However, the Eighth Circuit nowhere suggests that Count 1 of the indictment charges two separate schemes. The magistrate judge cited extensive authority that fraud indictments must be read as a whole. This Court agreed: "The Court agrees with the Magistrate Judge's decision to view the allegations as a whole in evaluating the sufficiency of the Indictment." ECF No. 76. The Eighth Circuit also agreed. Rejecting Hansmeier's three-legged stool attack on the sufficiency of the Indictment, the Eighth Circuit noted:

> [T]here is no authority suggesting that courts should approach fraud charges in this fragmented manner. Indeed, such an approach would risk allowing more sophisticated fraudulent schemes, which may involve multiple, independently legal acts or falsehoods aimed at providing the perpetrators with legal or regulatory authority to pursue their victims, to go unchecked.

*Hansmeier,* 988 F.3d at 438-9, n. 5. The Court should once again reject Hansmeier's purely tactical argument to view and analyze the allegations in the Indictment separately.

The government now turns to claims 1 through 5 individually.

1.    <u>Claim 1</u>. Hansmeier argues in claim 1 that the Indictment is deficient for failing to "establish" an "intent to harm," a requirement, he argues, of *United States v. Jain,* 93 F.3d 436 (8th Cir. 1987). The downloaders, Hansmeier argues, got what they bargained for and thus could not have been harmed. This argument fails upon procedural grounds and, should they be reached, on the merits.

First, this argument is an attack on the sufficiency of the Indictment, brought in a Section 2255 motion. It is not cognizable, absent exceptional circumstances. None are present here.

Second, this argument is not cognizable because it was raised and lost on appeal. The Eighth Circuit held that the Indictment properly and sufficiently charged a fraud scheme "with the ultimate object of obtaining settlement payments from alleged infringers they identified through [the] discovery requests." Hansmeier cannot relitigate this issue in a Section 2255 motion.

Third, this argument fails on the merits.

First, the Indictment alleges that the downloaders did not get what they paid for. Hansmeier concealed from his victims that, if they fought back, Hansmeier and Steele [would] "dismiss[] the lawsuits rather than risk their scheme being unearthed." Indictment Paragraph 17. The victims who paid settlements therefore got nothing but extorted.

Second, *Jain* does not support Hansmeier's argument. Jain was a psychologist who improperly referred patients to a psychiatric hospital in return for an illegal kickback. Those patients were well cared for. A jury convicted Jain of substantive violations of the mail fraud statute. The Eighth Circuit reversed the substantive mail fraud convictions because the government had proved neither that the patients had suffered tangible harm, or that the defendant intended to defraud those patients:

> Essential to a scheme to defraud is fraudulent intent . . . The scheme to defraud need not have been successful or complete. Therefore the victims of the scheme need not have been injured. However, the government must show that some actual harm or injury was *contemplated* by the schemer.

*Jain,* 93 F.3d at 441.

In contrast, the Indictment alleges that Hansmeier contemplated injury to, and in fact inflicted injury upon, the downloaders. The downloaders paid Hansmeier $6 million (Indictment paragraph 34) because Hansmeier ***falsely represented*** to them that they would be sued, made to pay huge damages, and publicly outed as pornography downloaders, if they did not. The downloaders did not know they would not be sued even if they did not settle. Indictment paragraph 17. The downloaders got nothing for their money. *Jain* does not help Hansmeier.

2.      <u>Claim 2</u>. Hansmeier argues in claim 2 that the Indictment "fails to establish materiality." The argument is that the courts would have granted subpoena authority even if they had known that Hansmeier uploaded his own pornography to the Pirate Bay, and that Hansmeier owned AF Holdings and Ingenuity 13.

This claim fails procedurally. It is a noncognizable attack on the sufficiency of the Indictment, and it is an attempt to relitigate issues decided against Hansmeier by the Eighth Circuit. "Had the courts known that Hansmeier and Steele intentionally posted the films on websites used for illegal file sharing or that the two men were in fact the personal beneficiaries of the 'clients'' copyright claims, they would have treated the subpoena requests with far greater skepticism." *Hansmeier*, 988 F.3d at 437.

