TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---

FROM: 20953041
TO:
SUBJECT: 0000F - Introduction (Part 1 of 2)
DATE: 04/16/2022 07:53:42 PM

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Case No. 16-cr-334

---

UNITED STATES OF AMERICA,
    Plaintiff,

v.

PAUL HANSMEIER,
    Defendant.

PAUL HANSMEIER'S REPLY IN SUPPORT OF MOTION TO VACATE
SET ASIDE OR CORRECT

RECEIVED BY MAIL
APR 2 1 2022
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
APR 2 1 2022
U.S. DISTRICT COURT MPLS

---

I. Introduction.

The Court should vacate Hansmeier's conviction and guilty plea and dismiss the indictment.

II. Hansmeier's Reply to the Government's Threshold Points.

The Government's procedural attacks fail. As for the merits, the Court is obligated to follow the Eighth Circuit's approach of analyzing the two litigation strategies (i.e. the "copyright enforcement" and the so-called "hacking" litigation strategies) separately for the purposes of Hansmeier's claims. Moreover, as the Court analyzes the two litigation strategies separately, the Court is bound by the Eighth Circuit's characterizations of those separate strategies.

When the Court analyzes the two litigation strategies separately, as the Eighth Circuit did, it will become clear that the Government's effort to criminalize "copyright enforcement" is nothing more than an effort to override the Eighth Circuit's decision in Olan Mills and the hundreds (if not thousands) of decisions following it. The Government's attempts to distinguish Olan Mills fall flat. What the Government is really asking the Court for is the power to criminalize civil litigation whenever it becomes controversial to someone, which the Court should not do.

    A. The Government's Procedural Attacks Fail.

The Government's procedural attacks fail. Several of Hansmeier's claims are jurisdictional in nature and can be raised at any time---a point that Hansmeier signaled in his 2255 motion but to which the Government's response is silent. To the extent that Hansmeier's claims are not jurisdictional in nature, then they were properly preserved via Hansmeier's motion to dismiss the indictment, conditional plea agreement and arguments on appeal. Moreover, they are cognizable because they involve constitutional violations or structural flaws in these proceedings.

The Eighth Circuit's decision did not address the overwhelming majority of Hansmeier's claims; these claims are unaffected by the law of the case doctrine. For the limited number of claims that raise issues decided by the Eighth Circuit, the Eighth Circuit's decision was impaired by the Government's resort to material misstatements and omissions; the Court is not bound to apply the law of the case doctrine to these claims.

Finally, although Hansmeier believes that all of his claims are properly before the Court, to the extent that any of Hansmeier's claims were not properly preserved for this 2255 motion, then Hansmeier received ineffective assistance of counsel.

The Government's procedural defenses vary from claim to claim, so Hansmeier performs a procedural analysis with respect to each of the claims in his 2255 motion, infra.

    B. The Court Must Follow the Eighth Circuit's Lead of Analyzing the Two Litigation Strategies Separately.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

-------------------------------------------------------------------------------------------------

The Eighth Circuit's decision in Hansmeier's appeal analyzed the copyright enforcement and so-called "hacking" litigation strategies separately. On page 438 of the Eighth Circuit's reported opinion, the Eighth Circuit dissected the copyright enforcement litigation strategy first and then analyzed the so-called "hacking" litigation strategy. The Eighth Circuit found that both strategies, when viewed independently from one another, satisfied the requirements of a scheme to defraud---though the only essential element that the Eighth Circuit analyzed in its opinion was the "materiality" element.

In the first litigation strategy, i.e. the copyright enforcement litigation strategy, the Eighth Circuit found that Hansmeier committed fraud by concealment. Specifically, the Eighth Circuit found that Hansmeier and his co-defendant "did not disclose (1) that they directed agents to make the copyrighted works available on websites known for illegal downloading; and (2) that the clients were in fact companies that Hansmeier and Steele set up in order to personally profit from anticipated settlements." Id. The Eighth Circuit found that this information was material, though it did not analyze the other elements of a scheme to defraud, including "intent to harm."

The Eighth Circuit then analyzed the so-called "hacking" litigation strategy. Quoting from the Eighth Circuit's opinion, "The second litigation strategy utilized by Hansmeier and Steele, which began in the fall of 2012, shared many features of the first, including the use of discovery to obtain identifying information for alleged infringers and the deployment of that information to then obtain settlement payments. While the second approach similarly involved misleading courts by concealing material information, Hansmeier and Steele also began actively lying to the courts." Id. Again, the Eighth Circuit found that the misrepresentations were material, but it did not analyze the other elements of a scheme to defraud.

The Government attempts to obfuscate this plain reading of the Eighth Circuit's decision with arguments over whether Claim 1 of the indictment involves one scheme or two schemes. Gov't. Resp. at 12 and 20. The Government's obfuscatory tactics are beside the point. For the sake of this 2255 motion, all that Hansmeier is asking the Court to do is analyze the claims in his 2255 motion as applied to the copyright enforcement litigation strategy separately from the so-called "hacking" litigation strategy, just as the Eighth Circuit did.

In its response, the Government seems desperate for the Court to recombine the two litigation strategies into a single mass. The Government's desperation is understandable; when the indictment is read as involving two distinct litigation strategies, the copyright enforcement litigation strategy is nothing more than a "routine" intellectual property enforcement method for which there is "no defense," according to Professor Nimmer's copyright treatise, the Eighth Circuit and the uniform decisions of district courts nationwide. Such litigation activity must fall outside the scope of the federal fraud statutes or any litigation activity can be criminalized at prosecutorial whim.

The Government's request for recombination is inconsistent with the appellate result. The parties did extensive battle at the Eighth Circuit over this issue, with the Government advocating that all of the litigation conduct be lumped into a blob and Hansmeier's counsel advancing a three-legged stool metaphor, as the Government's response recognizes. The Eighth Circuit rejected both metaphors and settled on analyzing each litigation strategy separately. The Court is obligated to honor the Eighth Circuit's interpretation of the indictment because it is the law of this case.

   C. The Court Must Follow the Eighth Circuit's Interpretation of the Two Litigation Strategies.

The Government's response goes to great lengths to recharacterize what the indictment says. The issue of what the indictment says was probably the most contentious issue of the appellate litigation. In footnote 2 of the appellate opinion, the Eighth Circuit criticized both parties for attempting to go outside the four corners of the indictment. The appellate opinion provides clear instructions to this Court about the scope of the scheme in the first litigation strategy and the scope of the scheme in the second litigation strategy.

According to the Eighth Circuit's opinion, the scope of the scheme in the first litigation strategy was as follows: Hansmeier and his co-defendant "did not disclose that they (1) directed agents to make the copyrighted works available on on websites; and (2) that the clients were in fact companies that Hansmeier and Steele set up in order to personally profit from the anticipated settlements." Id.

According to the Eighth Circuit's opinion, the scope of the scheme in the second litigation strategy was as follows: "The second litigation strategy utilized by Hansmeier and Steele, which began in the fall of 2012, shared many features of the first, including the use of discovery to obtain identifying information for alleged infringers and the deployment of that information to obtain settlement payments. While the second approach similarly involved misleading courts by concealing material information, Hansmeier and Steele also began actively lying to courts." Id.

This point is critical because, throughout the Government's response, the Government tries to avoid the appellate result and

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------

claim that there were allegations in the indictment that simply aren't there. The most obvious example of this is the Government's claim, repeated throughout its brief (and unsupported by citation), that Hansmeier lied about "threatening litigation that [he] had no intention to see through if the defendant spoiled for a fight." Gov't. Resp. at 12, 27 and 31. The Government's resort to more material misstatements is telling; if the Government was confident in its position then it would not need to resort to dishonesty. When the Court evaluates Hansmeier's claims, rather than considering the Government's often misleading characterizations of the indictment, the Court should look to the Eighth Circuit's opinion and what it said about each litigation strategy.

[intentionally left blank]

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0000F - Introduction (Part 2 of 2)
DATE: 04/16/2022 08:51:31 AM

.   C. Olan Mills is Directly on Point.

The Eighth Circuit's decision in Olan Mills is directly on point. In Olan Mills, the Eighth Circuit rejected the Government's primary criticism of the first litigation strategy, i.e. Hansmeier's copyright enforcement cases. Specifically, the Eighth Circuit held that a copyright holder's use of an undercover investigator to lure would-be infringers does not give rise to an authorization defense, which is the opposite of what the Government has claimed throughout this litigation, including now.

The Government has no other option but to try and distinguish Olan Mills, because there aren't any judicial decisions that support the Government's assertion that a copyright holder's use of the investigative tactics in Olan Mills or cases like it vitiates a claim for copyright infringement. Thus, Hansmeier was sentenced to prison for 14 years because prosecutors were inexperienced in the law of copyright enforcement and then lacked the character to admit their mistake once it became apparent.

The Government's efforts to distinguish Olan Mills are even more frivolous than their theory of authorization, but for the sake of completeness Hansmeier will address them anyways. The Government first claims that it makes a difference that Olan Mills was an operating business, whereas Hansmeier's copyrights were held by nonpracticing entities. Though this assertion is not even true (counsel for the Government could purchase these works from the Internet today), for this distinction to matter there would have to be something in the law that makes non-practicing entities ineligible to enforce intellectual property rights. There isn't. Take Eidos Display, LLC v. Chi Mei Innolux Corp., No. 6:11-cv-201-JRG (E.D. Tex.). In that case, an intellectual property holder with no operating business brought a patent infringement lawsuit. Prior to trial, the district court granted a motion in limine which prevented the defendant from referring to the plaintiff as a "shell," "sham," "conspirator," "patent troll," or from using the terms "paper patent," "stick up," "hold up," "shakedown," or "litigation lottery." Id., 2017 U.S. Dist. LEXIS 157062 (May 26, 2017). A few points. First, it should not be lost on the Court that the indictment in this case is littered with these and similar pejoratives. Second, the plaintiff in Eidos Display, LLC had no operating business, but nevertheless made it through motions to dismiss and for summary judgment and to trial; its status as a nonpracticing entity did not impair its claims. Third, the owners of Eidos Display, LLC certainly weren't prosecuted for fraud and sentenced to a 14 year term of imprisonment. The Government's suggestion that nonpracticing entities are ineligible to enforce copyrights is patently frivolous.

So too is the Government's reference to the fact that Olan Mills sent a cease and desist letter before bringing suit. Some laws have a presuit notice requirement, but the Copyright Act is not one of them.