Finally, the claim fails because it is conclusively contradicted and belied by the factual stipulations in Hansmeier's plea agreement (*see* ECF No. 103, p. 5, last sentence of carry-over paragraph) and by Hansmeier's testimony under oath at his plea hearing:

> Q:  And it says here you guys both knew these facts were material to the courts' decisions whether to permit early discovery, and you did know that, right?
> Hansmeier:  Yes.

Hansmeier's "claim 2" is thus noncognizable, meritless, and flatly contradicted by the record in this case.[3]

Claim 3.  In claim 3, Hansmeier argues that the Indictment fails to establish that the object of Hansmeier's fraud was money in the hands of the victim.  This claim is not cognizable for the same reasons claims 1 and 2 are not cognizable.

First, as to cognizability, the Eighth Circuit held that the object of the fraud conspiracy in this case was to "obtain settlement payments from the alleged infringers." *Hansmeier,* 988 F.3d at 437. The Eighth Circuit held that lying to the courts with the ultimate goal of obtaining settlements from the downloaders makes out a scheme to defraud under *United States v. Blumeyer,* 114  F.3d 758 (8th Cir. 1997).  *Id.*  In other words, the Eighth Circuit held that the object of Hansmeier's scheme was to obtain money in the hands of the victims.  Hansmeier cannot relitigate that conclusion here.

Second, as to the merits, the Eighth Circuit is correct.  Hansmeier cites *Cleveland v. United States,* 531 U.S. 12 (2000), which held that false statements made to obtain permission from a state to operate video poker machines was not a scheme to obtain money or property.  Hansmeier Memo at 8.  That case has no application to Hansmeier's scheme. Hansmeier did not obtain subpoena authority from the courts in this case as an end unto itself.  Rather, the subpoena authority he sought merely provided a bridge he needed to

---

[3] Hansmeier's materiality argument is partially based on his assertion that what he did it legal under *Olan Mills.*  That assertion is untenable, as discussed above.

cross to identify downloaders to obtain their money and property, which was the object of Hansmeier's scheme.

Claim 4.   In claim 4, Hansmeier argues once again that "litigation is not fraud." Hansmeier raised this issue in his motion to dismiss.   The magistrate judge devoted 3 single-spaced pages of her R & R to rejecting this argument.   ECF No. 66, pp. 7-9.   She noted that the principal Eighth Circuit case cited by Hansmeier, *I. S. Joseph Co v. Lauritzen A/S,* 751 F.2d 265 (8th Cir. 1984), held only that the mere threat of civil litigation does not constitute extortion for civil RICO purposes, not "the much broader proposition that civil litigation activities can never form the basis of a criminal indictment." *Id.* at 8-9.   The magistrate judge also noted that the Second Circuit, in *United States v. Eisen,* 974 F.2d 246, 253-54 (2nd Cir. 1992), "squarely held that civil litigation tactics, many of which are attributed to Mr. Hansmeier, can give rise to fraud allegations." R & R at 8.

This Court agreed with and adopted the magistrate judge's reasoning: "The Magistrate Judge correctly rejected Hansmeier's broader argument that a criminal prosecution may not be based on civil litigation activity."   ECF No. 76. p. 4.

Hansmeier raised this issue on appeal.   In a section called "Criminalization of civil litigation" appearing at Hansmeier's Brief at pages 57 and 58, Hansmeier cited *I. S. Joseph* in support of his argument that "[t]his Court has strongly disapproved of redress to criminal statutes in response to perceived groundless or bad faith litigation."   Hansmeier proceeded to argue that "resort to the criminal law [in this case] is ill-advised and impermissible." The Eighth Circuit rejected this argument in upholding the Indictment, but did not

specifically address Hansmeier's argument that civil litigation activities cannot give rise to a criminal fraud case.

As to the merits, the magistrate judge's R & R powerfully debunks Hansmeier's argument that civil litigation activities can never give rise to a criminal fraud case, and the cases Hansmeier cites in his Section 2255 motion do not move the needle in his favor.

Hansmeier discusses *DiMartini v. Town of Gulf Stream* in his Section 2255 motion, but appears to miscite it. The case Hansmeier intends to rely upon is actually *Town of Gulf Stream v. O'Boyle,* an unpublished Eleventh Circuit case available at 654 Fed.Appx 439, which was filed on June 21, 2016.