Finally, the Government tries to distinguish Olan Mills (and the hundreds of district court decisions following it) with the observation that the investigative methods in those cases were out in the open. But the Government cites to nothing to support its assertion that the investigative methods were more "out in the open" at the pleading and early discovery stages in those cases than they were in Hansmeier's cases. Hansmeier is familiar with the litigation documents in the early file-sharing cases and modeled his litigation documents after those documents. To the best of Hansmeier's recollection, the complaints and motions for discovery looked very similar to what Hansmeier presented to the courts. Certainly, nothing in the Federal Rules of Civil Procedure or the legal standards governing early discovery applications requires a discussion of these matters.

As it considers this issue, the Court should be attentive to what the Government's response doesn't say. Throughout its 39 page response, the Government fails to identify a single case in which a copyright holder's use of an undercover investigator resulted in the loss of a claim. This is because Olan Mills was not a "one off" decision. Rather, Olan Mills is a central decision in the law of copyright enforcement. Indeed, the Olan Mills case was informed by amicus curiae including the Recording Industry Association of America, the Professional Photographers of America, Inc., the Newsletter Publishers Association, Inc., Turner Broadcasting System, Inc. and the Association of American Publishers. As a result of Olan Mills, what the Government has managed to do in this case is criminalize garden variety copyright enforcement litigation. See, e.g., Capitol Records, Inc. v. Thomas, 579 F. Supp. 2d 1210 (D. Minn. 2008) ("Eighth Circuit precedent clearly approves of the use of investigators by copyright owners.") (relying on Olan Mills in rejecting substantially similar authorization defense).

Nor does the Government's response address the decision in Harrington v. Aerogelic Ballooning, LLC, 18-cv-2023 (D. Colo. Aug. 8, 2019), in which a copyright infringement defendant specifically invoked the charges against Hansmeier in an attempt to defend against a "copyright troll litigation mill." The district court described the defendant's positions as "frivolous" and "legally-unsupported." The district court accused defendant's counsel as "fail[ing] to grasp the fundamentals of copyright protection." The district court assisted defendant's counsel by explaining, "Whether it is possible to download a photo and use it without

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

payment ... and whether it is legal to do so are distinct questions, just as whether it is possible to take an unlocked bike from a neighbor's porch without permission is a different question from whether it is legal to do so." Id. The decision in Harrington is strong evidence that the Eighth Circuit's decision in Olan Mills continues to be rigorously enforced by federal district courts nationwide and that the Government's latest attempts to distinguish Olan Mills are "frivolous" and "legally-unsupported" and "fail to grasp the fundamentals of copyright protection."

    D. Criminalizing Routine Litigation will Destroy the Civil Justice System.

The Government's attempt to criminalize routine litigation will destroy the civil justice system because no one will want to use it. No one would want to file a lawsuit in the District of Minnesota if they can go to prison even if they are filing claims "clearly supported" by "Eighth Circuit precedent. Capitol Records, Inc., 579 F. Supp. 2d at 1210. And the Court will not need to wait long before people start suing each other for fraud once it becomes settled that any litigation can be characterized as fraud because the financial rewards will be very great for those who figure it out. Once this happens, litigation will become too expensive for most to make any sense. For these reasons, the Court should be very hesitant about allowing the Government to criminalize the first litigation strategy.

    E. Housekeeping Matter.

The Government's response expresses confusion over the scope of Hansmeier's 2255 motion. Hansmeier's reference to the "fraud-dependent" charges, the charging statutes or the challenged statutes in his 2255 motion is a reference to the same statutes he challenged in his motion to dismiss, objection to the report and recommendation, appeal and writ of certiorari.

Hansmeier now turns to his claims.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0001F - No Intent to Harm
DATE: 04/14/2022 03:16:42 PM

CLAIM 1 - The Indictment Affirmatively Pleads the Government out of the "Intent to Harm" Element of the Charging Statutes

The indictment affirmatively pleads the Government out of the "intent to harm" element of the charging statutes. In its response to Claim 1, the Government agrees with Hansmeier's assertion that "intent to harm" is an element of the charging statutes, but it argues that Claim 1 is procedurally barred and that the allegations in the indictment were consistent with a showing of "intent to harm."

  A. Claim 1 is Cognizable in a 2255 Proceeding.

Among the claims that are cognizable in a 2255 proceeding are claims that the court lacked jurisdiction or that the "indictment affirmatively shows on its face that no federal offense was committed." United States v. Houser, 508 F.2d 509, 517 (8th Cir. 1974).

    1. Claim 1 is Cognizable on 2255 Because it is Jurisdictional.

Claim 1 is cognizable because it is jurisdictional in nature. The Eleventh Circuit's decision in United States v. Peter, 310 F.3d 709 (11th Cir. 2002) is instructive. In Peter, the defendant pled guilty to a charge of conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act based on predicate acts of mail fraud, arising from the defendant's applications for state alcoholic beverage licenses. After defendant had completed his sentence, including supervised release, Cleveland v. United States was decided by the U.S. Supreme Court. Based on Cleveland, the acts forming the basis for the defendant's guilty plea, the license applications, did not constitute the predicate crime of mail fraud because the act of fraudulently obtaining licenses is outside the scope of the "property" essential element of the charging statutes. The defendant filed a petition for a writ of error coram nobis. The government conceded that the defendant's license applications did not constitute mail fraud, but argued that defendant had procedurally defaulted on his claim when he abandoned his pretrial challenges, pled guilty and declined to appeal. The Eleventh Circuit held that the issue was jurisdictional and could not be waived.

Here, the indictment affirmatively alleges a scheme by which Hansmeier would pressure defendants into settling with him and provided the settling defendants with the dismissals and other settlement terms they paid for. This puts the allegations in the indictment outside the scope of the "intent to harm" element of the charging statutes and creates a jurisdictional issue. As in Peter, the problem is not that the indictment leaves unanswered a question as to whether evidence would show that Hansmeier's conduct encompassed a particular fact or element. Rather, it is that the Government affirmatively alleged a specific course of conduct that is outside the reach of the fraud statutes.

Since a jurisdictional error implicates a court's power to adjudicate the matter before it, it can never be waived by the parties. Hansmeier's 2255 motion signaled that Claim 1 was raising a jurisdictional issue, but the Government offered no specific rebuttal argument on the issue of jurisdiction, notwithstanding that the Government bears the burden of establishing the Court's subject matter jurisdiction.

Claim 1 is cognizable because it is jurisdictional in nature.

    2. Claim 1 is Cognizable and it was Properly Preserved.

Even if Claim 1 is not jurisdictional, it is nevertheless cognizable because Claim 1 argues that the "indictment affirmatively shows that no federal offense was committed." Houser, 508 F.2d at 517. Further, the claim was properly preserved. Hansmeier challenged the sufficiency of the indictment via his pretrial motion to dismiss, he entered into a conditional plea agreement which preserved his right to present post-conviction challenges to the sufficiency of the indictment and he challenged the sufficiency of the indictment in his appeal.

Claim 1 is cognizable and it was properly preserved.

    3. To the Extent That Claim 1 is not Cognizable, Then Hansmeier Received Ineffective Assistance of Counsel.

Hansmeier believes that Claim 1 is cognizable in his 2255 motion. To the extent Hansmeier is wrong, then Hansmeier was denied the effective assistance of counsel. Hansmeier agreed to change his plea based on his counsel's representations that

the issues raised in Claim 1 would be cognizable for post-conviction review. Hansmeier would have gone to trial if changing his plea waived his right to present the issues raised in Claim 1. While Hansmeier believes that his counsel properly preserved the issues raised in Claim 1 for review on 2255, to the extent that Hansmeier is wrong, then he was deprived of his Sixth Amendment right to the effective assistance of counsel.

    4. The Law of the Case Doctrine Does Not Apply to Claim 1.

The Government argues that the Court's review of Claim 1 is barred by the law of the case doctrine---even though the Eighth Circuit did not decide the issue presented by Claim 1. A careful review of the Eighth Circuit's opinion reveals a total absence of any references to "intent to harm" or the substance of Hansmeier's argument regarding this element. For the law of the case doctrine to have any application, the Eighth Circuit must have "actually decided the specific ... issue." Nyffler Const. Inc. v. Sec'y of Labor, 760 F.3d 837, 842 (8th Cir. 2014). In this vein, the Eighth Circuit has "refused to apply the doctrine where a decision fails to provide sufficient directness and clarity to establish the settled expectations of the parties necessary for the subsequent application of the law of the case doctrine." Id. Because the Eighth Circuit's decision does not discuss, much less decide, the issue presented in Claim 1, the law of the case doctrine has no application to this 2255. See id. See also United States v. Castellanos, 608 F.3d 1010, 1015 (8th Cir. 2010) (holding that district court had power to decide issues left open by mandate).

Further, the law of the case doctrine is "prudential rather than jurisdictional...." Castellanos, 608 F.3d at 1015. Even if the Eighth Circuit had decided the issue presented in Claim 1, the Court would properly exercise its discretion to decline to apply the doctrine. As Hansmeier discusses in Claim 10, prosecutors knowingly used material misrepresentations and omissions to obtain and defend the conviction. It would be a manifest injustice to allow prosecutors to profit from such conduct.

Finally, the Eighth Circuit did not evaluate whether the indictment established this Court's subject matter jurisdiction. There is no law of the case on this issue.

    B. Claim 1 Should Succeed on the Merits.

Claim 1 should succeed on the merits for the reasons stated in Hansmeier's 2255 motion. The Government disagrees, arguing that the language in paragraph 17 of the indictment establishes Hansmeier's intent to harm. Response at 21-22. Hansmeier agrees with the Government that paragraph 17 of the indictment is the portion of the indictment that the Court should review in assessing Claim 1. In relevant part, paragraph 17 of the indictment alleges that once Hansmeier obtained the downloaders' names, he used "extortionate" tactics to get the downloaders to settle. Paragraph 17 further alleges that the downloaders settled because it would be too costly and embarrassing to fight Hansmeier's claims. Thus, according to the Government, "[t]he victims who paid settlements therefore got nothing but extorted." Resp. at 21.

The Government's response confuses "harm" in the ordinary sense with the term's usage under the federal fraud statutes. Under the fraud statutes, the term "harm" means an intent by the wrongdoer to not follow through with their end of a deal. Thus in Jain, the lying doctor was innocent of fraud (though guilty of other crimes) because he intended to follow through with providing medical services. In Regent Office Supply, the lying stationary salesmen were innocent of fraud (though guilty of other crimes) because they intended to deliver the stationary they were selling. In Sadler, the lying "pill mill" operator was innocent of fraud (though guilty of other crimes) because she intended to pay for the pills she purchased. In Takhalov, the lying bar owners were innocent of fraud (though guilty of other crimes) because they intended to deliver the drink they agreed to sell. Hansmeier is innocent of fraud because he intended to follow through with his settlements.