The defendants in *Town of Gulf Stream* inundated Gulf Stream with frivolous public documents requests to create a violation by Gulf Stream of Florida's Public Records Act, and then threatened bogus lawsuits against Gulf Stream for the violations.  Gulf Stream sued the defendants under the civil RICO statute, alleging as its two predicate acts forming a pattern of racketeering activity that the defendants had committed Hobbs act extortion and mail fraud.  The Eleventh Circuit held only that the defendants' abusive litigation activities did not amount to Hobbs Act extortion.   It did not hold that abusive litigation activities cannot be the basis of a mail fraud predicate, but rather that the particular theory of mail fraud advanced by the plaintiff – that some of the records requests were made anonymously – was permitted under Florida law.  *Town of Gulf Stream* does not support

Hansmeier's argument that civil litigation activities cannot form the basis of criminal fraud charges.[4]

Hansmeier also cites the Second Circuit's decision in *Kim v. Kimm,* 884 F.3d 98 (2nd Cir. 2018), for the proposition that civil litigation activities can never be the basis of a criminal fraud case, but *Kim* does not go so far.

In *Kim,* the plaintiff sued the defendants under the civil RICO statute for filing false litigation documents in a prior copyright enforcement case, asserting that such filings "were intended to mislead the district court and therefore were predicate acts of obstruction of justice, mail fraud, and wire fraud that constituted a pattern of racketeering activity." *Id.* at 101.  The Second Circuit affirmed the district court's dismissal of the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), holding that "allegations of frivolous, fraudulent, or baseless litigation activities – without more – cannot constitute a RICO predicate act." *Id.* at 104.  The Court reasoned that permitting allegations of baseless litigation activities to serve as RICO predicates would engender endless "satellite litigation," and serve as a vehicle for a party to relitigate in federal court issues it lost in state court.  *Id.*

*Kim* is unhelpful to Hansmeier for two reasons.

First, the *Kim* rule is confined to what constitutes a predicate for RICO act liability. It does not hold that civil litigation conduct cannot be the basis of a valid mail fraud

---

[4] In a recent published case, the Ninth Circuit held that sham litigation can be the basis of liability for extortion under the Hobbs Act.  *United States v. Koziol,* 993 F.3d 1160, 1168 (9th Cir. 2021).

indictment brought by the government.  In fact, *Kim*, a Second Circuit case, does not even refer to the Second Circuit's *Eisen* case, which affirmed mail fraud convictions arising from fraudulent litigation activities.

Second, even if the *Kim* rule does somehow apply to activity the government chooses to indict as mail fraud, this is not a case that alleges fraudulent litigation activities "without more."  The Indictment alleges that Hansmeier and Steele directly lied to the downloaders by threatening litigation they had no intention to see through if the downloaders spoiled for a fight.  The Indictment alleges the completely fraudulent hacking scheme.  Indictment paragraph 29-31.  And the Indictment devotes 7 pages to detailing the lies the defendants told, and got others to tell, to further the scheme and avoid detection.  Indictment paragraph 33.  The Indictment alleges far more than baseless litigation activities.  *Kim v. Kimm* does not help Hansmeier.

<u>Claim 5</u>.  Hansmeier argues in claim 5 that there was no factual basis for the plea.  Hansmeier's argument is that the factual basis was a subset of the facts alleged in the Indictment.  Since the Indictment is invalid, he argues, the factual basis is invalid.

Hansmeier's claim 5 is not cognizable in this Section 2255 action because it is based upon his argument that the Indictment should have been dismissed, which he lost in the Eighth Circuit.

Hansmeier's claim 5 is also completely meritless.  As demonstrated above, the Indictment in this case is solid, and so, therefore, is the factual basis.  At his change-of-plea hearing, Hansmeier admitted, under oath that he:

- Caused his brother, Peter Hansmeier, to upload copyrighted pornography to the Pirate Bay, the sole purpose of which is copyright infringement (Plea Hearing Transcript at 22);

- Opened Prenda Law under the name of a nominee attorney, Paul Duffy, over which Hansmeier and Steele exercised *de facto* control; (*Id. at 23);*

- Opened AF Holdings and Ingenuity 13 under nominee names;

- Surreptitiously controlled AF Holdings and Ingenuity 13 (*Id.* at 24);

- Shot his own pornographic movies, and uploaded their content to be stolen (*Id.* at 26);