The mere use of extortion to get someone to do something is not fraud (though it may be extortion). Thus, the Government cannot satisfy the requirements of the federal fraud statutes by saying that Hansmeier extorted the downloaders. By alleging that Hansmeier used pressure to extract settlements from downloaders, the Government affirmatively pleads itself out of the fraud statutes because pressure is not fraud.

Later in its response, the Government mischaracterizes paragraph 17 of the indictment as alleging that Hansmeier made misstatements and omissions to the downloaders regarding his willingness to pursue his claims. Resp. at 22. As an initial matter, the Court should rely on the actual language of paragraph 17 of the indictment rather than the Government's mischaracterization of it. Notably, none of the Government's reference to this "lie" is supported by a citation. The Eighth Circuit did not include this language in its description of either of hte litigation strategies, notwithstanding the Government's efforts on appeal.

The actual language of paragraph 17 of the indictment does not support the Government's description. But even the Government's mischaracterization of paragraph 17 of the indictment offers the Government no help. This is true because, as the authorities cited in Hansmeier's 2255 motion demonstrate, lies told for the purpose of inducing a transaction do not satisfy

the "intent to harm" element of mail or wire fraud. Every court of appeals that has addressed the issue, including the Eighth Circuit in Jain, has held that lies or omissions that induced a transaction that would not have happened but for those lies are outside the scope of the fraud statutes. For example, in Regent Office Supply, salesmen induced customers to purchase stationary by falsely claiming that they were referred by the customer's bosses. The customers were pressured into purchasing stationary because they thought their bosses would be "pleased" by a purchase. While immoral, abhorrent and unethical, these sales tactics were not fraud because, at the end of the day, the salesmen intended to deliver the stationary that the customers paid for. Similar scenarios occurred in Sadler, Takhalov and Jain.

Were this not true, then it is difficult to imagine a settlement that would ever truly be final or an attorney who could not easily be accused of defrauding a counterparty. For example, counsel for the Government, David MacLaughlin, has engaged in more extreme versions of the conduct that the Government's response misattributes to Hansmeier. In United States v. Beckmann (MJD) (D. Minn.), MacLauglin attempted to pressure the defendant into settling by falsely threatening that the white collar defendant would face an inevitable life sentence if he attempted to take the case to trial. MacLaughlin's claim could be characterized as criminal fraud, under the Government's interpretation of the statute, because a life sentence was entirely unrealistic under the circumstances. Indeed, the defendant lost at trial and received a sentence far short of life. While MacLaughlin's conduct was problematic from an ethical perspective, his tactics would not constitute fraud in the Eighth, Second, Sixth and Eleventh Circuits because, at the end of the day, there is no reason to believe that MacLaughlin did not intend to live up to his end of whatever settlement agreement that he "extorted," to use the Government's language, the defendant into accepting.

The reality of litigation is that people settle due to pressure. If the mere allegation that someone used pressure to induce settlement was sufficient to support fraud charges, then Hansmeier cannot imagine the attorney who is unsusceptible to federal fraud charges or civil fraud claims. The same is true for the use of misstatements about one's determination to take a case to trial. If the Court has ever been in civil practice, then it would know that by allowing allegations of such misstatements to form the basis for criminal fraud charges or civil fraud claims, it will allow virtually every civil practitioner and party to civil litigation in Minnesota to sue one another for fraud. Rather than creating this sort of environment for the Minnesota legal community, the Court would better serve the interests of justice by enforcing the Eighth Circuit's decision in Jain.

The Court should grant Hansmeier his requested relief on Claim 1.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

-----------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0002F - No Materiality
DATE: 04/15/2022 08:16:24 AM

CLAIM 2 - The Indictment is Jurisdictionally and Otherwise Defective Because it Affirmatively Pleads the Government out of the Materiality Element of the Charging Statutes

The indictment is defective because it affirmatively pleads the Government out of the "materiality" element of the charging statutes. In its response, the Government agrees that "materiality" is an essential element of the charging statutes, but it argues that Claim 2 is procedurally barred and that Claim 2 is contradicted by events associated with Hansmeier's change of plea.

   A. Claim 2 is Cognizable in a 2255 Proceeding.

Among the issues that are cognizable in a 2255 proceeding are claims that the court lacked jurisdiction or that the "indictment affirmatively shows on its face that no federal offense was committed." United States v. Houser, 508 F.2d 509, 517 (8th Cir. 1974).

   1. Claim 2 is Jurisdictional.

Claim 2 is cognizable because it is jurisdictional in nature. The Eleventh Circuit's decision in United States v. Peter, 310 F.3d 709 (11th Cir. 2002) is instructive. In Peter, the defendant pled guilty to a charge of conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act based on predicate acts of mail fraud, arising from the defendant's applications for state alcoholic beverage licenses. After defendant had completed his sentence, including supervised release, Cleveland v. United States was decided by the U.S. Supreme Court. Based on Cleveland, the acts forming the basis for the defendant's guilty plea, the license applications, did not constitute the predicate crime of mail fraud because the act of fraudulently obtaining licenses is outside the scope of the "property" essential element of the charging statutes. The defendant filed a petition for a writ of error coram nobis. The government conceded that the defendant's license applications did not constitute mail fraud, but argued that defendant had procedurally defaulted on his claim when he abandoned his pretrial challenges, pled guilty and declined to appeal. The Eleventh Circuit held that the issue was jurisdictional and could not be waived.

Here, at least with respect to the first scheme alleged in the indictment (i.e. the scheme to "copyright troll"), the indictment affirmatively alleges a scheme in which Hansmeier's statements and non-statements to the courts strictly complied with the various legal standards governing Hansmeier's requests for relief from the Court. These legal standards and Hansmeier's statements and non-statements are exhaustively detailed in Claim 2. The misstatements and omissions alleged in the indictment are either premised on demonstrable misapprehension of the law of copyright enforcement or are irrelevant to the legal standards governing "copyright trolling." As in Peter, the problem is not that the indictment leaves unanswered a question as to whether evidence would show that Hansmeier's conduct encompassed a particular fact or element. Rather, it is that the Government affirmatively alleged a specific course of conduct that is outside the reach of the fraud statutes.

Since a jurisdictional error implicates a court's power to adjudicate the matter before it, it can never be waived by the parties. Hansmeier's 2255 motion signaled that Claim 1 was raising a jurisdictional issue, but the Government offered no specific rebuttal argument on the issue of jurisdiction, notwithstanding that the Government bears the burden of establishing the Court's subject matter jurisdiction.

   2. Claim 2 is Otherwise Cognizable and it was Properly Preserved.

Even if Claim 2 was not jurisdictional, it is nevertheless cognizable because Claim 2 argues that the indictment affirmatively shows that no federal offense was committed. Houser, 508 F.2d at 517. Further, the claim was properly preserved. Hansmeier challenged the sufficiency of the indictment via his pretrial motion to dismiss, he entered into a conditional plea agreeent which preserved his right to present post-conviction challenges to the sufficiency of the indictment and he challenged the sufficiency of the indictment in his appeal.

Claim 2 is cognizable and it was properly preserved.

   3. To the Extent That Claim 2 is not Cognizable, Then Hansmeier Received Ineffective Assistance of Counsel.

Hansmeier believes that Claim 2 is cognizable in his 2255 motion. To the extent Hansmeier is wrong, then Hansmeier was denied the effective assistance of counsel. Hansmeier agreed to change his plea and approve the appeallate briefs based on

-----------------------------------------------------------------------------------------------------

his counsel's representations that the issues raised in Claim 2 would be cognizable for post-conviction review. Hansmeier would have gone to trial if changing his plea waived his right to present the issues raised in Claim 2 and would have rejected the appellate briefs as well. While Hansmeier believes that his counsel properly preserved the issues raised in Claim 2 for review on 2255, to the extent that Hansmeier is wrong, then he was deprived of his Sixth Amendment right to the effective assistance of counsel.

    4. The Law of the Case Doctrine Does Not Apply to Claim 2.

The Government argues that the Court's review of Claim 2 is barred by the law of the case doctrine. Hansmeier agrees with the Government that the Eighth Circuit's decision on appeal was that the indictment's allegations establish the element of "materiality." Hansmeier further acknowledges that this would ordinarily be the end of the inquiry. Yet, as Hansmeier's Claim 10 notes, the Government resorted to knowing material misstatements of law and fact to the Eighth Circuit. The Eighth Circuit specifically relied on the Government's knowing material misstatements of law and fact when it found "materiality," based in significant part on the Government's misrepresentation that courts started sanctioning Hansmeier and dismissing his cases once they learned about Hansmeier's use of Olan Mills-style investigative methods and Hansmeier's financial involvement in the cases. In Claim 2, Hansmeier challenged the Government to identify a single judicial decision in which the foregoing happened, and requested that the Court take judicial notice of the Government's failure to do so. In its response, the Government was unable to identify a single judicial decision in which the events that the Eighth Circuit referenced actually happened. Under the definition of fraud that the Government has advanced in this case, prosecutors defrauded the Eighth Circuit and Hansmeier in order to defend Hansmeier's conviction.

The law of the case doctrine is "prudential rather than jurisdictional...." Castellanos, 608 F.3d at 1015. When one party resorts to fraud to obtain a judicial result, courts are not only empowered but obligated to unwind the fraud and provide justice to the injured party. The Court can do so in the case by reaching the merits of Claim 2 and finding in Hansmeier's favor.

Further, the Eighth Circuit did not evaluate whether the indictment established this Court's subject matter jurisdiction. There is no law of the case on this issue.

    B. The Government Has Conceded Claim 2 on the Merits.

The Government's sole response on the merits to Claim 2 is its assertion that Claim 2 is "conclusively contradicted and belied by the factual stipulations in Hansmeier's plea agreement ... and by Hansmeier's testimony under oath at his plea hearing." Resp. at 22. The Government does not cite to and Hansmeier is unaware of a decision holding that jurisdictional and other serious defects in the indictment can be cured by factual stipulations in a plea agreement or testimony at a change of plea hearing. The indictment (or the information, if the indictment is waived) has to establish the Court's subject matter jurisdiction and state an offense. It is well-settled law that parties cannot waive defects in subject matter jurisdiction. Moreover, the sufficiency of Hansmeier's factual stipulations and testimony under oath at his plea hearing are challenged in Claim 5, not in Claim 2.