- Concealed in each John Doe lawsuit, and in each motion for early discovery, that Hansmeier had uploaded the pornographic content to be stolen, and surreptitiously controlled the plaintiffs in the actions (*Id.* at 27);

- Knew that the disclosure of the uploading and surreptitious control of the plaintiffs would be material to the judges deciding whether to grant early discovery (*Id.* at 27);

- Completely fabricated the hacking allegations (*Id.* at 28), and recruited ruse defendants to obtain early discovery to learn the identities of other pornographic downloaders (*Id.* at 29);

- Knew that the judges in the hacking cases would not have granted early discovery if they had known the hacking allegations were false and the defendants were straw men (*Id.* at 29-30).

Based upon this factual basis, this Court concluded: "I'm satisfied you're actually guilty and you know what you're doing today, so I accept your pleas of guilty." *Id.* at 32.

Hansmeier's claim 5 is noncognizable and entirely meritless.

B.   <u>Claims 6 through 9</u>.  In claims 6 through 9, Hansmeier contends that this case is unconstitutional attack on the "fraud-dependent charges" in the Indictment.  He does not level this attack on the hacking allegations (Indictment §§ 29-31) or on the myriad allegations that Hansmeier lied to conceal his fraud (Indictment §§ 32-33).

Hansmeier has filed numerous lawsuits against the undersigned, and other DOJ attorneys, including Anders Folk and former Attorney General William Barr, challenging the constitutionality of the mail and wire fraud statutes.  These suits have not been successful. *See, e.g., Hansmeier v. MacLaughlin et al.,* 21-CV-01167 (JRT/LIB), ECF No. 57 (dismissing with prejudice numerous lawsuits brought by Hansmeier against the undersigned and other DOJ employees challenging the mail and wire fraud statutory regime).

The government responds to Hansmeier's claims 6 through 9 below.

1.   <u>Claim 6</u>.  Hansmeier argues in claim 6 that the Indictment violates his First Amendment right to petition the government for redress of grievances as to the "first scheme," and appears not to contend that his petitioning activity was unconstitutionally impaired with regard to the "hacking-allegations" part of the case.

Specifically, Hansmeier seeks in claim 6 to invoke the Noerr-Pennington doctrine, "which is a rule of statutory construction that requires courts to construe statutes to avoid

burdening conduct that implicates the protections of the Petition Clause of the First Amendment." *United States v. Koziol,* 993 F.3d 1160, 1171 (9th Cir. 2021).

Hansmeier raised this issue in his motion to dismiss before this Court. He argued that "this prosecution itself seeks to criminalize the constitutional right to access civil courts" (ECF Nol. 49, p. 27). He argued that this case offends "a tradition and right to petition civil courts to settle grievances, whether against one's fellow private citizen or against some governmental entity." *Id.* at 58. This Court ruled against Hansmeier:

> Hansmeier cites several cases establishing as a general matter the right to access the courts . . .But Hansmeier cites no authorities for applying the doctrine in criminal cases . . . Even assuming that the *Noerr-Pennington* doctrine applies in the criminal prosecution context, the Court might find that the alleged activities place Hansmeier's civil litigation efforts under the sham exception to that doctrine, thus not constitutionally protected from prosecution.

ECF No. 76, pp. 4-6 (citations omitted).

The Eighth Circuit did not reverse or criticize this Court's rejection of Hansmeier's petition clause argument on direct appeal. Hansmeier cannot relitigate the issue in this Section 2255 motion.

Further, the claim is meritless. In *Koziol,* the defendant threatened baseless litigation against a prominent entertainer to shake the entertainer down for $1 million, not intending to actually file suit against the entertainer. Koziol argued that his litigation activities were protected by the Noerr-Pennington doctrine and that his extortion conviction should be reversed. The Ninth Circuit rejected this argument, noting that the "'established sham exception . . . provides . . . protection against baseless claims asserted in prelitigation

settlement letters.'"  *Koziol,* 993 F.3d at 1171, *quoting Sosa v. DIRECTTV, Inc.* 437 F.3d 923, 936 (9th Cir. 2006).