The Court should treat the Government's failure to present facts or argument in rebuttal to Claim 2 as a concession on the merits to Claim 2. The Government would suffer no prejudice if the Court did so because the Government has no plausible defense on the merits. Hansmeier's Claim 2 rests on the non-controversial proposition that a misstatement or omission cannot be said to be material to a judicial officer unless it relates to the legal standard governing whatever issue the officer is being asked to decide. Hansmeier's Claim 2 identifies the various legal standards that governed his interactions with the courts and demonstrates how the misstatements and omissions alleged in the indictment are either unrelated to those legal standards or based on demonstrable misapprehensions of the law of copyright enforcement. This is true, at a minimum, with respect to the first legal strategy described in the Eighth Circuit's opinion.

The Government has no rebuttal to Hansmeier's straightforward showing because there is no plausible rebuttal that can be made.

The Government has defaulted on Claim 2. The Court should grant Hansmeier his requested relief.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0003F - No Property
DATE: 04/15/2022 08:17:05 AM

CLAIM 3 - The Indictment Affirmatively Pleads the Government out of the "Property" Element of the Charging Statues.

The indictment is defective because it affirmatively pleads the Government out of the "property" essential element of the charging statutes. In its response to Claim 3, the Government agrees with Hansmeier's assertion that a scheme to target property in the hands of the victim is an essential element of the charging statutes, but it argues that Claim 3 is procedurally barred and that the allegations in the indictment were consistent with a showing of such a scheme. These arguments fail.

    A. Claim 3 is Cognizable in a 2255 Proceeding.

Among the claims that are cognizable in a 2255 proceeding are claims that the court lacked jurisdiction or that the "indictment affirmatively shows on its face that no federal offense was committed." United States v. Houser, 508 F.2d 509, 517 (8th Cir. 1974).

      1. Claim 3 is Cognizable on 2255 Because it is Jurisdictional.

Claim 3 is cognizable because it is jurisdictional in nature. The Eleventh Circuit's decision in United States v. Peter, 310 F.3d 709 (11th Cir. 2002) is instructive. In Peter, the defendant pled guilty to a charge of conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act based on predicate acts of mail fraud, arising from the defendant's applications for state alcoholic beverage licenses. After defendant had completed his sentence, including supervised release, Cleveland v. United States was decided by the U.S. Supreme Court. Based on the Cleveland, the acts forming the basis for the defendant's guilty plea, the license applications, did not constitute the "property" essential element of the charging statutes. The defendant filed a petition for a writ of error coram nobis. The government conceded that the defendant's license applications did not constitute mail fraud, but argued that defendant had procedurally defaulted on his claim when he abandoned his pretrial challenges, pled guilty and declined to appeal. The Eleventh Circuit held that the issue was jurisdictional and could not be waived.

Here, the indictment affirmatively alleges a scheme in which Hansmeier would fraudulently obtain court discovery orders. This puts the allegations in the indictment outside the scope of the "property" element of the charging statutes and creates a jurisdictional issue. As in Peter, the problem is not that the indictment leaves unanswered a question as to whether evidence would show that Hansmeier's conduct encompassed a particular fact or element. Rather it is that the Government affirmatively alleged a specific course of conduct that is outside the reach of the fraud statutes.

Since a jurisdictional error implicates a court's power to adjudicate the matter before it, it can never be waived by the parties. Hansmeier's 2255 motion signaled that Claim 3 was raising a jurisdictional issue, but the Government offered no specific rebuttal argument on the issue of jurisdiction, notwithstanding that the Government bears the burden of establishing the Court's subject matter jurisdiction.

Claim 3 is cognizable because it is jurisdictional in nature.

      2. Claim 3 is Cognizable and it was Properly Preserved.

Even if Claim 3 is not jurisdictional, it is nevertheless cognizable because Claim 3 argues that the "indictment affirmatively shows that no federal offense was committed." Houser, 508 F.2d at 517. Further, the claim was properly preserved. Hansmeier challenged the sufficiency of the indictment via his pretrial motion to dismiss, he entered into a conditional plea agreement which preserved his right to present post-conviction challenges to the sufficiency of the indictment and he challenged the sufficiency of the indictment in his appeal.

Claim 3 is cognizable and it was properly preserved.

      3. To the Extent That Claim 3 is not Cognizable, Then Hansmeier Received Ineffective Assistance of Counsel.

Hansmeier believes that Claim 3 is cognizable in his 2255 motion. To the extent Hansmeier is wrong, then Hansmeier was denied the effective assistance of counsel. Hansmeier agreed to change his plea and approve the appellate briefs based on his counsel's representations that the issues raised in Claim 3 would be cognizable for post-conviction review. Hansmeier would

----------------------------------------------------------------------------------------------------

have gone to trial if changing his plea waived his right to present the issues raised in Claim 3 and would have modified the appellate briefs as well. While Hansmeier believes that his counsel properly preserved the issues raised in Claim 3 for review on 2255, to the extent that Hansmeier is wrong, then he was deprived of his Sixth Amendment right to the effective assistance of counsel.

    4. The Law of the Case Doctrine Does Not Apply to Claim 3.

The Government argues that the Court's review of Claim 3 is barred by the law of the case doctrine. Yet, in its decision, the Eighth Circuit did not reach the issues in Claim 3. The Government claims the Eighth Circuit did, noting the Eighth Circuit's reference to United States v. Blumeyer. But Blumeyer is a decision that rejected "convergence"---i.e., the requirement that the misrepresentations and omissions at the heart of a scheme to defraud must be made directly to the victim of the scheme---as a requirement of a valid scheme to defraud. Hansmeier's "property" argument is entirely distinct from a convergence argument. Hansmeier's property argument, as is more fully discussed below, is that a scheme to defraud the courts does not target property in the hands of the courts. The Court should not let itself be confused by the Government's misreference to Blumeyer. The Government does not point to anything else other than Blumeyer in support of its assertion that this issue has been decided. A careful review of the Eighth Circuit's opinion reveals an absence of analysis of the "property" issue.

For the law of the case doctrine to have any application, the Eighth Circuit must have "actually decided the specific ... issue." Nyffler Const. Inc. v. Sec'y of Labor, 760 F.3d 837, 842 (8th Cir. 2014). In this vein, the Eighth Circuit has "refused to apply the doctrine where a decision fails to provide sufficient directness and clarity to establish the settled expectations of the parties necessary for the subsequent application of the law of the case doctrine." Id. Because the Eighth Circuit's decision does not discuss, much less decide, the issues presented in Claim 3, the law of the case doctrine has no application to this 2255. See id. See also United States v. Castellanos, 608 F.3d 1010, 1015 (8th Cir. 2010) (holding that a district court had power to decide issues left open by mandate).

Further, the law of the case doctrine is "prudential rather than jurisdictional...." Castellanos, 608 F.3d at 1015. Even if the Eighth Circuit had decided the issue presented in Claim 3, the Court would properly exercise its discretion to decline to apply the doctrine. As Hansmeier discusses in Claim 10, prosecutors knowingly used material misrepresentations and omissions to obtain and defend the conviction. It would be a manifest injustice to allow prosecutors to profit from such conduct.

Finally, the Eighth Circuit did not evaluate whether the indictment established this Court's subject matter jurisdiction. There is no law of the case on this issue.

    B. Claim 3 Should Succeed on the Merits.

The Supreme Court's decision in Kelly is fatal to the Government's theory of fraud. In Kelly, the Court revitalized the principle that a valid scheme to defraud must have as its object property in the hands of the victims. Hansmeier's Claim 3 demonstrated why judges (and not the downloaders) are the only plausible "victims" of the scheme alleged in the indictment. The reason is that the downloaders were not cheated out of anything. By visiting the Pirate Bay and downloading Hansmeier's copyrighted works, the downloaders put themselves in a position where Hansmeier could sue them. Once Hansmeier sued them, the downloaders faced a high degree of pressure based on the availability of up to $150,000 in statutory damages per infringed work, the expense of defending against a federal intellectual property infringement lawsuit and the embarrassment associated with accusations of stealing pornography. According to the indictment, the downloaders paid Hansmeier money to escape those claims and received everything they paid for in terms of dismissal and confidentiality. Under Jain and the other authorities cited in Claim 1, the downloaders cannot plausibly be characterized as victims. The Government seems to understand this point; the indictment consistently accuses Hansmeier of "exorting" the downloaders, to be contrasted with defrauding them. It should not need to be said that extortion and fraud are two different crimes with no overlap between them.

The only other possible victims of Hansmeier's scheme were the judges. But even if they can be characterized as victims, the judges did not part with property. Instead, all they parted with was an exercise of their power, which under Cleveland and Kelly runs outside the "property" requirement of mail and wire fraud. Notwithstanding that this argument is the crux of Claim 3, the Government's response fails to challenge it.

The Court should treat this argument as conceded and grant Hansmeier the relief he seeks in Claim 3.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0004F - Litigation is Not Fraud
DATE: 04/14/2022 03:23:41 PM

CLAIM 4 - The Indictment Affirmatively Pleads the Government out of the Charging Statutes Because Litigation (Even Fraudulent Litigation) Falls Outside the Scope of the Charging Statutes

The allegations in the indictment fall outside the scope of the charging statutes because they are nothing more (and quite a bit less, in the case of the first scheme) than allegations of fraudulent litigation activity. No court should ever hold that routine litigation activity---even routine litigation activity that will support allegations of sharp dealing---violates the federal fraud statutes. And, however distasteful the idea of fraudulent litigation activity might be, it is not federal mail or wire fraud, as the overwhelming weight of authority holds. The Government disagrees, but offers no valid reason for doing so.

   A. Claim 4 is Properly Before the Court.

The Government appears to agree that Claim 4 is properly before the Court.

   B. Claim 4 Should Succeed on the Merits.

Claim 4 is meritorious because no court has ever held that routine litigation activity violates the federal fraud statutes---even if it is associated with allegations of dishonesty. Moreover, the "overwhelming weight of authority" holds that even allegations of fraudulent litigation activity fall outside the scope of the federal fraud statutes. The Government's response resists these conclusions by repeating the points made in the Magistrate Judge's Report and Recommendation, discussing the case that is the Report and Recommendation's cornerstone---i.e., the Second Circuit's decision in United States v. Eisen and attempting to distinguish the Second Circuit's recent decision in Kim v. Kimm. Hansmeier addresses the Government's arguments with respect to the two litigation strategies alleged in the indictment.