In this case, as in *Koziol,* Hansmeier's litigation activities in the John Doe lawsuits, and the subsequent demand letters sent to his victims, were not only shams, but outright crimes.  Eighth Circuit precedent accords with *Koziol.*  In *Hufsmith v. Weaver,* 817 F.2d 455, 459 (8th Cir. 1987), the Eighth Circuit held that the sham exception removes the *Noerr-Pennington* cloak of immunity where a defendant's resort to the court "'is accompanied or characterized by illegal and reprehensible practices, such as perjury, fraud, conspiracy with or bribery of governmental decision makers, or misrepresentation, or is so clearly baseless as to amount to an abuse of process.'"  *Id., quoting Razorback Ready Mix Concrete Co. v. Weaver*, 761 F.2d 484, 487 (8th Cir. 1985).

The sham exception is met in this case.  Hansmeier admitted at his change of plea hearing that he concealed facts from the courts in the John Doe suits which were material to their decision whether to authorize early discovery.  Hansmeier admitted that the hacking allegations were completely made up.  And the Indictment alleges that Hansmeier lied in his demand letters by threatening litigation he had no intention to see through in the face of resistance.  The Eighth Circuit held that these admissions and allegations amounted to a scheme to defraud.

The sham exception is fatal to Hansmeier's attempt to invoke the *Noerr-Pennington* doctrine.

Claim 7.  Hansmeier argues in claim 7 that Hansmeier's "first" scheme amounts to political speech called "trolling" and is thus entitled to the highest level of First

Amendment protection known to the law.  He does not make this argument with respect to the hacking allegations, or the allegations that Hensmeier lied to escape the consequences of his fraud.

Hansmeier did not make this argument in his motion to dismiss before this Court, or in the Eighth Circuit, but he could have.  Hansmeier's First Amendment argument is thus procedurally defaulted.

It is also meritless.  Hansmeier asserts that "'trolling' has been the subject of vigorous political debate," which somehow converts his criminal activity into protected speech. It is not. Hansmeier's speech in this case does not enjoy First Amendment protection, both because it was integral to criminal conduct, and because it was speech amounting to fraud.  *See U. S. v. Alvarez,* 132 S.Ct. 2537, 2544 (2012) (neither speech "integral to criminal conduct" nor speech amounting to "fraud" enjoy First Amendment protection).

Claim 8.  Hansmeier argues in Claim 8 that the mail and wire fraud statutes, "as applied to the first scheme alleged in the Indictment," is void for vagueness under the Due Process Clause of the Fifth Amendment.  Hansmeier Memo at 20.  Hansmeier's argument is apparently that "'trolling' is a well-established and accepted intellectual property enforcement model" under *Olan Mills* (*Id.),* and that the unduly vague "challenged statutes" "allowed prosecutors to rewrite the law of copyright enforcement to obtain a conviction." *Id.* at 17.[5]

---

[5] Ironically, Hansmeier is quite vague about identifying the "challenged statutes." Hansmeier purports to identify them as "the statutes defining the fraud dependent charges

First, this new, constitutional attack on the Indictment cannot be raised in a Section 2255 motion. Hansmeier could have raised his vagueness argument on direct appeal, but did not. The issue is not cognizable in this proceeding.

Second, although Hansmeier's vagueness argument purports to be an "as-applied" attack on the "challenged statutes" as to the "first scheme" only, the argument appears to be a facial challenge to the mail and wire fraud statutes generally. Citing *Johnson v. United States,* 135 S.Ct. 2551 (2015), a case involving a facial challenge to the ACCA's residual clause, Hansmeier argues that whatever statutes he is challenging are so vague they fail to provide "ordinary people" fair notice of the conduct they punish, and are so standardless they invite arbitrary enforcement. Hansmeier Memo at 20. However, the mail and wire fraud statutes have been on the books for many years, and have never been invalidated as facially void-for-vagueness.

Third, if Hansmeier's argument really is an "as-applied" vagueness attack on the "first scheme," this Court and the Eighth Circuit have already effectively rejected it by holding that the Indictment states an offense against Hansmeier. Both this Court and the Eighth Circuit could interpret and make sense of the Indictment. In fact, the Eighth Circuit summarized the allegations comprising the "first scheme" in 4 sentences:

> [In the first of the two related litigation strategies], the indictment alleges that Hansmeier and Steele (1) developed and executed a plan that depended on them (2) deliberately concealing material information from the courts, (3) with the purpose of convincing those courts to grant their discovery requests and (4) with the ulaimte

---

in the indictment." Is Hansmeier attacking the mail fraud statute (Section 1341), the wire fraud statute (Section 1343), or the conspiracy statute under which he was actually convicted (Section 1349)?

object of obtaining settlement payments from alleged infringers they identified through those discovery requests.