   1. Neither the Report and Recommendation Nor Eisen Provide Any Support for the Government's Attempt to Criminalize "Copyright Trolling"---a Method of Copyright Enforcement That is Directly Supported by Eighth Circuit Precedent, the Uniform Decisions of District Courts Nationwide and Leading Learned Treatises.

The first litigation strategy alleged in the indictment is a scheme to "copyright troll." Yet, as is exhaustively presented in Hansmeier's 2255 motion, "copyright trolling" is directly supported by Eighth Circuit precedent, the uniform decisions of federal district courts nationwide and leading learned treatises, the last of which describe "copyright trolling" and the investigative methods supporting it as "routine" and "providing no defense."

The Report and Recommendation did not separate Hansmeier's litigation into two different strategies; rather, it treated Hansmeier's litigation as a single blob, so the decision is of limited analytical relevance to the first litigation strategy. The Second Circuit's decision in Eisen is also of limited relevance; in Eisen the allegation was that attorneys just fabricated personal injury claims that they would submit to insurance companies for payment. That's not the Government's allegation with respect to the first litigation strategy; there is no claim that Hansmeier just made up the fact of people downloading his copyrighted works from the Pirate Bay.

The only other issue is the Government's allegations of dishonesty with respect to disclosures of "copyright trolling" investigative techniques and around the issue of "who owns the plaintiff." But as is shown in Hansmeier's other claims, the Government botched the law with respect to "copyright trolling" and the issue of "who owns the plaintiff" had nothing to do with the merits of Hansmeier's claims; one can surmise that the only reason the Government has ever paid attention to this issue is because Magistrate Judge Noel's criminal referral to the U.S. Attorney for the District of Minnesota focused on it exclusively.

The Eighth Circuit did not reach the issue, but if it had then it is difficult to see how they would have allowed the Government's claims regarding the first litigation strategy to survive. The civil justice system would meet its demise if prosecutors and disgruntled counterparties could so easily criminalize litigation activity. See, e.g., Edelson PC v. The Bandas Law Firm PC, No. 16 C 11057, 2018 U.S. Dist. LEXIS 19423, **17-36 (N.D. Ill. Feb. 6, 2018) (rejecting expansion of Hobbs Act and federal fraud statutes to allegations of fraudulent litigation activity based on concerns that criminalizing even fraudulent litigation would destory the civil justice system).

To Hansmeier's knowledge, no judge in the history of the United States has ever come remotely close to holding that allegations of routine, though objectionable to some, litigation. Some dishonestly could be alleged in virtually every civil

-----------------------------------------------------------------------------------------------

litigation; allowing mere dishonesty to come within the scope of the fraud statutes would result in every attorney being sent to prison, as Judge Kelly observed at oral argument in the appeal. At a minimum, the Court should hold that the first scheme, i.e. the scheme to "copyright troll," falls outside the scope of the charging statutes.

    2. Decisions That Post-Date the Report and Recommendation Call The Decision Into Question.

The so-called "hacker" litigation strategy presents a clean look at the issue of whether allegations of fraudulent litigation come within the scope of the mail and wire fraud statutes. The Report and Recommendation's analysis of the issue can legitimately be questioned in light of decisions that postdate its issuance. These decisions include the Second Circuit's decision in Kim v. Kimm, Judge Menendez's reversal of her position in Kunzer v. Hiniker, and numerous decisions which distinguish the scheme to defraud in Eisen from what is at issue in this case.

The Government's response unsurprisingly boils down to its cheerleading of the Report and Recommendation and the Second Circuit's decision in Eisen and its attempt to distinguish Kim v. Kimm. When the Court assesses the Government's position it should keep three thoughts in mind. The first thought is that Supreme Court precedent dictates that statutes must be intepreted consistently across the civil and criminal contexts. Leocal v. Ashcroft, 543 U.S. 1, 9 n.8 (2004). This means that Kim v. Kimm and the other authorities cited in Claim 4 (and the authorities citied within those authorities) cannot be distinguished simply because they arose in the civil context; whether litigation activity is mail-wire fraud for the sake of being a predicate act for a civil RICO claim is the same question as whether it is mail-wire fraud for the purpose of a criminal prosecution. Thus, Judge Menendez's decision in Kunzer is a direct reversal of the conclusion reached in her Report and Recommendation; it is telling that Judge Menendez reversed her position once she was confronted with the civil litigation fallout of allowing the mail and wire fraud statutes to reach allegations of fraudulent litigation conduct.

The second thought is that all of the cases cited in the Report and Recommendation as examples of courts allowing the charging statutes to reach allegations of fraudulent conduct are actually examples of cases in which litigation conduct was at most incidental to a larger scheme to defraud. To use Eisen as an example, the fraud in Eisen was not attorneys bringing frivolous claims. As district courts within the Second Circuit have noted, the fraud in Eisen was entirely external to litigation. Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq., 758 F. Supp. 2d 153, 176 (E.D.N.Y. 2010). That is not the case here. In this case, all the indictment alleges with respect to Hansmeier's so-called "hacker" litigation strategy is that Hansmeier brought frivolous so-called "hacker" claims and extorted settlements from the defendants to those cases. If this actually happened, then this conduct would be reprehensible. But it would not be fraud, according to all of the authorities cited in Claim 4. None of the authorities cited in the Report and Recommendation or the Government's response concern pure litigation activity---albeit fraudulent litigation activity---as the indictment does with respect to the second scheme; to Hansmeier's knowledge, this Court would be the first court to make such a holding.

The third (and final) thought is the sincere warnings from the hundreds of federal judges who have categorically rejected the application of the fraud statutes to allegations of even fraudulent litigation activity. Court after court has warned that allowing the charging statutes to cover allegations of fraudulent litigation activity will destory the courts. There will be no finality as any losing party can challenge a judgment on the grounds that it was the product of fraud. Losing parties will be subject to a follow on suit for fraud; as court after court has observed, a loss would provide the prima facie basis for allegations that the losing party brought meritless claims. Then there is the overhang of criminal prosecution. Once a principle is established---in this case, the principle that litigation easily equals fraud---it will be exploited and future politically/financially motivated prosecutions will occur. It will not take many more of these to cast a significant chill on litigation activity in the District of Minnesota. And it is already happening. How many copyright enforcement claims have been brought in the District of Minnesota in the past five years? Did Minnesotans suddenly stop pirating copyrighted works? And if the Court believes that this problem is limited to copyright claims, then it should think again. The Government has also threatened Hansmeier with criminal prosecution based on Hansmeier's use of so-called "serial" ADA litigants, notwithstanding that quite literally every circut court of appeals to consider the issue has held that that serial litigants are perfectly entitled to bring claims.

The Government has offered the Court no persuasive reason to depart from the overwhelming weight of authority.

The Court should grant Hansmeier the relief he seeks in Claim 4.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

----------------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0005F - Insufficient Plea
DATE: 04/16/2022 03:21:30 PM

CLAIM 5 - The Facts Associated With Hansmeier's Change of Plea Failed to Establish This Court's Jurisdiction and Affirmatively Showed That no Offense Had Been Committed

The facts established in connection with Hansmeier's change of plea failed to establish this Court's jurisdiction and  affirmatively showed that no offense had been committed.

   A. Claim 5 is Properly Before the Court.

The sole procedural defense the Government raises with respect to Claim 5 is that it is barred by the law of the case doctrine. See Gov.'t Resp. at 27 ("Hansmeier's claim is not cognizable ... because it is based upon his argument that the Indictment should have been dismissed, which he lost in the Eighth Circuit."). Yet, the Eighth Circuit did not decide whether the facts associated with the change of plea hearing established the Court's jurisdiction or otherwise showed that an offense was committed.

The Government's law of the case defense ignores the point that the facts established at the change of plea hearing were only a subset of the facts alleged in the indictment. Thus, the Eighth Circuit's analysis of the indictment is not conclusive with respect to Claim 5. For the law of the case doctrine to have any application, the Eighth Circuit must have "actually decided the specific ... issue." Nyffler Const. Inc. v. Sec'y of Labor, 760 F.3d 837, 842 (8th Cir. 2014).

Moreover, the Eighth Circuit's opinion contains no discussion of whether the facts established at the change of plea hearing established this Court's jurisdiction or otherwise showed than an offense was committed. The law of the case doctrine has no application to Claim 5.

Hansmeier believes that Claim 5 is cognizable in his 2255 motion. To the extent that Hansmeier is wrong, then Hansmeier was denied the effective assistance of counsel. Hansmeier agreed to change his plea and approve the appellate briefs based on his counsel's representations that the issues raised in Claim 5 would be cognizable for post-conviction review. Hansmeier would have gone to trial if changing his plea waived his right to present the issues raised in Claim 5 and would have modified the appellate briefs as well. While Hansmeier believes that his counsel properly preserved the issues raised in Claim 5 for review on 2255, to the extent that Hansmeier is wrong, then he was deprived of his Sixth Amendment right to the effective assistance of counsel.

   B. Claim 5 Should Succeed on the Merits.

Claim 5 should succeed on the merits for the reasons stated in Hansmeier's 2255 motion. The Government disagrees, but the only argument that the Government makes is that "[T]he indictment in this case is solid, and so, therefore, is the factual basis." Gov't. Resp. at 27. The Government's response confuses the facts in the indictment with the facts established at the change of plea hearing. Because there were fewer facts established at the change of plea hearing than were alleged in the indictment, it is not sufficient for the Government to merely assert that the indictment was sufficient. Just as in a civil proceeding, where a plaintiff's burden of proof becomes more onerous from the pleading stage through trial, so too must the Government meet an increasingly demanding burden at every stage of a criminal proceeding. In a civil proceeding, for example, it would not be sufficient at the summary judgment stage to merely assert that the complaint adequately stated a claim. The same principle applies in criminal proceedings. The Government's failure to do more than argue that the indictment is sufficient should be treated as a waiver of any opposition to Claim 5.

The only other information contained in the Government's response to Claim 5 is a series of nine bullet points containing the Government's characterization of facts established at the change of plea hearing. A review of these facts reveals glaring deficiencies.

First, none of the facts address the "essence of a scheme to defraud," namely, an "intent to harm." United States v. Jain, 93 F.3d 943 (8th Cir. 1987). Entirely absent from these facts is any hint that Hansmeier intended to give the settling defendants less than what he promised them.