*Hansmeier,* 988 F.3d at 438.  The Eighth Circuit obviously did not find the Indictment's description of the "first scheme" too vague to understand.  The Indictment put Hansmeier on more than adequate notice of the charges he faced.

Fourth, Hansmeier's vagueness argument relies heavily upon his assertion that his conduct in the "first scheme," which he describes as "trolling conduct," is an "accepted intellectual property enforcement model" under *Olan Mills.*  Hansmeier argues that the government's ability to "rewrite" substantive copyright law under the "challenged statutes" demonstrates that they are standardless and invite arbitrary enforcement.

But as noted above, Hansmeier's conduct in this case is completely unlike the conduct of plaintiffs who investigate ongoing activity that infringes their copyrights and thereby damages their real, ongoing businesses.  Hansmeier had no underlying, ongoing business suffering infringement damages.  He did not distribute his pornography for profit.  He created pornography only to serve as bait for a fraud scheme.  And he concealed his uploading from the courts, knowing (as he admitted at his change of plea hearing) that the courts would be less likely to grant him early discovery if they knew about the uploading.

The government did not use unconstitutionally vague fraud statutes to rewrite the law of copyright in this case.

Claim 9.  Hansmeier argues in claim 9 that the "challenged statutes" (which he defines for purposes of claim 9 as the mail and wire fraud statutes) "impermissibly intrude upon Congress' copyright power and the Judiciary's power to interpret the law."

Hansmeier failed to raise this constitutional argument on appeal, and it is not cognizable in this Section 2255 proceeding.  Further, this argument effectively argues that the Indictment does not state an offense: "[Accepting] the facts on the face of the Indictment as true, Hansmeier's statements and omissions were consistent with the law governing copyright enforcement and judicial interpretations thereof."  Hansmeier Memo at 22.  Hansmeier lost this issue of whether the Indictment states an offense in the Eighth Circuit, and cannot relitigate it here.

Hansmeier's separation-of-powers argument is also meritless for two reasons.

First, it is once again largely based on Hansmeier's assertion that his conduct in this case is protected under *Olan Mills*.  For the reasons stated above, *Olan Mills* does not help Hansmeier.

Second, this case unfolded consistently with the separation of powers.  Congress passed a statute (Section 1349) criminalizing fraud conspiracies.  The executive branch applied that statute in a charging document.  The judicial branch (this Court) reviewed the sufficiency of the charging document, held that it charged a crime, accepted Hansmeier's plea, and imposed sentence. The Eighth Circuit reviewed this Court's work, and affirmed. No branch of government stepped out of its lane in convicting Hansmeier of fraud.

C.    Claims 10 through 12.  Hansmeier characterizes these claims as arising out of "structural defects in the district court and appellate proceedings."  Hansmeier Memo at 1.  Hansmeier had no real choice but to asserts these specious claims because the law of this case is against him on claims 1 through 9. Hansmeier thus needed to seek to

delegitimize the prior proceedings in this Court and the Eighth Circuit. Claims 10 through 12 constitute Hansmeier's effort to do so.

1.  **Claim 10**. Hansmeier argues in claim 10 that the government concealed the *Olan Mills* case from the grand jury, the magistrate judge, this Court, and the Eighth Circuit, invalidating all of the prior proceedings in this case. Hansmeier argues that the government did so, despite the fact that Hansmeier, in his motion to dismiss to this court, "corrected prosecutors' misunderstanding of copyright law." *Id.* at 24.