Second, the facts established at the change of plea hearing show that the litigation strategies in this case are outside the scope of the materiality boundary of the charging statutes. Hansmeier's admissions regarding materiality are not binding on the Court

--------------------------------------------------------------------------------------------------

because courts are not bound by the parties' concessions of law. The facts established at the change of plea hearing (at least with respect to the first litigation strategy) show that Hansmeier brought ordinary copyright enforcement claims and made representations that were consistent with the law of copyright enforcement and the disclosure requirements under the Federal Rules of Civil Procedure. Hansmeier's representations and omissions thus could not colorably be characterized as material.

Third, the facts established at the change of plea hearing characterized the courts as victims, thus putting the litigation strategies established at the change of plea hearing outside the scope of the "property" element of the charging statutes. The courts did not part with property in the schemes because a government official's exercise of power is not a property interest under Kelly and Cleveland.

Fourth, the facts established at the change of plea hearing showed that Hansmeier was bringing routine copyright enforcement litigation (first litigation strategy) and meritless so-called "hacking" claims (second litigation strategy). No court has ever held that meritorious litigation falls within the scope of the charging statutes and the overwhelming weight of authority rejects efforts to characterize meritless litigation as violative of the charging statutes---because to do otherwise would chill access to the courts, destroy finality and open the floodgates to retaliatory fraud claims. The facts established at the change of plea hearing offer the Court no reason to break new ground on this issue.

For all of these reasons, the Court should grant Hansmeier his requested relief on Claim 5.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0006F - Noerr Pennington Doctrine
DATE: 04/16/2022 07:55:18 PM

CLAIM 6 - The Fraud Charges Violate the Noerr-Pennington Doctrine

The Eighth Circuit interpreted the indictment as alleging two litigation strategies. If the Court decides that it must reach the First Amendment issue, then it is constrained to conclude that, at a minimum, the Challenged Statutes violate the First Amendment as applied to the first litigation strategy.

As a threshold point, the Government notes that Hansmeier's First Amendment claims in Hansmeier v. MacLaughlin, 21-cv-1167 (JRT/LIB) (D. Minn.) were recently dismissed with prejudice. Though the Government does not specify why it is bringing this information to the Court's intention, it is safe to presume that the Government is trying to cast doubt on the validity of Hansmeier's constitutional arguments in this 2255 motion. A few points. First, the claims in these cases were dismissed with prejudice because the Government defendants managed to have Hansmeier subjected to administrative detention and separated from his legal materials. To learn more about this, the Court might review Hansmeier's claims in the amended complaint in Hansmeier v. Fikes, No. 21-cv-1979 (PAM/DTS) (D. Minn.). Second, the claims in these cases were dismissed on res judicata grounds and not on grounds that would bear on the merits of Hansmeier's claims in this 2255 motion. Finally, the dismissals are currently the subject of a Rule 59 motion---and Hansmeier may (or may not) obtain relief with respect to that motion.

    A. Claim 6 is Properly Before the Court.

The sole procedural defense raised in the Government's response is its claim that the Eighth Circuit "did not reverse or criticize this Court's rejection of Hansmeier's petition clause argument on direct appeal." Therefore, according to the Government, "Hansmeier cannot relitigate the issue in this Section 2255 motion."

Hansmeier is not relitigating anything. As was set forth in Hansmeier's Claim 6, the Court interpreted the indictment as alleging a single litigation strategy and concluded that, when viewed as a blob, the indictment alleged sham litigation. The Eighth Circuit's opinion commands the Court to perform this analysis with respect to each litigation strategy separately. The opinion did not reach the First Amendment issue, and thus the law of the case doctrine has no application. Rather, this is an issue that the Court is able to review in light of the Eighth Circuit's clarification. Claim 6 is thus properly before the Court.

At a minimum, the First Amendment concerns asserted in Claim 6 were invoked by the courts cited in Claim 4---a claim that is uncontestedly before the Court and the Court can reach the issue through Claim 4.

Claim 6 is properly before the Court.

    B. Claim 6 Should Succeed on the Merits.

Claim 6 should succeed on the merits for the reasons set forth in Hansmeier's 2255 motion. The Government argues otherwise, discussing the Ninth Circuit's decision in United States v. Koziol, 993 F.3d 1160, 1171 (9th Cir. 2021) and claiming that the sham exception is met in this case. Finally, the Government's response fails to challenge and therefore concedes Hansmeier's BE&K analysis.

    1. The Ninth Circuit's Decision in Koziol is Distinguishable and Conflicts With Eighth Circuit Precedent, Not to Mention the Overwhelming Weight of Authority.

The Ninth Circuit's decision in Koziol is distinguishable and conflicts with Eighth Circuit precedent, not to mention the overwhelming weight of authority. In Koziol, the government charged the defendant with extortion based on allegations that the defendant went around threatening to sue someone for entirely invented claims. The Ninth Circuit rejected the defendant's attempt to invoke Noerr-Pennington immunity, reasoning that the defendant's conduct fell within the sham exception to immunity.

There are two obvious differences between Koziol and Hansmeier's first litigation strategy. First, Koziol merely threatened to sue someone. In contrast, Hansmeier actually sued the downloaders and only then tried to settle the claims. This is a material difference because there is a question about whether presuit settlement demands are petitioning activity, as the Ninth Circuit's decision in Sosa v. DirectTV suggests. Once a case is initiated, there can be no serious question that there is petitioning activity

-------------------------------------------------------------------------------------------------

and settlement demands made thereafter are squarely within the breathing space of petitioning activity. Indeed, all of the misstatements and omissions within the scope of the Eighth Circuit's description of the first litigation strategy occurred in litigation documents---e.g., complaints and motions for discovery---which was not true in Koziol.

Second, unlike Koziol, Hansmeier had a prima facie claim against every single one of his defendants---a point that the indictment concedes. The claims in the first litigation strategy cannot be said to fall within the sham exception to petitioning immunity; the sham exception requires a showing of objective baselessness and subjective bad faith. The act of bringing valid claims for which there was no defense, according to leading learned treatises, cannot in good faith be characterized as a sham.

Based on these differences alone, the Court can disregard Koizol. But the Court can and should go further by observing that Koizol directly conflicts with the Eighth Circuit's decision in I.S. Joseph---a point that the Government's response memorandum conceals. In I.S. Joseph, the Eighth Circuit stated that the extortion statutes do not cover baseless threats of litigation because we would destroy the civil justice system if we extended federal criminal statutes to cover allegations of baseless litigation. In addition to conflicting with Eighth Circuit precedent, Koizol conflicts with the overwhelming weight of authority. Aggressive defendants (and prosecutors, at least in this case) have cited to Koizol in effort to get federal district court judges to greenlight efforts to criminalize allegations of baseless litigation. It appears that district court judges outside of the Ninth Circuit are uniformly rejecting such efforts. This Court is bound by precedent to do the same. And, as a reminder, it is not sufficient to distinguish Eighth Circuit precedent and the overwhelming weight of authority on the grounds that these decisions arose in civil matters. As the Supreme Court has admonished, statutes must be interpreted identically across the civil and criminal contexts.

    2. The Sham Exception Does Not Apply in This Case.

The claims in the first litigation strategy cannot be said to all within the sham exception to petitioning immunity. The act of bringing valid claims for which there is no defense, according to learned legal treatises, cannot plausibly be characterized as a sham, according to the legal standard governing the analysis.

    3. The Government's Response Does Not Challenge and Therefore Concedes Hansmeier's BK&E Analysis.

Remarkably, the Government's response does not challenge and therefore concedes Hansmeier's BK&E analysis. In Claim 6, Hansmeier performed a thorough application of the Supreme Court's Noerr-Pennington immunity framework. Hansmeier's analysis concluded that the Charging Statutes burden Hansmeier's petitioning activities, that these burdens run afoul of the Petition Clause to the First Amendment and that to the extent the Charging Statutes clearly proscribe the litigation activity in the first litigation strategy, then the Charging Statutes cannot be applied to the petitioning activity in the first litigation strategy consistently with the Constitution. The Government's response is entirely silent as to these elements of the Noerr-Pennington immunity analysis. The Court should treat the Government as conceding Hansmeier's BK&E analysis.

The Court should grant Hansmeier the relief he seeks in Claim 6.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0007F - First Amendment
DATE: 04/16/2022 07:56:51 PM

Claim 7 - The Challenged Statutes Violate the First Amendment as Applied to Hansmeier

The Eighth Circuit interpreted the indictment as alleging two litigation strategies. If the Court is constrained to reach the issue, then it should find that the indictment and facts established at the change of plea hearing violate the First Amendment as applied to, at a minimum, the first litigation strategy. The Government argues that Claim 7 is procedurally defaulted and failed under United States v. Alvarez, 132 S.Ct. 2537 (2012). The Government's arguments fail.

    A. Claim 7 is Properly Before the Court.

Claim 7 is properly before the Court. The Government argues otherwise, claiming that Hansmeier failed to raise these issues before this Court or the Eighth Circuit. The Government's procedural default argument rests on an incomplete characterization of Claim 7.

Claim 7 argues that the charging statutes violate the First Amendment's petitioning, speech and association clauses. The Government characterizes Claim 7 as arising exclusively under the speech clause. Gov't. Resp. at 31. The Government has thus waived any procedural defense to Claim 7's petitioning and association challenges.

Practically speaking, Hansmeier's petitioning challenge (which, it should be noted, was squarely raised throughout this case, as the Government concedes in its response to Claim 6) subsumes his speech and association challenges. The Court may view Hansmeier's First Amendment challenge through the lens of a petition clause challenge.

Alternatively, the First Amendment concerns raised in Claim 7 were invoked by the courts associated with the judicial decisions in Claim 4, which is uncontested before the Court. The Court can reach the First Amendment issues in this claim through Claim 4.

    B. Claim 7 Should Succeed on the Merits.

In Claim 7, Hansmeier argued that the Challenged Statutes are subject to strict scrutiny and that they cannot survive strict scrutiny because the government lacks a compelling interest in applying the Challenged Statutes to the first litigation strategy described in the Eighth Circuit's opinion and that the Challenged Statutes are not narrowly tailored to achieve whatever interest the Government might put forth. The Government's response does not join issue on either of these points and the argument should be treated as conceded.

Instead, the Government argues that Hansmeier's petitioning "does not enjoy First Amendment protection because it was integral to criminal conduct, and because it was speech amounting to fraud." Gov't. Resp. at 32 (citing United States v. Alvarez, 132 S.Ct. 2537, 2544 (2012)). The Government's argument is frivolous, as its cited case shows. In Alvarez, the issue was whether a statute criminalizing lying about winning the Medal of Honor could withstand First Amendment scrutiny. The Supreme Court stuck the statute down.