Hansmeier's argument that the government hid the *Olan Mills* case from this Court and the Eighth Circuit makes no sense. Hansmeier brought the *Olan Mills* case to this Court's attention. *See* Hansmeier's Motion to Dismiss, ECF No. 49 at 22-23 (citing *Olan Mills*). Hansmeier also brought the *Olan Mills* case to the Eighth Circuit's attention. *See* Hansmeier's Brief at 36. Further, the Eighth Circuit is presumably aware of its own precedent. The government did not "conceal" the *Olan Mills* case in the prior proceedings.[6]

Ultimately, Hansmeier argues that he was forced to plead guilty because of the government's concealment of *Olan Mills*: "[P]rosecutor's misrepresentations and omissions deceived the Court into believing that Hansmeier's copyright enforcement investigative methods were illegitimate. Once this deception was successful the die was cast." Hansmeier Memo at 29.

---

[6] Hansmeier similarly argues that the government somehow concealed the *Jain* and *Cleveland* cases from this Court and the Eighth Circuit. But Hansmeier cited the *Jain* in his objections to the R & R (ECF No. 73, p. 7) and *Cleveland* in his appellate brief. Hansmeier's Brief at pp. 29, 45, and 60.

With due respect, this argument is preposterous. It denigrates the government, the Court, and Hansmeier himself. The government did not mislead the Court. Neither this Court nor the Eighth Circuit were misled, or susceptible to being misled. And Hansmeier is hardly coercible. Hansmeier pled guilty as a tactical move because he knew a jury would convict him, not because everybody but Hansmeier was too stupid to understand the copyright laws.

Claim 12. Hansmeier contends in claim 12 that this Court should have *sua sponte* recused itself because it presided over 5 of the John Doe proceedings brought in Minnesota. The remedy, asserts Hansmeier, is reversal of his conviction. Hansmeier cites no authority supporting his argument that this Court had a duty *sua sponte* to disqualify itself, much less that the remedy is a vacation of his conviction.

First, Hansmeier cannot raise for the first time in this Section 2255 motion his assertion that this Court was not impartial. He could have raised this issue directly with the Court during the pendency of his case and he could have raised it on appeal.

 But Hansmeier chose not to file a motion for recusal, opting instead to send the Court an informal letter, not filed on ECF or made part of the case, suggesting recusal for the same reasons he now collaterally asserts. Hansmeier has known this Court handled some of the underlying litigation since before he pled guilty, chose to proceed without moving for recusal, and only now, unhappy with his prison sentence, raises the issue, for the first time, in a document actually filed in the case. Hansmeier's wait-and-see approach to this argument requires its rejection.

Further, this Court was not required, as a matter of the constitution or the Code of Conduct for United States Judges ("Judicial Code"), to recuse itself. Hansmeier has cited no authority constitutionally requiring the Court to recuse merely because it handled a small subset of the underlying litigation, and the government is aware of none.

Canon 3(C) of the Judicial Code suggests *sua sponte* disqualification in several circumstances "in which the judge's impartiality might reasonably be questioned," none of which are present here. Nothing in the record establishes, for example, that this Court has a *personal* bias for or against Hansmeier, or personal knowledge of disputed evidentiary facts. Canon 3(C)(1)(a). And this Court did not have a financial stake in the outcome. Canon 3(C)(1)(c).

Hansmeier asserts that the government would have called the Court as a witness in this matter. That is not true. The government had no plans to call the Court as a witness, and would never attempt to call a U.S. District Court Judge as a witness in any proceeding in over which that judge is presiding.

This Court's impartiality could not "reasonably be questioned" in the circumstances of this case, and *sua sponte* recusal was not required.

<u>Claim 12</u>. Hansmeier argues in claim 12 that he was "constructively" denied the effective assistance of counsel by the government's purported burying of the *Olan Mills* case. Since Hansmeier's arguments about government "fraud" in this case are completely meritless, so too is this "constructive" claim of ineffective assistance.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Hansmeier's Section 2255

motion without a hearing.  Further, the Court should decline to issue a Certificate of

Appealability because Hansmeier has failed to make a substantial showing of the denial

of a constitutional right (*see* Title 18, United States Code, Section 2253), and no "jurist of

reason would find it debatable whether Hansmeier's Section 2255 motion states a valid

claim of the denial of a constitutional right."  *See Slack v. Daniel,* 529 U. S. 473, 484

(2000).

Dated: March 15, 2022                          Respectfully submitted,

                                               CHARLES J. KOVATS, JR.
                                               Acting United States Attorney

                                               s/ David J. MacLaughlin

                                               BY:  DAVID J. MACLAUGHLIN
                                               Assistant U.S. Attorney