Though the Court held that the "Government's interest in protecting the integrity of the Congressional Medal of Honor is beyond question," the Court noted that the Government's chosen restriction on speech must be "actually necessary to achieve its interest." The Court held that the Government could not meet its burden under this test because counterspeech could suffice to achieve the Government's stated interest. As the Court noted, "the remedy for speech that is false is speech that is true." The Court stated that the American people do not need the assistance of a Government prosecution to express their high regard for the special place that military heroes hold in America's tradition and that only a weak society needs Government protection or intervention before it pursues its resolve to preserve the truth. Finally, the Court noted that one of the costs of the First Amendment is that it protects the speech the United States Supreme Court detests as well as the speech the Court embraces.

All of these principles apply with equal force to the first litigation strategy (and the second as well). Here, the Government has not shown why criminal prosecutions are necessary to ensure valid petitioning activity. The multiple existing protections of the judicial process, including the adversary system, appellate review, judicial oversight, the profession's self-regulation the government's right to intervene and the perjury statutes are all more-than-adequate to protect the integrity of the judicial process. As the Court stated in Alvarez, the American people do not need the assistance of the U.S. Attorney for the District of Minnesota to patrol the civil dockets and start prosecuting litigants; if anything, the American people need the U.S. Attorney for

----------------------------------------------------------------------------------------------------

the District of Minnesota to do the opposite. Left unchecked, this application of the Challenged Statutes will destroy the civil litigation system. As this case demonstrates, grave errors are possible.

The Court should grant Hansmeier the relief he seeks in Claim 7.

TRULINCS 20953041 - HANSMEIER, PAUL R – Unit: SST-K-C

---------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0008F - Due Process
DATE: 04/16/2022 12:07:18 PM

Claim 8: The Challenged Statutes Violate the Fifth Amendment as Applied to Hansmeier

The Eighth Circuit interpreted the indictment as alleging two litigation strategies. If the court is constrained to reach the issue, then it should, at a minimum, find that the indictment and facts established at the change of plea hearing violate the Fifth Amendment as applied to the first litigation strategy. The Government argues that Claim 8 is procedurally defaulted and otherwise attempts to recharacterize Hansmeier's claim and then argue that the recharacterized claim fails.

As a housekeeping matter, the Government's response expresses confusion over what Hansmeier means by the Challenged Statutes. When Hansmeier refers to the Challenged Statutes, he is referring to the same statutes he challenged in his motion to dismiss, objection to the Report and Recommendation, appeal and writ of certiorari to the Supreme Court.

   A. Claim 8 is Properly Before the Court.

The Government argues that Claim 8 is procedurally defaulted because it was not raised in the appeal. The Government has its facts wrong. Hansmeier raised a void for vagueness challenge in his appeal and the Eighth Circuit mentioned it at page 436 of its published opinion ("As Hansmeier notes, the term 'scheme to defraud' initially may seem slightly amorphous.") The claim cannot be said to be procedurally defaulted.

Though Hansmeier's raising of the issue was mentioned in the Eighth Circuit's opinion, Claim 8 is not barred by the law of the case doctrine. The Eighth Circuit's reference to the issue was in passing (or, at best, in dicta) and cannot be said to be a holding that now binds the Court.

In the event that Claim 8 is not properly preserved for review on 2255, then Hansmeier received ineffective assistance of counsel. It was Hansmeier's understanding that the issue was properly raised and preserved at the district court and appellate level. Hansmeier would have taken whatever steps were appropriate to ensure that the issue would be preserved at the 2255 stage to the extent it was not squarely addressed at the appellate level.

   B. Claim 8 Should Succeed on the Merits.

Claim 8 should succeed on the merits for the reasons stated in Hansmeier's 2255 motion. The crux of Hansmeier's void for vagueness challenge is that attorneys and litigants in federal court should be able to rely on the law to determine what must be disclosed at any given point in litigation. Recall the Eighth Circuit's description of the first litigation strategy: the Eighth Circuit described the litigation strategy as pure fraud by omission. Yet, as Hansmeier's Claim 8 shows, Hansmeier was under no legal duty to disclose his investigative techniques or his alleged ownership in plaintiffs under the legal standards governing Hansmeier's interactions with the courts. The civil justice system cannot survive if attorneys and litigants are thrown in prison because a prosecutor decides after the fact that existing legal standards are inadequate for some reason.

The Government does not challenge Hansmeier's application of the Johnson void for vagueness test or even present any argument that is relevant to the prongs of the test used in Johnson and argued in Claim 8. Claim 8 and should therefore be deemed to have conceded it. As for what the Government does do, first the Government argues that Hansmeier's facial challenge should fail. But Hansmeier is not raising a facial challenge, so the Government's first argument can be ignored. The Government's second argument is that the indictment cannot be vague because "both this Court and the Eighth Circuit could interpret and make sense of the indictment." Gov't. Resp. at 33. But Hansmeier's challenge in Claim 8 is to the Challenged Statutes, not the indictment. The Government's second argument can be ignored. Third, the Government argues that this case is completely unlike Olan Mills because Hansmeier did not distribute his works commercially. Not only is this allegation false (the works are available for purchase from the Internet today), but it is legally irrelevant. There is nothing in the Copyright Act that limits copyright protection to operating entities. The Government's third argument can be ignored.

Hansmeier's Claim 8 contains a step-by-step description of copyright enforcement along with the legal standards governing each step. In response, the Government offers a series of misdirected arguments and a request that the Court rewrite the nation's copyright laws even further (by holding that only operating entities are eligible for intellectual property protection). The Court must decline.

The Court should grant Hansmeier the relief he seeks in Claim 8.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0009F - Separation of Powers
DATE: 04/15/2022 02:54:36 PM

CLAIM 9 - As Applied to Hansmeier the Challenged Statutes Impermissibly Intrude Upon Powers Delegated to Congress and the Judiciary.

Hansmeier has provided the Court with several paths for avoiding the Constitutional issue of whether, as applied to Hansmeier, the Challenged Statutes impermissibly intrude upon powers delegated by the Constitution to the legislative and judicial branches of the federal government. If the Court concludes that it must reach the issue, then it should rule that, as applied to Hansmeier, the Challenged Statutes impermissibly intrude upon Congress's copyright power and the Judiciary's power to interpret the law. The Government argues that Claim 9 is procedurally defaulted and is not cognizable in Section 2255 proceedings. As for the merits, the Government argues that Claim 9 is meritless because Olan Mills is distinguishable and because this case unfolded consistently with the separation of powers.

   A. Claim 9 is Properly Before the Court.

Whether Claim 9 is properly before the Court as a standalone claim is unimportant to Hansmeier. At a minimum, the reasoning in Claim 9 is contained in the judicial decisions that form the basis for Claim 4---a claim that is uncontestably properly before the Court.

   B. Claim 9 Should Succeed on the Merits.

Claim 9 should succeed on the the merits. The Government's arguments are beside the point. The Government's attempts to distinguish Olan Mills fail for the reasons already presented and the Government's explanation of how the case unfolded avoids the heart of Hansmeier's argument. In Claim 9, Hansmeier asks the Court to follow the reasoning of other federal courts who have considered whether to allow the charging statutes to cover allegations of fraudulent litigation conduct. These courts have refused to do so because, among other reasons, allowing prosecutors and opposing parties to decide when a claim is meritless would transfer the core judicial function to third parties. We trust judges (and not prosecutors or opposing parties) to determine whether a claim has merit. See, e.g., United States v. Pendergraft, 297 F.3d 1198 (11th Cir. 2002) ("[U]nder our system parties are encouraged to resort to courts for the redress of wrongs and the enforcement of rights." Id. at 1206. Thus, "litigants may be sanctioned for only the most frivolous of actions." And even then, such sanctions "are heavily disfavored." Id. We trust in the "time-tested procedures" of the courts to resolve disputes in litigation by "separating validity from invalidity, honesty from dishonesty." Id.).

Under the Government's theory of judging, judges are only useful insofar as they can serve as witnesses at a trial to advise the jury with information about whether a claim has merit. For all of the reasons set forth in all of the opinions rejecting the application of the charging statutes to allegations of fraudulent litigation conduct, we will not have a civil justice system if politically-motivated prosecutors or self-interested opposing parties are able to usurp the judge's power to determine whether a claim has merit.

The Court should grant Hansmeier the relief he seeks in Claim 9.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

-------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0010 - Fraud
DATE: 04/16/2022 03:26:27 PM

CLAIM 10 - Prosecutors' Knowing Resort to Material Misstatements and Omissions Violated Hansmeier's Constitutional Rights

Hansmeier was convicted of fraud and sentenced to 14 years' imprisonment based on prosecutors' resort to statements that federal district court judges have since called "frivolous," "legally unsupported" and "failing to grasp the fundamentals of copyright law." Harrington v. Aerogelic Ballooning, LLC, No. 18-cv-2023 (D. Colo.). Moreover, prosecutors lied and told the Eighth Circuit that courts began dismissing Hansmeier's claims and sanctioning him once they learned about Hansmeier's investigative methods and financial interest in the outcome of the case; not realizing this statement was a lie, the Eighth Circuit invoked this statement as a basis for its affirmance. It is understandable that the prosecutors in this case, who are not experienced copyright practitioners, may have not understood copyright law very well when they were preparing this case. It is inexcusable, however, that prosecutors continued repeating their lies and resorted to an even deeper well of material lies and omissions---which were made to the Grand Jury, the Magistrate Judge, this Court, U.S. Probation, the Eighth Circuit, Hansmeier's counsel, the public, prospective witnesses (including Magistrate Judge Mayeron, U.S. District Court Judges Chen and Wright and Judge Bransford of the Hennepin County District Court, people who worked with Hansmeier, the press and others)---once they were aware that they were peddling false information. If Hansmeier can be convicted of fraud and sentenced to a 14 year term of imprisonment based on allegations that he failed to provide material information to the courts, then his conviction should just as readily be vacated when it is revealed that prosecutors had to resort to extreme lies and omissions to obtain and defend the conviction---a point that prosecutors do not even challenge.

    A. Claim 10 is Properly Before the Court.

The Government appears to concede that Claim 10 is properly before the Court.

    B. Claim 10 Should Succeed on the Merits.

Claim 10 lays out in extensive detail the catalogue of lies and omissions prosecutors made throughout these proceedings. The overwhelming majority of Hansmeier's allegations go completely unaddressed and should be treated as conceded.

The Government's response focuses exclusively on the issue of whether the Government concealed the Eighth Circuit's decision in Olan Mills from the "Grand Jury, the Magistrate Judge, this Court and the Eighth Circuit." Gov't. Resp. at 36. As an initial matter, this would be enough, under the theory of fraud advanced by the Government in this case, to invalidate these entire proceedings. Recall that Hansmeier is serving a term of imprisonment based on allegations that he failed to disclose facts about his use of Olan Mills-style investigative methods.

Remarkably, the Government does not even challenge Hansmeier's assertion that it was under a duty to disclose Olan Mills to the Grand Jury, the Magistrate Judge, this Court and the Eighth Circuit. Rather, the Government notes that Hansmeier disclosed the case and argues that the "Eighth Circuit is presumably aware of its own precedent." Id. at 36. The Government cites to no authority for the proposition that their duty to disclose conflicting precedent is eliminated by virtue of the actions of the opposing party. Nor does the Government cite to any authority that their duty to disclose conflicting precedent is obviated by their assumption that courts are inherently aware of all of their precedent---a point that, notwithstanding the expertise of learned federal judges, seems pretty unrealistic. The Government seems to miss the overarching point that it was not Hansmeier's job or the Court's duty to stop the Government from committing fraud; rather, it was the Government's duty not to commit fraud.

Finally, the Government argues that neither this Court nor the Eighth Circuit are capable of being misled. Id. at 37. That argument makes no sense because it conflicts with the Government's entire theory of this case, which is that Hansmeier misled this Court and other courts. If the Court is willing to accept the proposition that courts are incapable of being misled, then it should vacate Hansmeier's entire conviction on the grounds of legal impossibility.

The Government's failure to disclose Olan Mills and other conflicting precedent to this Court was prejudicial, as Hansmeier's personal experience teaches. In Wong v. Minnesota Department of Human Services, Hansmeier represented an individual with a disability who had a partial victory/partial loss before a state administrative judge. The individual wanted to appeal the adverse portion of the decision to federal district court instead of Hennepin County District Court, as is usually done, and so Hansmeier did so on his behalf. The State of Minnesota moved to dismiss the federal action on the grounds that federal district courts lack subject matter jurisdiction over appeals of state administrative agency decisions. Hansmeier opposed the motion to dismiss, noting that the Supreme Court had squarely held in Chicago v. International Board of Surgeons that federal district courts have

subject matter jurisdiction over such claims. Despite Hansmeier's citation to the controlling precedent, the State of Minnesota maintained its position (and therefore committed mail and wire fraud, according to the Government's theory of fraud in this case) that the federal district court lacked subject matter jurisdiction. The district court, Judge Frank, relied on the State of Minnesota's representations and dismissed the case. Hansmeier's client appealed. At oral argument, the Eighth Circuit pressed the State of Minnesota's attorney over how it was possible, in light of the Chicago decision, that the district court lacked subject matter jurisdiction. Unlike counsel for the Government, counsel for the State of Minnesota told the truth and conceded error. Once the attorney for the State of Minnesota told the truth, the Eighth Circuit reversed. What that lesson taught Hansmeier is that judges place significant trust in the government to tell the truth and when the government lies, as counsel for the Government did repeatedly in this case, those lies can greatly prejudice the proceedings, as they did in this case.

The Court should not let the Government's focus on Olan Mills to obscure the many lies and omissions alleged in Hansmeier's 2255 motion that have gone entirely unaddressed. The Government does not challenge Hansmeier's assertions that:

-The indictment erroneously claimed that Hansmeier's copyright infringement claims were meritless;

-Paragraphs 17, 20, 21, 22, 23 and 24 of the indictment contained the material misstatements specified in Hansmeier's 2255 motion and were never corrected;

-Prosecutors concealed the Eighth Circuit's decision in Olan Mills, notwithstanding their professional duty to disclose conflicting precedent;

-Prosecutors lied to the Magistrate Judge, this Court and the Eighth Circuit by stating that courts dismissed Hansmeier's copyright enforcement cases and sanctioned him once they learned about Hansmeier's use of Olan Mills investigative tactics and his "control and ownership" of his clients;

-That the Magistrate Judge's report and recommendation was heavily influenced by prosecutors' misstatements;

-Prosecutors repeated their lies about the validity of Hansmeier's copyright enforcement cases to prospective witnesses, including attorneys who had worked with Hansmeier, federal district court judges whom prosecutors were grooming as witnesses and or their individuals who had been associated with Hansmeier during the time when he practiced copyright law;

-Prosecutors repeatedly lied to the Eighth Circuit by describing Hansmeier's cases as meritless based on his use of Olan Mills-style investigative tactics;

-Prosecutors were on actual notice that they were lying via misstatements and omissions to the Eighth Circuit by virtue of the letter Hansmeier sent them and filed with the Eighth Circuit;

-The Eighth Circuit relied on prosecutors' misstatements and omissions and specifically quoted the misstatements in support of its affirmance;

-The Grand Jury was defrauded into believing that Hansmeier's cases were meritless and that, based on the experiences of witnesses to the Grand Jury, the false allegation that Hansmeier's cases were meritless was material to the Grand Jury's decision whether to return an indictment;

-Prosecutors defrauded the Court into believing that Hansmeier's copyright enforcement cases were subject to the sham exception to the Noerr-Pennington immunity;

-Prosecutors made fraudulent malpresentations about the merit of Hansmeier's copyright enforcement cases to attorney Tim Anderson, who had to engage in the kabuki exercise of expressing his "deep shame" for being involved in meritless copyright enforcement cases, lest he too be subject to criminal prosecution;

-Prosecutors' resort to lies and witness intimidation deprived Hansmeier of access to witnesses;

-Prosecutors lied to U.S. Probation and as a result, Rocky DeYoung falsely believed that Hansmeier's copyright enforcement cases were meritless, when in fact Hansmeier's claims were "routine" copyright enforcement cases;

-Prosecutors' lies infected the Presentence Investigation Report and rendered it inaccurate;

-Prosecutors failed to disclose precedents that their theory of fraud conflicted with, including Jain and Cleveland;

---------------------------------------------------------------------------------------------------

-Prosecutors failed to disclose that they were, in essence, asking the Court to rewrite the law of copyright enforcement; and

-Prosecutors' resort to fraud prejudiced Hansmeier, is contributing to a loss of public confidence in the courts, is prejudicing third parties, and is already starting to destroy the civil justice system.

According to the theory of fraud advanced by the Government in this case, any one of these lies would satisfy the elements of federal mail fraud or wire fraud and justify a 14 year term of imprisonment. When viewed as a whole, the lies are overwhelming and require the Court to grant Hansmeier the relief he seeks in Claim 10.

The Court should grant Hansmeier the relief he seeks in Claim 10.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

---------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0011F - Appearance of Partiality
DATE: 04/16/2022 08:55:47 AM

CLAIM 11

The Government raises a variety of defenses to Claim 11. Under the rules governing 2255 proceedings, Hansmeier is under no obligation to reply to the Government's arguments in Claim 11 and elects not to do so here. Hansmeier has great respect for and deep trust in the Court's integrity and ability and will await the Court's decision on Claim 11.

TRULINCS  20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

--------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0012 - Ineffective Assistance of Counsel
DATE: 04/17/2022 09:49:00 AM

CLAIM 12 - Hansmeier Was Denied the Effective Assistance of Counsel

The Sixth Amendment entitles criminal defendants to the effective assistance of counsel. The Government's misconduct contributed to Hansmeier being denied the effective assistance of counsel in this matter.

   A. Claim 12 is Properly Before the Court.

The Government appears to concede that Claim 12 is properly before the Court.

   B. Claim 12 Should Succeed on the Merits.

Claim 12 should succeed on the merits for the reasons stated in Claim 12. The Government's response is limited to a syllogism that if Claim 10 is meritless, then so too is Claim 12. Gov't. Resp. at 38. The Government does not address, and should therefore be deemed to have conceded, Hansmeier's showing.

As Hansmeier's Claim 12 shows, Hansmeier's counsel spent most of its briefing space and argument trying to put out the fires created by the Government's fraud. Because the Government was unable to be honest about the law of copyright enforcement, Hansmeier's counsel had substantially less resources to spend defending Hansmeier's interests. For example, Hansmeier's counsel lacked the ability to rebut the fraud by omission theory underlying the first litigation strategy by presenting law showing that Hansmeier was under no legal duty to speak under the legal standards governing Hansmeier's interactions with the courts. Fraud by omission theories fail as a matter of law when the "omitter" was under no legal duty to speak. See United States v. Ruzicka, 333 F. Supp. 3d 853 (D. Minn. 2009) (discussing at various parts in the opinion how duty to disclose is element of fraud by omission). Had Hansmeier's counsel made this argument, the Court would have been constrained to dismiss the fraud charges arising from the first litigation strategy because, as all of the briefing in this case has made clear, Hansmeier was under no legal obligation to discuss his investigative methods or financial interests beyond what he did. If Hansmeier's counsel could have had the opportunity to present this defense, then Hansmeier would not have been convicted with respect to, at a minimum, the first litigation strategy.

The Court should grant Hansmeier the relief he seeks in Claim 12.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-K-C

----------------------------------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: 0013 - Evidentiary Hearing/COA/Bail/Conclusion
DATE: 04/16/2022 03:27:11 PM

III. Evidentiary Hearing.

Hansmeier's 2255 motion consists of some issues that may be resolved as a matter of law in Hansmeier's favor and others that would require an evidentiary hearing. At a minimum, Hansmeier's 2255 motion alleges Government conduct that is more serious than what the indictment alleged about him. The Court held that the Government's allegations deserved a trial. So too must Hansmeier's.

IV. COA.

There is no reason for the Court to rule against Hansmeier, but if it does then it should issue a COA. At a minimum, By ruling against Hansmeier, the Court will be ruling against the overwhelming weight of authority which rejects attempt to apply the charging statues to theories of fraud rooted in litigation conduct. By ruling against Hansmeier, the Court would become the first federal judge to open Pandora's Box in this manner.

V. The Court Should Grant Hansmeier's Pending Motion for Bail.

The Court has not acted one way or the other on Hansmeier's pending motion for bail. It should grant Hansmeier's motion for bail as it considers Hansmeier's 2255 motion. Nothing in the Government's response to Hansmeier's 2255 motion opposes Hansmeier's request for bail.

VI. Conclusion.

The Court should grant Hansmeier's motion.

April 17, 2022

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

I certify under the penalty of perjury that I placed this document in the prison mailbox on April 17, 2022 with first class postage prepaid

Paul Hansmeier